UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 23-01788-FMO (AGRx) | Date | February 26, 2024 |
| Title | Anoush Burmayan v. Garfield Beach CVS, LLC., et. al. | | |

| | |
|---|---|
| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge |

| | |
|---|---|
| K. Lozada | n/a |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| n/a | n/a |

**Proceedings:** **(In Chambers) ORDER RE: PLAINTIFF'S MOTION WITH REQUEST FOR SPOLIATION AND SANCTIONS PURSUANT TO RULE 37 AGAINST CVS FOR FAILURE TO PRESERVE EVIDENCE (Dkt. No. 120)**

### *A. Procedural History*

Plaintiff filed a motion with request for spoliation and sanctions pursuant to Rule 37 against Defendant CVS for failure to preserve evidence. (Dkt. No. 120-121.)[1] The CVS Defendants filed an opposition. (Dkt. Nos. 123-126.) Plaintiff filed a reply. (Dkt. No. 127.)

The matter came on for hearing on February 6, 2024. The court addressed, among other things, two issues: (1) what law applies to Plaintiff's motion, which appeared to be premised on some concepts that are no longer valid; and (2) the camera angles downloaded for the incident on January 13, 2021, comparing the Risk Notes to Mr. Carey's declaration.

After the hearing, the court issued an Order dated February 6, 2024. (Dkt. No. 129.) The order set forth the standards in Fed. R. Civ. P. 37(e) and permitted the parties to file supplemental briefs on the law applicable to Plaintiff's motion. The order also permitted CVS to file a declaration that describes the camera footage that the analyst downloaded for the January 13, 2021 incident, including (1) each camera number downloaded and, for each camera number, a general description of the corresponding aisle or area encompassed by that camera number, and (2) how the analyst identified the camera number(s) to be downloaded in relation to the camera numbers or camera descriptions in the Risk Notes. The court further noted it would be helpful to

[1] Plaintiff uses the term "defendant CVS." (Dkt. No. 120 at 2.) The court assumes that Plaintiff means Defendant Garfield Beach CVS LLC. Unless otherwise indicated, the term "CVS" in this order refers to Defendant Garfield Beach CVS LLC.

know whether cosmetics and hair are in the same aisle or within the scope of the same camera numbers/angles. The court continued the hearing to February 20, 2024. (*Id.*)

Pursuant to the Order dated February 6, 2024, the parties filed supplemental briefs. (Dkt. Nos. 135-36.) CVS filed a supplemental declaration from Mr. Carey. (Dkt. No. 137.) The matter came on for hearing on February 20, 2024 and the motion was taken under submission.

***B. Motion for Sanctions***

Plaintiff's motion seeks two sanctions: (1) "an adverse jury instruction to advise the jury of the destruction of the relevant evidence"; and (2) monetary sanctions. (Motion at 21-22.) To the extent Plaintiff's supplemental brief attempts to add requests for other types of sanctions, the attempt is rejected. The Order dated February 6, 2024 established one deadline for supplemental briefs addressing the law applicable to Plaintiff's motion. The Order made clear that the supplemental brief could not be a re-write of the motion or the relief requested in it. (Dkt. No. 129 at 2.) The CVS Defendants have not had an opportunity to respond to Plaintiff's additional requests.

***1. Plaintiff's Request for Adverse Jury Instruction***

***a. Legal Standards***

Rule 37(e) applies when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Under these circumstances, the court:

(1) upon finding prejudice to another party from loss of the information,, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

Rule 37(e) "forecloses reliance on inherent authority or state law to determine when

certain measures should be used." Advisory Comm. Notes, 2015 Amendment; *Newberry v. Cty. of San Bernardino*, 750 Fed. Appx. 534, 537 (9th Cir. 2018) (noting parties erred in relying on inherent authority; court applies version of Rule 37(e) in existence when sanctions motion was filed).

A showing of negligence or gross negligence is not sufficient for a finding of the requisite "intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Rule 37(e)(2) was designed to provide a uniform standard in federal court and "rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Advisory Comm. Notes, 2015 Amendment. "Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." *Id.*

Under Rule 37(e)(2), the court need not separately find prejudice to the party deprived of the electronically stored information. "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice." *Id.*

***b. Evidence Does Not Support a Finding of Intent to Deprive Plaintiff of Use of Relevant Surveillance Footage in This Litigation***

This court will not preside at trial. Nevertheless, the Advisory Committee Notes indicate that the requisite finding may be made by a court ruling on a pretrial motion. Advisory Comm. Notes, 2015 Amendment. The court addresses Plaintiff's motion as a Report and Recommendation to the trial judge.

Defendant CVS "does not dispute that it had a duty to preserve relevant camera angles on the dates in question showing Plaintiff in the store." (Opp. at 17.)

Plaintiff argues that the court should infer the requisite intent to deprive Plaintiff of surveillance footage from the relevant camera angles in this litigation from CVS' conduct.

CVS retail stores in the United States have Closed Circuit Television (CCTV) cameras and Digital Video Recorders (DVR) to record and maintain surveillance footage, which consists only of video and no audio. (Carey Decl. ¶ 4.)

Surveillance footage is stored on a store-level server for generally 90 days, after which it is overwritten when the DVR runs out of storage space. (*Id.* ¶¶ 4-5.) Surveillance footage may be requested through specified channels, and then downloaded and saved by a CVS CCTV Analyst such as Mr. Carey. (*Id.* ¶¶ 6-7.) When downloading a time range of video, it is not possible to exclude or remove portions of that time block. (*Id.* ¶ 8.)

Mr. Carey provides a printout of a list of cameras available at the CVS store visited by Plaintiff, which is CVS Store #9767. (*Id.* ¶ 10.) His supplemental declaration explains that the cameras cover 20 sections of the store. Putting aside the Rx sections, which are not at issue in this case, the cameras appear to cover eight public sections of the store. (Carey Supp. Decl. ¶ 3.)

In a letter dated May 12, 2021 and sent via certified mail, Plaintiff's former counsel requested surveillance footage from CVS Store #9787 for incidents involving Plaintiff on January 13 and 19, 2021. (Dkt. No. 120-2 at 3-4.)

CVS states that it received the letter on May 20, 2021. The next day, on May 21, 2021, CVS' third party adjuster, Sedgwick, opened a case file for Claim No. 402105D0G540001 and assigned the matter to Examiner Matthew Walton. (Exh. A at 65-66 to Walton Decl.) Mr. Walton attaches the "Risk Notes" to his declaration. (Exh. A to Walton Decl., Dkt. No. 126-1.) The Risk Notes are a chronological log of notes, actions, correspondence and relevant events on the claim. (Walton Decl. ¶¶ 4, 6.) Walton states that he usually works with store-level employees, "generally, managers." (*Id.* ¶ 5.)

<u>January 19, 2021 Incident</u>: On May 24, 2021, Walton called the store manager on duty, Edith. (Exh. A at 64 to Walton Decl.) It is undisputed that Edith was not working during either incident involving Plaintiff. Edith gave Mr. Walton "the cameras that this incident can be seen on" for the incident on January 19, 2021. Edith identified Cameras 1, 3, and 5. "Edith is looking at the video as she is talking to me and advised those are the only cameras claimant can be seen on." (*Id.*) Mr. Walton states that he "will request the video footage that the store manager advised covers the incident." (*Id.*; *Id.* at 63 (Request for Cameras 1, 3 and 5 footage).)

With respect to the incident on January 13, 2021, Edith did not have the information during the May 24, 2021 conversation but stated she would get the information and call Mr. Walton back. (*Id.* at 64.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 23-01788-FMO (AGRx) | Date | February 26, 2024 |
| Title | Anoush Burmayan v. Garfield Beach CVS, LLC., et. al. | | |

Mr. Walton received and viewed the video for the January 19, 2021 incident the next day on May 25, 2021. (*Id.*) On the record before the court, Plaintiff received in discovery the surveillance footage from Cameras 1, 3 and 5 for the incident on January 19, 2021. (*See also* Order dated January 9, 2024, Dkt. No. 117 at 4.)

January 13, 2021 Incident: Following up on the May 24, 2021 communication, on June 7, 2021 Mr. Walton attempted to contact Edith for the surveillance footage of the incident on January 13, 2021. She had already left for the day. (Exh. A at 62 to Walton Decl.)[2]

On June 24, 2021, Walton again called Edith. Walton told her that Johnson said the incident on January 13, 2021 took place sometime between 12:20 a.m. and 2:30 a.m. "She will check video to see if she can find incident and call me back with info." (*Id.* at 60.) Edith called Walton back the same day. "She located footage of claimant in the store on the initial incident 1/13/21." She identified Cameras 1 (entrance), 14, 15, 17 (cosmetics/hair dept), and self check out. (*Id.*) On the same day, Walton made the request for surveillance footage for Cameras 1, 5 (self check out), 14, 15 and 17 for the incident involving Plaintiff on January 13, 2021. (*Id.* at 59-60.)

In response to the court's inquiry in the Order dated February 6, 2021, Mr. Carey provides the following information. The camera numbers in Walton's request are different than the camera numbers assigned when the CCTV was installed. (Carey Supp. Decl. ¶ 6.) The surveillance footage for the incident on January 13, 2021 were downloaded from four camera angles – the front door, the ACO (self checkout), cosmetics, and cosmetics wall. The cosmetics section includes hair products. (*Id.* ¶ 7.) The only other aisle camera is for liquor (*Id.* ¶ 8), which is not at issue in this case. The court's recollection from the January 9, 2024 hearing is that Plaintiff received in discovery the surveillance footage from these four angles for the January 13, 2021 incident.

Plaintiff argues that Walton contacted Edith, the store manager, who had no training or knowledge about how many cameras there were at the store or how to review/analyze surveillance footage. In support of her reply brief, Plaintiff submits a declaration from Edith Gomez, who states she "was not the person in charge of review or identification of video recordings from the multiple surveillance cameras for collection/preservation at the store. That task was assigned to the Loss Prevention representative Carlos Diaz Herrerra." (Gomez Decl. ¶ 6, Dkt. No. 127-1.) "Because I was not the person in charge of relevant video clips from these

---

[2] In the interim, Walton spoke with Joe Johnson about the incident. Johnson did not provide Walton camera information. (Dkt. No. 126-1 at 62-63.)

cameras, it is quite possible that during my potential review and analysis, I missed to identify all relevant video clips pertinent to the Incident." (*Id.* ¶ 7.) She is "not sure, why Mr. Walton would have contacted me or relied on me for this assignment." (*Id.* ¶ 8.)

Walton previously explained that he generally contacts store managers. (Walton Decl. ¶ 5.) Ms. Gomez does not claim she told Walton that she was not competent to give him the camera information he requested, or that he should contact someone else to find out the camera information. Ms. Gomez does not deny making any of the statements or taking any of the actions attributed to her in the Risk Notes. Indeed, the Risk Notes indicate that for the January 19, 2021 incident, Ms. Gomez was "looking at the video as she is talking to me and advised those are the only cameras claimant can be seen on." (Exh. A at 64 to Walton Decl.) For the January 13, 2021 incident, Ms. Gomez called Walton back herself and gave him camera information. Plaintiff can be seen on all of the camera angles identified by Ms. Gomez. Ms. Gomez's declaration does not explain how she accomplished these tasks if she does not have the training or knowledge to do so.

Moreover, Ms. Gomez states only that "it is quite possible" that she missed a video clip. (Gomez Decl. ¶ 7.) While it is true that anything is possible, a mere possibility falls far short of evidence supporting a finding of the requisite intent. As discussed above, "[a]dverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." Advisory Comm. Notes, 2015 Amendment.

The cases cited by Plaintiff are clearly distinguishable. The closest case is *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768 (E.D. Mich. 2019). It appears the plaintiff in that case was injured when a Wal-Mart employee, without looking, lowered a service entrance freight door on the plaintiff's head. *Id.* at 770. Wal-Mart's defenses included an allegation that the fault was at least partially attributable to Plaintiff's conduct. *Id.* at 771, 774-75. The person responsible for collecting surveillance footage, Terry, preserved the interior camera footage but not the footage from the camera directly outside the freight door. When asked why, Terry testified "I can't remember why." *Id.* at 771. The court found that it could reasonably infer the requisite intent from the fact that Terry "selectively preserved" the interior footage when "Defendants knew or should have known to save the exterior footage" that would have shown what happened from the plaintiff's perspective as he approached the freight door from the outside. *Id.* at 774-75 (emphasis removed). Terry's failure to preserve the exterior footage

violated Wal-Mart's own protocols. *Id.* at 773-74.

This court is troubled by *Culhane*'s reliance on a "knew or should have known" formulation that is generally associated with negligence or gross negligence, and does not adopt it. Nevertheless, the record in this case does not satisfy even *Culhane*. The Risk Notes clearly evidence an attempt and intent to collect all surveillance footage in which Plaintiff appeared during the incidents on January 13 and 19, 2021. For the January 19, 2021 incident, "Edith is looking at the video as she is talking to me and advised those are the only cameras claimant can be seen on." (Exh. A at 64 to Walton Decl.) For the January 13, 2021 incident, Edith did not have the information at the time but stated she would get the information and call Mr. Walton back. (*Id.*) She ultimately called Walton with the "footage of claimant in the store on the initial incident 1/13/21." (*Id.* at 60.) Although Ms. Gomez's declaration states it is quite possible she missed a video clip, the opposite is also true and it is quite possible she did not miss a video clip. A mere possibility cannot support a reasonable inference of selective preservation and an intent to deprive Plaintiff of any surveillance footage from the January 13 and 19, 2021 incidents.

There is also no evidence that CVS departed from its protocols for preservation of ESI in failing to download any other camera angles. *Compare Rapp v. Naphcare*, 2023 U.S. Dist. LEXIS 94785, *15 (N.D. Cal. May 31, 2023) (finding requisite intent when, *inter alia*, no litigation hold was issued and lieutenant failed to review 11 hours of video during litigation despite standard operating procedure to preserve all video on which plaintiff appeared); *Alabama Aircraft Indus. v. Boeing Co.*, 319 F.R.D. 730, 733-34, 746 (2017) (inferring requisite intent from party's intentional, blatantly irresponsible, and unexplained destruction of ESI in violation of agreed protocols).[3]

Finally, Plaintiff argues that the court should infer intent from CVS' purported position that no video footage existed.

Plaintiff mischaracterizes CVS' position before this court. The Risk Notes confirm that CVS no longer had surveillance footage of the incidents involving Plaintiff on January 13 and 19, 2021 after May 2022, before this lawsuit was filed in 2023. (Dkt. No. 126-1 at 43-44, 50-

---

[3] Other cases are even more remote. For example, in *Estate of Bosco v. Cty. of Sonoma*, 640 F. Supp. 3d 918 (N.D. Cal. 2022), the surveillance footage produced from two cameras ended at least 10 minutes before the plaintiff was found nonresponsive. *Id.* at 922. The court found incredible the argument that the investigator, who was responsible for investigating any criminal liability from the incident, overlooked the fact that surveillance footage from both cameras ended just before the incident.

51.) At the discovery conference on May 23, 2023, CVS agreed to contact Sedgwick to obtain any responsive video, photos or audio recordings. (Order, Dkt. No. 31 at 2.) The court ordered CVS to complete production by June 13, 2023. (*Id.* at 4.) CVS produced the surveillance footage from Sedgwick on June 9, 2013, before the court's deadline. (Dkt. No. 40 at 5-6.) Plaintiff complained that she could not open some of the files. At a hearing on June 27, 2023, CVS' counsel indicated she had requested instructions on how to open the video files and agreed to provide the information to Plaintiff after she received it. (Order, Dkt. No. 42 at 2.) This sequence of events does not raise a reasonable inference of an intent to deprive Plaintiff of surveillance footage at other cameras for the two incidents on January 13 and 19, 2021.

Accordingly, on the record before it, the court recommends that the District Court not give an adverse jury instruction within the ambit of Fed. R. Civ. P. 37(e)(2).

***c. Evidence Does Not Support a Finding of Prejudice to Plaintiff***

Rule 37(e)(1) provides that the court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Advisory Comm. Notes, 2015 Amendment. Rule 37(e)(1) "does not place the burden of proving or disproving prejudice on one party or the other." *Id.* The court has "discretion to determine how best to assess prejudice in particular cases." *Id.*

Plaintiff claims prejudice from the absence of surveillance footage from a camera at the cash register during the January 13, 2021 incident[4] and Camera 15 or another camera near the aisles during the January 19, 2021 incident.

As Plaintiff concedes, the surveillance footage produced shows that she was at the cash register for about one minute before she went over to use the self checkout on January 13, 2021. (Motion at 19-20.) It is undisputed that CVS' surveillance video footage does not include audio. Contrary to Plaintiff's argument, footage from a camera at the cash register on January 13, 2021 could not corroborate her testimony about her communications with the cashier. *See James v. US Bancorp*, 2021 U.S. Dist. LEXIS 89849, *17 (C.D. Cal. May 11, 2021) (noting minimal

[4] Plaintiff also claims prejudice from the absence of surveillance footage from the hair aisle but, as discussed above, Mr. Carey states that there is no separate camera for hair products, which are found in the cosmetics section.

prejudice from failure to preserve all surveillance footage of incident when crux of case is communications among personnel and footage had no audio). CVS states, without contradiction, that the cashier's identity has been provided in discovery.

With respect to the January 19, 2021 incident, Plaintiff argues that there are more camera angles that would have shown Plaintiff's interactions with CVS employees, but her argument is speculative. As CVS argues, of the 7 minutes that Plaintiff spent in the store, the surveillance footage produced covers all of that time except for one period of 7 seconds and one period of 3 seconds. (Opp. at 16-17.) There is no evidence indicating that, within those few seconds, Plaintiff moved to a location within another surveillance camera's coverage and then back within range of the front cameras. Speculation is insufficient to show spoliation or prejudice. Nothing would prevent a party from presenting evidence that the surveillance footage does not capture Plaintiff for certain periods of time.

Plaintiff does not connect her request for monetary sanctions to alleged prejudice from CVS' loss of surveillance footage. Plaintiff counsel's declaration states: "While there are multiple lawyers representing defendants on each side, all depositions noticed by Plaintiff were rescheduled without good cause on multiple occasions, impeding Plaintiff's ability to timely conduct discovery. Plaintiff has incurred unnecessary costs in rescheduling depositions and attorney time in pursuing these motions." (Mkrtchyan Decl. ¶ 16.) Counsel then states her hourly rate "and the time spent on this specific discovery issue, as identified above is approximately 60 hours." (*Id.*) The court cannot discern from this general description the basis for the request for monetary sanctions. To the extent Plaintiff seeks sanctions based on the portion of Plaintiff's motion to compel, filed on June 4, 2023, that was directed to CVS' production of surveillance footage from Sedgwick, the motion was unnecessary in that CVS had already agreed to obtain the footage from Sedgwick and the court had already set a deadline for production before that motion to compel was filed.

***D. Order***

Based on the record before the court, IT IS RECOMMENDED that the District Court not give an adverse jury instruction encompassed by Fed. R. Civ. P. 37(e)(2).

IT IS ORDERED that Plaintiff's motion for monetary sanctions is DENIED.

cc: District Judge Judge Fernando M. Olguin

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 23-01788-FMO (AGRx) | Date | February 26, 2024 |
| Title | Anoush Burmayan v. Garfield Beach CVS, LLC., et. al. | | |

Initials of Preparer kl