Daniel F. Fears, Bar No. 110573
dff@paynefears.com
Andrew K. Haeffele, Bar No. 258992
akh@paynefears.com
Leilani E. Jones, Bar No. 298896
llj@paynefears.com
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendants GARFIELD BEACH CVS, LLC (erroneously sued as CVS Pharmacy, Inc.) GUY GARCIA and JOE JOHNSON

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANOUSH BURMAYAN,

Plaintiff,

v.

CVS PHARMACY, INC., a corporation doing business in California, GUY GARCIA, an individual, JOE JOHNSON, an individual; CITY OF GLENDALE, Officer JAMES ROSS #22471, individually and as a peace officer, Officer GRIFFIN ARMENDARIZ #27999, individually and as a peace officer, and DOES 1-10,

Defendants.

Case No. 2:23-cv-01788 FMO-AGR

Honorable Fernando M. Olguin

**DEFENDANTS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

Judge: Hon. Fernando M. Olguin
Date: October 23, 2025
Time: 10:00 am
Crtrm.: 6D

Action Filed: January 6, 2023
Trial Date: None set.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 10

II. STATEMENT OF FACTS .......... 11

A. The City of Glendale Retail Mask Mandate .......... 11

*1. The City of Glendale Public mask mandate required face coverings and authorized businesses to enforce compliance.* .......... 11

*2. Plaintiff was not medically restricted from wearing a mask over her nose.* .......... 12

*3. Plaintiff was politically opposed to mask mandates.* .......... 13

B. Plaintiff Visits to CVS Glendale Store .......... 14

*1. On January 13, 2021, Plaintiff entered the Glendale Store without properly wearing a mask.* .......... 14

*2. On January 19, 2021, Plaintiff returned to the Glendale Store but left shortly after learning the manager was not on duty.* .......... 16

C. Plaintiff's Mental Health Conditions Predate the January 13, 2021 and January 19, 2021, Incidents .......... 16

III. ARGUMENT .......... 17

A. First Cause of Action (Bane Civil Rights) .......... 17

*1. As a private entity, CVS cannot be liable for First or Fourth Amendment violations.* .......... 18

*2. No reasonable trier of fact could possibly conclude that the CVS employees engaged in threats, intimidation, or coercion.* .......... 19

*3. No reasonable trier of fact could conclude that CVS specifically intended to violate Plaintiff's rights.* .......... 21

B. Second Cause of Action (Unruh Civil Rights Act) .......... 22

*1. The Unruh Act does not exempt customers from neutrally applied health mandates.* .......... 22

*2. Plaintiff cannot establish denial of access or intentional discrimination.* .......... 23

(a) No denial of access to goods or services .......... 23

(b) No evidence of intentional discrimination. .......... 24

(c) Plaintiff's allegations of disability-based discrimination are unsupported by evidence. .... 25

(d) No reasonable trier of fact could conclude that CVS's conduct was motivated by race-based discrimination. .... 26

C. Fifth Cause of Action (42 U.S.C. § 1981) .... 27

1. *Plaintiff cannot establish a prima facie case.* .... 28

2. *CVS's actions were justified and not pretextual.* .... 30

D. Plaintiff's Claim For Punitive Damages Fails .... 31

1. *Johnson and G. Garcia were not officers, directors, or managing agents of CVS.* .... 31

2. *Johnson and G. Garcia did not act with oppressive, fraudulent, or malicious intent.* .... 33

IV. CONCLUSION .... 34


PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addisu v. Fred Meyer, Inc.* (9th Cir. 2000) 198 F.3d 1130 .......... 29

*Allen v. City of Sacramento*, 234 Cal. App. 4th 41 (2015) .......... 19, 21

*Almaweri v. Walgreen Specialty Pharmacy, LLC* (N.D. Cal. Jan. 26, 2015) 2015 WL 349158 .......... 33

*Andrade v. Arby's Rest. Grp., Inc.* (N.D.Cal.2016) 225 F.Supp.3d 1115 .......... 34

*Animal Prot. & Rescue League, Inc. v. Cnty. of Riverside*, No. D085176, 2025 WL 1573295 (Cal. Ct. App. May 12, 2025), reh'g denied (May 27, 2025) .......... 19

*Arteaga v. Brink's, Inc.* (2008) 163 Cal. App. 4th 327 .......... 31

*Birdwell v. AvalonBay Communities, Inc.* (C.D. Cal. 2024) 742 F. Supp. 3d 1024 (Tigar, J.) .......... 25

*Blincow v. MillerCoors, LLC* (E.D. Aug. 15, 2018) 2018 WL 3869162 .......... 31

*C.B. v. Sonora Sch. Dist.* (E.D. Cal. 2009) 691 F. Supp. 2d 1123 .......... 25

*Calm Ventures LLC v. Newsom* (C.D. Cal. 2021) 548 F. Supp. 3d 966 (Walter, J.) .......... 30

*Clark v. Safeway, Inc.* (D. Or. 2020) 478 F. Supp. 3d 1080 .......... 29

*Clark v. West Contra Costa Unified Sch. Dist.* (N.D. Cal. Mar. 15, 2000) 2000 WL 336382 .......... 25

*Cnty. of Los Angeles Dep't of Pub. Health v. Super. Ct.* (2021) .......... 20

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Cobb v. Adams*,
No. C 13-04917 JSW, 2014 WL 2212162 (N.D. Cal. May 28, 2014)....................20

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*
(2020) 589 U.S. 327 ....................28

*Corales v. Bennett*
(9th Cir. 2009) 567 F.3d 554....................26

*Cornell v. City & County of San Francisco*
(2017) 17 Cal.App.5th 766....................21

*Cruz v. HomeBase*,
83 Cal.App.4th 160 (2000)....................32

*Cullen v. Netflix, Inc.*
(N.D. Cal. 2012) 880 F. Supp. 2d 1017....................23, 24

*Cuviello v. City of Stockton*
(E.D. Cal. Mar. 6, 2019) 2019 WL 1058578....................20

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*
(C.D. Cal. 2015) 2015 WL 12734783 (Otero, J.)....................25

*Dandridge-Barnett v. Barnes & Noble, Inc.*,
2015 WL 226017 (C.D. Cal. 2015) *aff'd* 671 F. App'x 452 (9th Cir. 2016) (Kato, J.)....................24

*Davis v. Kiewit Pacific Co.*
(2013) 220 Cal.App.4th at 366-370....................32, 33

*Disbar Corp. v. Newsom*
(C.D. Cal. 2020) 508 F. Supp. 3d 747 (Nunley, J.)....................20, 30

*Domino's Pizza, Inc. v. McDonald*
(2006) 546 U.S. 470 ....................28, 29

*Eva Ventura v. CVS Pharmacy*,
Inc., AAA Case No. 01-20-0015-4233, at *12 (2022)....................33

*Featherstone v. S. Cal. Permanente Med. Grp.*
(2017) 10 Cal. App. 5th 1150....................30

*Flowers v. Prasad*
(2015) 238 Cal.App.4th 930....................23

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Franklin v. Fox*
(9th Cir. 2002) 312 F.3d 423 .......... 19

*Garcia v. Wal-Mart Assocs., Inc.*,
No. CV 1907784 CJC SKX, 2020 WL 8455110 (C.D. Cal. Dec. 21, 2020) .......... 33

*Glenn v. President & Trs. of Santa Clara Coll.*
(Cal. Super. Ct., Aug. 27, 2024) 2024 WL 3948495 .......... 24

*Goldman v. Standard Ins. Co.*
(9th Cir. 2003) 341 F.3d 1023 .......... 25

*Goldsmith v. CVS Pharmacy, Inc.*,
2020 WL 3966004 (C.D. Cal. May 5, 2020) (Birotte Jr., J.) .......... 22, 23

*Gutierrez v. Gonzalez*,
No. CV 16-7268 (C.D. Cal. Apr. 26, 2017) 2017 WL 1520419 (Snyder, J.) .......... 24

*Harbison v. Am. Motorists Ins. Co.*
(E.D. Cal. 2009) 636 F.Supp.2d 1030 .......... 31

*Hessians Motorcycle Club v. J.C. Flanagans*
(2001) 86 Cal.App.4th 833 .......... 24

*Hsiao v. Walmart Assocs., Inc.*,
2018 WL 6136155 (C.D. Cal. Apr. 12, 2018) .......... 33

*Jackson v. Tyler's Dad's Place, Inc.*,
850 F. Supp. 53 (D.D.C. 1994) .......... 29, 30

*Jones v. Kmart Corp.*
(1998) 17 Cal.4th 329 .......... 18, 19, 21

*Julian v. Mission Cmty. Hosp.*
(2017) 11 Cal.App.5th 360 .......... 20

*Julie Brazelton v. CVS Pharmacy, Inc.*,
No. CV-20-10604 .......... 33

*Lindsey v. SLT Los Angeles, LLC*,
447 F.3d 1138 (9th Cir. 2006) .......... 27, 28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Maduk v. CVS Pharmacy, Inc.*
(C.D. Cal. Feb. 9, 2023) 2023 WL 3272406 .......... 28, 29

*Manhattan Cmty. Access Corp. v. Halleck*
(2019) 139 S. Ct. 1921 .......... 18

*Martin v. Lockheed Missiles & Space Co.*
(1994) 29 Cal.App.4th 1718 .......... 28

*McDonnell Douglas Corp. v. Green*
(1973) 411 U.S. 792 .......... 27, 30

*Morris v. Dillard Dep't Stores, Inc.*
(5th Cir. 2001) 277 F.3d 743 .......... 29

*Morris v. Office Max, Inc.*
(7th Cir. 1996) 89 F.3d 411 .......... 29

*Parker v. Wolf*,
506 F. Supp. 3d 271 (M.D. Pa. 2020) .......... 22

*Raygoza v. Walmart Inc.*,
No. CV 21-809-GW-KSx (C.D. Cal. Dec. 21, 2020) .......... 33

*Reese v. Cty. of Sacramento*
(9th Cir. 2018) 888 F.3d 1030 .......... 18

*Reyes v. Atl. Richfield Co.*
(9th Cir. 1993) 12 F.3d 1464 .......... 26

*Roby v. McKesson Corp.*,
47 Cal.4th 686 (2009) .......... 31

*Salcido v. City of Mountain View*,
No. 24-CV-08833-NC, 2025 WL 1307811 (N.D. Cal. May 6, 2025) .......... 20

*Schmidt v. City of Pasadena*
(C.D. Cal. Mar. 21, 2024) 2024 WL 1640913 (Kronstadt, J.) .......... 20

*Shirin Moghtanei v. CVS Pharmacy, Inc.*,
AAA Case No. 01-21-0002-6695 (2023) .......... 33

*Shoyoye v. Cty. of Los Angeles*
(2012) 203 Cal.App.4th 947 .......... 17, 20

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Spinks v. Equity Residential Briarwood Apts.* (2009) 171 Cal.App.4th 1004 ........ 31, 34

*Tandon v. Newsom* (N.D. Cal. 2021) 517 F. Supp. 3d 922 ........ 30

*Taylor v. Trees, Inc.* (C.D. Cal. 2014) 58 F.Supp.3d 1092 (Ishii, J.) ........ 32, 33

*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269 ........ 34

*Town of Castle Rock v. Gonzales* (2005) 545 U.S. 748 ........ 19

*Turner v. Ass'n of Am. Med. Colls.* (2008) 167 Cal.App.4th 1401 ........ 22, 24

*Venegas v. Cty. of Los Angeles* (2004) 32 Cal.4th 820 ........ 18

*Waldron v. Rotzler* (N.D.N.Y. 1994) 862 F. Supp. 763 ........ 28

*Wardany v. City of San Jacinto* (9th Cir. 2013) 509 F. App'x 650 ........ 26

*White v. Ultramar, Inc.*, 21 Cal.4th 563 (1999) ........ 31, 32, 33

*Wilkins-Jones v. Cnty. of Alameda* (N.D. Cal. 2012) 859 F. Supp. 2d 1039 ........ 25

*Williams v. City of Pleasanton*, 2023 WL 8242106 (N.D. Cal. Nov. 28, 2023) ........ 19, 20, 21

*Yang v. ActioNet, Inc.* (C.D. Cal. 2015) 2015 WL 13385917 (Birotte Jr., J.) ........ 26

*Yaya v. Nowhere Partners Corp.*, No. 22STCV03083 (Cal. Super. Ct. Mar. 13, 2023) ........ 22, 23

**Statutes**

42 U.S.C. § 1981 ........ *passim*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Bane Act ........ 19

Cal. Civ. Code § 3294 (c)(1) ........ 34

Cal. Gov't Code §§ 3294(a), (b) ........ 31

California Civil Code § 3294 ........ 34

California Civil Code § 52.1(k) ........ 20

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## I. INTRODUCTION

On January 13, 2021, at approximately 12:00 a.m., Plaintiff Anoush Burmayan ("Plaintiff") entered CVS's Glendale retail location (the "Glendale Store"). She remained in the store for approximately 40 minutes, browsing the aisles and selecting items for purchase. When she approached the front register, the cashier declined to process her transaction unless she complied with the City of Glendale's mask mandate by covering her nose. Plaintiff refused, proceeded to the self-checkout kiosk, completed her purchase, and exited the store.

Plaintiff later admitted that she was not denied service on January 13 ("I [was] not [] denied service on January 13").[1] She also confirmed that no CVS employee touched or threatened her, or made any reference to her race, national origin, or alleged disability. Critically, Plaintiff testified that she did not present a medical note of any kind indicating she had a condition preventing her from covering her nose with a mask.[2]

*Notably*, Plaintiff was an outspoken and aggressive critic of COVID-era public health measures. She regularly posted incendiary content on social media, referring to supporters of mask mandates—and public health mandates more broadly—as "bitches" who should be "tortured, and in prison."[3]

Incensed by being asked to comply with these rules, Plaintiff returned to the Glendale Store days later—not to shop, but to confront a manager about CVS's adherence to the City of Glendale's mask mandate. She remained in the store for only a few minutes and left shortly after learning the manager was not on duty. She was subsequently approached by Glendale police officers (and according to

[1] *See* deposition of Anoush Burmayan ("Plf-Dep."), 110:3–5, attached to Defendants' Appendix of Evidence ("AOE") as Exhibit 4.

[2] AOE-Ex-4 (Plf-Dep., 121:17–122:2, 422:18–424:1, 425:16-25).

[3] Plaintiff has a longstanding, well-documented history of mental health issues, predating January 2021. For nearly a decade prior, Plaintiff had been diagnosed with severe depression, anxiety, and emotional dysregulation. Her providers consistently noted symptoms such as angry outbursts, panic, irritability, and difficulty controlling impulses. [*See* AEO-Exs-16-18.]

Plaintiff, placed under arrest). Plaintiff now attempts to recast these routine interactions as civil rights violations:

- She asserts that CVS employees enforced the City's mask mandate because of her Armenian ethnicity—despite the fact that Glendale has the highest concentration of Armenian Americans in the United States. But she admits that no employee mentioned her ethnicity, and no evidence exists showing that non-Armenian customers were treated move favorably.
- She asserts that the mask policy was enforced despite her alleged disability. But she admits she has never been diagnosed with any such condition, has no medical documentation supporting a mask exemption, and did not present any such documentation to CVS employees.

The record, largely based on Plaintiff's own testimony, confirms that no CVS employee made any reference to her race, national origin, or alleged disability. There were no threats, no physical contact, and no conduct that could reasonably be construed as discriminatory or coercive. At its core, Plaintiff's lawsuit reflects a political objection to public health mandates, not a viable claim under the Bane Act, the Unruh Civil Rights Act, or 42 U.S.C. § 1981.

## II. STATEMENT OF FACTS

### A. <u>The City of Glendale Retail Mask Mandate</u>

#### *1. The City of Glendale Public mask mandate required face coverings and authorized businesses to enforce compliance.*

In response to the COVID-19 pandemic, the City of Glendale issued Public Order No. 2020-07 on April 10, 2020, requiring face coverings in all retail establishments (the "Glendale Mask Mandate"). Per the Order:

> "All workers who work at businesses or perform services that are considered essential businesses must wear face coverings over their noses and mouths while performing their work."
>
> "All customers and visitors of businesses and organizations

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

> must wear face coverings over their noses and mouths to provide additional protection for employees and customers." [AOE-Ex-1]

The Order further authorized business owners to **refuse service or admission** to individuals who failed to comply with the face covering requirement. The Glendale Mask Mandate remained in effect, with periodic extensions and revisions, through March 2022.[4]

***2. Plaintiff was not medically restricted from wearing a mask over her nose.***

Plaintiff contends that she was medically exempt from wearing a face mask during her visits to CVS's Glendale store on January 13 and 19, 2021, citing purported exemption letters from her treating physicians, Drs. Nelson Flores and Tribble. [*See, e.g.,* AOE-Ex-3 (Resp to RFA 1); AOE-Ex-4 (Plf-Dep., 87:14-88:6).] However, no such documentation exists. In response to subpoenas, both physicians produced their complete medical files for Plaintiff. [AEO-Ex-5 (Subpoenas) and Ex-6 (Custodian of Record Decls.).] The files include four (4) medical notes pre-dating Plaintiff's visits, none of which prescribe an exemption from wearing face masks or make any reference to face masks whatsoever.

- **Dec. 10, 2020:** Initial report confirming Plaintiff began psychological treatment with Dr. Flores one day prior; no mention of face coverings. [AEO-Ex-7.]
- **Dec. 10, 2020:** Report documenting psychological testing administered by Dr. Flores' office; no mention of face coverings. [*Id*.]
- **Jan. 4, 2021:** "Doctor's First Report of Occupational Injury or Illness"; no mention of face coverings. [AEO-Ex-8.]
- **Jan. 4, 2021:** "Primary Treating Physician's Basic Comprehensive Psychological Med-Legal Evaluation Report"; no mention of face coverings. [AEO-Ex-9.]
- **Jan. 4, 2021:** Progress note from Plaintiff's first psychological evaluation; no

[4] *See*, AOE-Ex-2, confirming the Los Angeles County mandates (which governed cities like Glendale) extended through March 2022.



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

mention of face coverings. [AEO-Ex-10.]

- **Jan. 12, 2021:** Progress note from a follow-up visit; again, no mention of face coverings. [AEO-Ex-11.]

### *3. Plaintiff was politically opposed to mask mandates.*

Plaintiff has been a vocal and persistent critic of public health measures, including mask mandates. She attended anti-mask rallies, participated in online groups promoting conspiracy theories, and regularly shared inflammatory and hostile content on social media. These actions reflect a consistent pattern of defiance toward pandemic-related safety protocols. By way of example, Plaintiff posted the following content and statements on Facebook:

- **July 19, 2021:** "Keep taking your ugly face selfies…your selfishness has blood on your hands"
- **July 22, 2021:** "That's what you get for being p@@sies and not putting up a fight"
- **July 23, 2021:** Reposted event details about a local protest against COVID-19 mandates.
- **July 29, 2021**: Responding to an article about COVID-19 testing, commented "You must love being someone's bitch, tortured, and in prison."
- **Aug. 9, 2021:** "The pandemic is to force you to get the vaccine…The social credit score is to force you to obey the government." "Breaking News Stores are now running out of Tampons Due to the increase of pussys in America."
- **Aug. 18, 2021:** "To all my coward…so called friends…a big 'fck' you for not having the courage…blood is on your hands"
- **Aug. 31, 2021:** Responding to an article about COVID-19 vaccines, "To all the bitch selfish parents, teachers, and school psychologists who don't fight back you deserve the same shit will happen to you and your kids future when they grow up fcked up because of you. Watch what happens to them in the next 10-15 years."
- **Dec. 7, 2021**: Posted photos of herself at a rally in support of "Learn the Risk," an anti-vaccine group.
- **Dec. 16, 2021**: Re-posted content from an account called "antimaskersnewyork," and commented "clown world."
- **Dec. 16, 2021**: Re-posted an article calling the COVID-10 vaccine "The Plan

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

to Enslave Humanity Ahead of Depopulation."

- **Dec. 29, 2021:** Re-posted content "It's not about a virus. It's about control"
- **Dec. 29, 2021:** Re-posted an article stating "cloth masks are typically ineffective," and commenting "Ya after I get arrested they annoyed [sic] this Fcking assholes."
- **Jan. 1, 2022:** "If you are a man wearing a mask ESPECIALLY while working out AND taking pics Not only do you look like a CLOWN but also a BITCH"
- **Jan. 15, 2022:** Re-posted content "Pureblood – unmasked, unvaxxed, unafraid"
- **Mar. 21, 2022:** Re-posted content "I don't celebrate unmasked sheep. I celebrate the wolves that never wore one." [AEO-Ex-12 (Social Media Postings); *see also* AOE-Ex-4 (Plf-Dep, 344:4-16) (authenticating Facebook profile).]

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## B. <u>Plaintiff Visits to CVS Glendale Store</u>

### *1. On January 13, 2021, Plaintiff entered the Glendale Store without properly wearing a mask.*

On January 13, 2021, at approximately 12:13 am, Plaintiff entered CVS's Glendale Store without wearing her face mask over her nose (the "January 13th Incident"). [AOE-Ex-4 (Plf-Dep., 71:14–19; 111:2–5).] Plaintiff admitted during her deposition that her nose was uncovered while inside the store. [*Id.* at 111:2–5.] She remained in the store for approximately 40 minutes,[5] browsing the aisles and selecting items for purchase. [AEO-Ex-13 (Jan. 13, 2021 Video).] Plaintiff testified that she encountered three (3) CVS employees during this visit:

***Shift Supervisor, Guy Garcia ("G. Garcia"):*** According to Plaintiff, she encountered G. Garcia in the first aisle of the store. [AOE-Ex-4 (Plf-Dep., 75:14-17).] However, surveillance footage from that evening does not show G. Garcia and Plaintiff together in the aisles at any time. [AOE-Ex-11 (Jan 13, 2021 Video).] Plaintiff testified that G. Garcia made several statements instructing her to wear her

[5] Her time in the store was captured on CCTV, which shows Plaintiff alone until she is at the registers and self-checkout. [*See* AEO-Ex-13 (Jan. 13, 2021 Video, as lodged).]

mask properly, specifically directing her to ensure that it covered her nose:

- "He was telling me to close my nose area." [AOE-Ex-4 (Plf-Dep., 75:12–13).]
- "[I] needed to have [my] mask covering [my] nose." [*Id.* at 77:16.]
- "He kept repeating over and over again to close my nose." [*Id.* at 77:19-20.]
- "He just kept repeating that [I] needed to have the mask over [my] nose." [*Id.* at 113:13–18.]

Plaintiff further confirmed that G. Garcia did not touch or threaten her in any way. [*Id.* at 121:17–122:2.] Plaintiff admitted that G. Garcia made no reference to her race or national origin [*Id.* at 422:18–424:1], nor did he mention her alleged disability. [*Id.* at 425:16–25.] Plaintiff also admitted that she did not present any medical documentation to G. Garcia. [*Id.* at 110:3–8.]

***Cashier, Jesus Garcia ("J. Garcia"):*** As Plaintiff approached the front register to complete her purchase, she encountered a second employee, cashier Jesus Garcia. [AOE-Ex-4 (Plf-Dep., 113:19–24).] According to her testimony, J. Garcia refused to process her transaction because her mask was not covering her nose, stating: "I am not going to allow you to buy your item until you cover your nose." [*Id.* at 114:16–17.]

Plaintiff testified that J. Garcia did not touch or threaten her, made no reference to her race, national origin, or alleged disability. Plaintiff also confirmed that she did not present any medical documentation to J. Garcia. [AOE-Ex-4 (Plf-Dep., 121:17–122:2; 422:18–424:1; 425:16–25; 110:3–8).]

***Operations Manager Joe Johnson:*** After she was denied service at the register, Plaintiff proceeded to use the self-checkout kiosk. [AOE-Ex-4 (Plf-Dep., 114:4–115:2).] While doing so, she observed a third employee, Operations Manager Joe Johnson, standing nearby—allegedly "hovering." [*Id.* at 121:12–16.] Plaintiff testified that Johnson did not speak to her or otherwise engage in any conversation. [*Id.* at 123:8–16; see also 155:4 ("I never had a conversation with Mr. Johnson.").]

Plaintiff further confirmed that Johnson did not touch or threaten her in any

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

way. [*Id.* at 121:17–122:2.] He made no reference to her race, national origin, or alleged disability. [*Id.* at 422:18–424:1; 425:16-25.] Plaintiff also admitted that she did not present any medical documentation to Johnson. [*Id.* at 110:3–8.] After completing her transaction, Plaintiff exited the store with her purchase at 12:49 a.m. [AOE-Ex-11 (Jan 13, 2021 Video).]

***2. On January 19, 2021, Plaintiff returned to the Glendale Store but left shortly after learning the manager was not on duty.***

Plaintiff returned to CVS's Glendale Store on January 19, 2021, asking to speak with "Adriana, the Armenian manager" (the "January 19th Incident"). [AOE-Ex-4 (Plf-Dep., 141:8–16).] Surveillance footage shows Plaintiff entering the store at 1:22 a.m., standing near the front registers at 1:23 a.m., approaching the register at 1:25 a.m., and standing near the self-checkout area between 1:26 and 1:29 a.m., during which time she appeared to speak to employees G. Garcia and Joe Johnson. [AOE-Ex-12 (Jan. 19, 2021 Video).] They did not engage with her, however; Plaintiff testified that although both G. Garcia and Johnson were present, neither spoke to her. [AOE-Ex-4 (Plf-Dep., 143:8–144:10) ("Just standing there ignoring me, both of them").][6] She then left the CVS store. [*Id.* at 144:12-21.]

Plaintiff's total time inside the store was approximately seven (7) minutes. [AOE-Ex-4 (Plf-Dep., 144:12–21).] After exiting the store, Plaintiff had no further interaction with any CVS employee. [*Id.* at 146:14–19.] She was subsequently approached by two Glendale police officers. [*Id.* at 144:12–21.]

**C. <u>Plaintiff's Mental Health Conditions Predate the January 13, 2021 and January 19, 2021, Incidents</u>**

Plaintiff was diagnosed as severely emotionally distressed long before the January 13 and 19 Incidents:

- **Mar. 15, 2012:** "The patient suffers from severe depression, stress and

[6] Because neither employee spoke to her, Plaintiff concedes that G. Garcia and Johnson made no reference to her race, national origin, or alleged disability during the encounter. [AOE-Ex-4 (Plf-Dep., 424:2–11; 425:16–25).]

anxiety." [AEO-Ex-15.]

- **Aug. 20, 2020:** "[She] feels anxiety, depression and insomnia…The Patient is currently taking medications for depression, anxiety." [AEO-Ex-17.]
- **Sept. 11, 2020:** "Takes [medication] for her depression, suffering for years…complex history." [AEO-Ex-18.]
- **Dec. 10, 2020:** "[Test results] indicative of severe levels of anxiety…severe levels of depression…The results of the psychological tests suggest that Ms. Burmayan is reporting severe clinical levels of anxiety and severe levels of depression." [AEO-Ex-7.]
- **Jan. 4, 2020:** "She feels out of control emotionally." [AEO-Ex-9.]
- **Jan. 4, 2020:** "She experiences conflict with others due to her irritable mood." [*Id.*]
- **Jan. 4, 2020:** "She feels much more sensitive and emotional than she once was. She has urges to break or smash things…She has difficulty controlling her impulses." [*Id.*]
- **Jan. 4, 2020:** "She reports angry outbursts and is easily startled. She feels nervous, restless, agitated, and tense. She reports spells of terror and panic. She has difficulty making decisions, concentrating, and remembering things." [*Id.*]

## III. ARGUMENT

### A. <u>First Cause of Action (Bane Civil Rights)</u>

California Civil Code section 52.1 (known as the "Bane Act") is intended to address *egregious, deliberate, and spiteful* interferences with constitutional rights—far beyond just any tort.[7] [*Shoyoye v. Cty. of Los Angeles* (2012) 203 Cal.App.4th 947, 959 ("[T]he statute was intended only to address only egregious interferences with *constitutional rights*, not just any tort.") (emphasis added)]. Here, Plaintiff alleges that CVS, through the Glendale Store employees, violated her Fourth Amendment Rights (unreasonable search/seizure) [Compl. ¶ 24]; First Amendment Rights (free speech) [*id.*, ¶ 26]; and right to "bodily integrity." [*Id.*, ¶ 25.]

To establish the prima facie elements of a Bane Act claim, a plaintiff must

[7] Notably, the Bane Act was enacted to "stem a tide of hate crimes" in California. [*Shoyoye*, 203 Cal. App. 4th at 956-957.]



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

prove (1) that the defendant engaged in "threats, intimidation, or coercion," (2) with the *specific intent* to violate the plaintiff's constitutional or statutory rights. [*See Venegas v. Cty. of Los Angeles* (2004) 32 Cal.4th 820, 843; *Reese v. Cty. of Sacramento* (9th Cir. 2018) 888 F.3d 1030, 1043.] For myriad reasons, Plaintiff cannot establish either element.

### ***1. As a private entity, CVS cannot be liable for First or Fourth Amendment violations.***

As a threshold matter, CVS is a private entity and cannot be held liable for violations of the First or Fourth Amendments. The First Amendment restricts only governmental conduct—not private action. CVS and its employees are not state actors. [*Manhattan Cmty. Access Corp. v. Halleck* (2019) 139 S. Ct. 1921, 1928.] Plaintiff offers no evidence (because none exists) that CVS acted "on behalf of" the government or in any capacity that would transform it into a state actor.

The Supreme Court has recognized only three narrow circumstances in which a private entity may be deemed a state actor:

1. When performing a traditional, exclusive public function;
2. When the government compels the private entity to act; or
3. When the government acts jointly with the private entity. [*Id.* at 809.]

None of these apply here, and Plaintiff does not allege otherwise. Indeed, the record confirms that Plaintiff was not prevented from engaging in any expressive conduct. On January 13, she shopped for nearly an hour, used the self-checkout, and left the store. On January 19, she entered the store, looked for a manager, and exited the store.

The same analysis applies to Plaintiff's Fourth Amendment theory. Only the government—or its agents—can violate the Fourth Amendment. [*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334 ("Only the government or its agents can do so.").] Plaintiff's suggestion that CVS participated in an unlawful "search and seizure" is unsupported and implausible. She admits that the CVS employees neither touched

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

her nor spoke to her during the incident in question.

At most, CVS contacted law enforcement. But merely reporting an incident does not convert a private party into a state actor. [*See Franklin v. Fox* (9th Cir. 2002) 312 F.3d 423, 445 (no joint action where law enforcement made an independent decision to act); *Town of Castle Rock v. Gonzales* (2005) 545 U.S. 748, 760–61 (police retain discretion in responding to reports).] The officers themselves confirmed their independence:

- Officer Armendariz testified that he never spoke with any CVS employee. [AEO-Ex-19 (Armendariz-Dep., 237:18–21; 271:24.]
- Officer Ross testified that he detained Plaintiff based on her demeanor, the time of night, and the need to de-escalate the situation. [AEO-Ex-20 Ross-Dep., 85:20–24.] He later arrested her after observing her being "loud" and "argumentative," and learning she had "basically trespassed." [*Id*. at 394:21–395:2.]

Accordingly, CVS is not (and was not) a state actor, and there is no evidence of joint action or government compulsion.

***2. No reasonable trier of fact could possibly conclude that the CVS employees engaged in threats, intimidation, or coercion.***

Plaintiff's Bane Act claim also fails because there is no evidence of "threats, intimidation, or coercion," as required by statute. The standard is exacting. Verbal confrontations—and in some instances, physical contact—are insufficient to support Bane Act liability. [*See e.g. Animal Prot. & Rescue League, Inc. v. Cnty. of Riverside*, No. D085176, 2025 WL 1573295, at *4 (Cal. Ct. App. May 12, 2025), reh'g denied (May 27, 2025) (repeated arrest threats insufficient); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 66 (2015) (confiscation threats not coercion); *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (pursuit, grabbing, pat-down not Bane Act interference); *Williams v. City of Pleasanton*, 2023 WL 8242106, at *17 (N.D. Cal. Nov. 28, 2023) (physical removal not coercive).

Here, Plaintiff admitted no touching, no threats, no suggestion of violence. [AOE-Ex. 4 (Plf. Dep. 121:17–122:2).] And the conduct she does allege, such as making "false accusations" or asking her to wear a mask, does not meet the statutory

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

threshold. Courts have repeatedly held that reporting alleged misconduct to law enforcement, even if inaccurate or resulting in adverse consequences, does not constitute coercion under the Bane Act. [*See Cobb v. Adams*, No. C 13-04917 JSW, 2014 WL 2212162, at *2 (N.D. Cal. May 28, 2014); *Salcido v. City of Mountain View*, No. 24-CV-08833-NC, 2025 WL 1307811, at *6–7 (N.D. Cal. May 6, 2025); *Williams*, *supra*.]

Similarly, Plaintiff's claim that she was asked to wear a mask on January 13 fails. Courts have held that enforcing neutral store policies—particularly during a public health emergency—does not constitute coercion. [*See Julian v. Mission Cmty. Hosp.* (2017) 11 Cal.App.5th 360, 395; *Cuviello v. City of Stockton* (E.D. Cal. Mar. 6, 2019) 2019 WL 1058578, at *7; *Cnty. of Los Angeles Dep't of Pub. Health v. Super. Ct.* (2021); *Schmidt v. City of Pasadena* (C.D. Cal. Mar. 21, 2024) 2024 WL 1640913, at *11 (Kronstadt, J.); *Disbar Corp. v. Newsom* (C.D. Cal. 2020) 508 F. Supp. 3d 747 (Nunley, J.).]

*Williams v. City of Pleasanton* is instructive. There, the court dismissed a Bane Act claim based on allegations that hospital staff falsely reported a visitor's aggressive behavior to police. The court found no evidence that the defendants made any threats or attempted to coerce the plaintiff into surrendering her rights, apart from the request to leave a room or be removed. [*Id*., 2023 WL 8242106, at *17.]

The Bane Act expressly provides that "speech alone" is not actionable unless it includes a threat of violence. [Civ. Code § 52.1(k).] Plaintiff admitted that no such threats occurred. Her testimony confirms that the employee merely repeated requests that she wear her mask properly. [*See e.g.* Plf-Dep., 113:13–18 ("He just kept repeating that [I] needed to have the mask over [my] nose."); *see also* 75:12–13; 77:16, 19-20; 114:16–18.] Even if these statements were perceived as curt or insistent, they do not constitute threats or intimidation. [*See Shoyoye,* 203 Cal.App.4th at 961.]

Plaintiff's allegation that employees "followed her around the store" is

similarly deficient. Courts have rejected Bane Act claims based on far more aggressive conduct. [*See Allen* (defendant accused of threatening arrest), *Jones* (defendant accused of seizing personal property), *Animal Protection* (defendant accused of physically grabbing and restraining individuals), *Williams* (defendant accused of repeatedly asking a visitor to leave a patient room, then proceeding to physically remove her), *supra*.] None of the above conduct occurred here. Plaintiff does not allege that she was touched, restrained, threatened with arrest, or had property taken. Her subjective perception that the conduct was "threatening" is not enough. The statute requires an objective threat of violence—which she admits did not occur. [*Allen*, 234 Cal.App.4th at 66.]

Accordingly, Plaintiff cannot establish the "threats, intimidation, or coercion" element of her Bane Act claim. Her First Cause of Action fails as a matter of law.

***3. No reasonable trier of fact could conclude that CVS specifically intended to violate Plaintiff's rights.***

Finally, Plaintiff's Bane Act claim fails for an additional, independent reason: she cannot establish that CVS acted with the specific intent to violate her constitutional rights. To prevail, Plaintiff must show that CVS acted with "the particular purpose of depriving the citizen victim of [her] enjoyment of the interests protected by" a constitutional or statutory right. [*Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, 803.]

Plaintiff offers no evidence—not even a plausible allegation—that any CVS employee acted with such intent. She does not claim they made accusations to the police, followed her, or enforced the mask policy with the deliberate aim of infringing on her rights to free expression, bodily integrity, or freedom from unlawful seizure. To the contrary, the undisputed evidence shows:

- The CVS employees were simply trying to enforce store, city, and state mask mandates. [*See*, *e.g.,* AEO-21 (Johnson-Dep., 53:10, 54:14 ("There was a mask mandate for California, and she was not doing it." "There was a mandate. You



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

have to wear a mask to come into the store."); AEO-22 (Garcia-Dep., 57:23-25 ("If they are not compliant with the mask mandate we are not allowed to have [them] in the store").]

- The Glendale police officers exercised independent discretion in responding to the incident. [*See* AEO-Ex-19 (Armendariz-Dep. 237:18–21, 271:24) (confirming no contact with CVS employees on the night of the arrest); AEO-Ex-20 (Ross-Dep. 85:20–24 (confirming independent decision to detain).]

In short, there is no evidence of any specific intent to violate Plaintiff's rights. Absent this element, Plaintiff's First Cause of Action cannot survive.

**B. <u>Second Cause of Action (Unruh Civil Rights Act)</u>**

***1. The Unruh Act does not exempt customers from neutrally applied health mandates.***

Initially, the Unruh Civil Rights Act does not entitle individuals to disregard facially neutral, uniformly enforced public health policies. Absent medical documentation substantiating her claimed disability, Plaintiff's refusal to wear a mask properly appears to reflect personal preference—particularly in light of her opposition to COVID-19 safety measures, evidenced by her social media activity.

By its terms, the Unruh Act "does not extend to practices and policies that apply equally to all persons." [*Turner v. Ass'n of Am. Med. Colls.* (2008) 167 Cal.App.4th 1401, 1408 (citing Civ. Code § 51(c)).] Accordingly, the CVS employees' enforcement of public health mandates does not constitute the type of "arbitrary, invidious discrimination" the statute was designed to prevent. [*See Goldsmith v. CVS Pharmacy, Inc.*, 2020 WL 3966004, at *3 (C.D. Cal. May 5, 2020) (Birotte Jr., J.); *Parker v. Wolf*, 506 F. Supp. 3d 271, 291 n.20 (M.D. Pa. 2020) (describing mask mandates as "at worst, minor and fleeting inconveniences, especially when compared to the widespread infectiousness and death.").]

In *Yaya v. Nowhere Partners Corp.*, No. 22STCV03083 (Cal. Super. Ct. Mar. 13, 2023), the Los Angeles Superior Court rejected an Unruh Act claim brought by a

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

customer who was denied entry to a grocery store for refusing to wear a mask, despite claiming a breathing impairment. The court held that the plaintiff failed to show that the mask policy was applied unequally or that similarly situated individuals were treated more favorably. [*Yaya v. Nowhere Partners Corp.* (Cal. Super. Ct., Mar. 13, 2023) No. 22STCV03083.][8]

Plaintiff's claim suffers from the same evidentiary deficiency. Like *Yaya*, Plaintiff has not shown that the mask policy was applied selectively or discriminatorily. The Unruh Act does not provide a right to exemption from neutral, health-based policies, nor does it authorize people to disregard public regulations.

***2. Plaintiff cannot establish denial of access or intentional discrimination.***

To establish a prima facie case of discrimination under the Unruh Rights Act, Plaintiff must show that: (1) she was denied equal access to goods or services; (2) her race, national origin, or disability was a substantial motivating reason for the denial; (3) she suffered harm; and (4) CVS's conduct was a substantial factor in causing that harm. [*See Goldsmith v. CVS Pharmacy, Inc.*, No. 2:19-cv-06175-AB (C.D. Cal. May 5, 2020) 2020 WL 3966004, at *4 (Birotte Jr., J.); *see also Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937.] Crucially, a showing of <u>intentional</u> discrimination *is required* to prevail. [*Cullen v. Netflix, Inc.* (N.D. Cal. 2012) 880 F. Supp. 2d 1017, 1024.] Here, Plaintiff cannot establish that she was not denied access to CVS's goods or services, and there is no evidence that her race or alleged disability factored into any employee's conduct.

**(a) <u>No denial of access to goods or services</u>.**

Plaintiff was not denied access to any good or service available to similarly situated customers. She admitted that she was not denied service on January 13. [AOE-Ex-4 (Plf-Dep., 110:3–5, "as far as the service goes, I had not been denied

[8] *See* AOE-Ex-21 (LASC March 13, 2023 Order, attached to the Request for Judicial Notice).



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

service on January 13").] On January 19, she entered the store only to speak with a manager—not to shop. [*Id.* at 141:8–16.]

Even if Plaintiff claims she was denied a full-service checkout, the record shows she was asked to adjust her mask in accordance with a facially neutral, uniformly enforced public health policy. Her refusal to comply was her choice. Such enforcement does not constitute actionable discrimination. [*Hessians Motorcycle Club v. J.C. Flanagans* (2001) 86 Cal.App.4th 833, 837; *Glenn v. President & Trs. of Santa Clara Coll.* (Cal. Super. Ct., Aug. 27, 2024) 2024 WL 3948495, at *10 ("Despite this broad application, the Unruh Act "does not extend to practices and policies that apply equally to all persons…A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class.").]

And to the extent Plaintiff alleges she was "insulted" or "embarrassed" or "deprived" of her preferred shopping experience, that is not a basis for liability. [*See Dandridge-Barnett v. Barnes & Noble, Inc.*, 2015 WL 226017, at *3 (C.D. Cal. 2015) *aff'd* 671 F. App'x 452 (9th Cir. 2016) (Kato, J.).]

**(b) <u>No evidence of intentional discrimination</u>.**

Even assuming Plaintiff could establish she was denied access to goods or services, her claim nevertheless fails because she has presented no evidence of intentional discrimination. [*See Gutierrez v. Gonzalez*, No. CV 16-7268 (C.D. Cal. Apr. 26, 2017) 2017 WL 1520419, at *6 (Snyder, J.) ("Under the Unruh Act, 'willful, affirmative misconduct' constitutes intentional discrimination."); *Turner,* 167 Cal.App.4th at 1411 ("Plaintiffs have neither alleged nor proven that defendant was motivated by a [discriminatory] animus."); *Cullen,* 880 F. Supp. 2d at 1024 ("To sufficiently state a violation under the Unruh Act, plaintiff's claims must be grounded in allegations of intentional discrimination.").]

Although Plaintiff alleges that she was treated unfairly "because of [her] minority status as an Armenian and her disability" [*See* Compl., ¶ 30], these

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

conclusory allegations are unsupported by any admissible evidence.

**(c) <u>Plaintiff's allegations of disability-based discrimination are unsupported by evidence</u>.**

Plaintiff's disability theory fails for three independent reasons:

1. **No qualifying disability:** Plaintiff has not shown she had a disability under the Unruh Act. [*See Goldman v. Standard Ins. Co.* (9th Cir. 2003) 341 F.3d 1023; *Birdwell v. AvalonBay Communities, Inc.* (C.D. Cal. 2024) 742 F. Supp. 3d 1024, 1031 (Tigar, J.) ["Evidence proving that the plaintiff was disabled is necessary to show that the disability was a motivating factor for the denial…under the Unruh Civil Rights Act."].] Her medical records contain no documentation supporting a mask exemption prior to January 13, 2021. [*See* Section II.A.2, *supra.*]

2. **No evidence of bias:** Plaintiff's own testimony negates any inference of disability-related bias. Plaintiff testified that the CVS employees <u>did not speak to her at all</u>. [AOE-Ex-4 (Plf-Dep., 425:18–25).] There is no direct or circumstantial evidence of discriminatory intent. [*Wilkins-Jones v. Cnty. of Alameda* (N.D. Cal. 2012) 859 F. Supp. 2d 1039, 1052–53.]

3. **Pure speculation:** Plaintiff's theory rests entirely on conjecture. Plaintiff asks this Court to infer that disability bias is the only plausible explanation for the CVS employees' enforcement of the mask mandate. However, courts have consistently held that speculation is insufficient to defeat summary judgment. [*See, e.g., Clark v. West Contra Costa Unified Sch. Dist.* (N.D. Cal. Mar. 15, 2000) 2000 WL 336382, at *4 ("Mrs. Clark's only evidence of discriminatory intent is a speculative conclusion"; plaintiff's rhetorical question "what other reason" than a protected category was insufficient to defeat summary judgment); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.* (C.D. Cal. 2015) 2015 WL 12734783, at *2–3 (Otero, J.) ("the possibility of discrimination premised on speculation, without any underlying factual basis, is insufficient to state a claim").]

In *C.B. v. Sonora Sch. Dist.* (E.D. Cal. 2009) 691 F. Supp. 2d 1123, 1155, the





PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

court rejected a similar claim where the plaintiff alleged disability-based mistreatment but failed to show that the conduct was motivated by discriminatory intent. The same result applies here.

In sum, Plaintiff was required to offer admissible evidence of intentional discrimination. Instead, she relies solely on conjecture.

**(d) No reasonable trier of fact could conclude that CVS's conduct was motivated by race-based discrimination.**

Plaintiff's race-based claim is likewise unsupported. She admitted:

> "I don't know what [the employees] believed… I did not hear any comments that they made about me being Armenian… I can't assume or speculate what their thoughts were." [AOE-Ex-4 (Plf-Dep. 425:6–10).]

The CVS employees similarly testified that they were unaware of Plaintiff's race or ethnicity at the time of the events. [*See* AOE-Ex-20 (Garcia-Dep., 148:20-21; 149:1-5) (stating he had "no idea" if Plaintiff was Armenian); AOE-Ex-19 (Johnson-Dep, 32:1-9 (stating he only learned she was Armenian after the fact).] In sum, Plaintiff's racial bias theory is pure conjecture, and courts have consistently rejected similarly unsupported claims. [*See, e.g., Yang v. ActioNet, Inc.* (C.D. Cal. 2015) 2015 WL 13385917, at *4 (Birotte Jr., J.) ("Plaintiff's attempt to draw inferences of racial bias [to the comment "this Korean co-worker who chews ice and is an asshole"] is wholly speculative, even taking the facts as true and in light most favorable to Plaintiff. In all, [it] does not pass the *Iqbal–Twombly* threshold and cannot support a claim.").][9]

Moreover, even if Plaintiff had not conceded the absence of race-related

---

[9] The Ninth Circuit consistently agrees. [*Corales v. Bennett* (9th Cir. 2009) 567 F.3d 554, 568 (plaintiff was unable to show differences in treatment of them versus others, warranting summary judgment of Unruh claim); *Reyes v. Atl. Richfield Co.* (9th Cir. 1993) 12 F.3d 1464, 1471 (summary judgment on Unruh claim warranted where plaintiffs had no evidence suggesting those outside the protected category were treated differently); *Wardany v. City of San Jacinto* (9th Cir. 2013) 509 F. App'x 650, 651 (affirming summary for "no direct or circumstantial evidence of discriminatory intent, just [plaintiff's] own speculation, which does not create a triable issue").]



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

comments and conduct, her claim would still fail for two additional reasons:

- **Demographics:** Glendale has one of the highest concentrations of Armenian Americans in the U.S., with one-third of the city identifying as having Armenian ancestry. [AOE-Ex-22 (Census Data.)] Johnson testified that 70% of customers were Armenian, and his romantic partner at the time was Armenian. [AOE-Ex-19 (Johnson-Dep., 162:22–24; 164:10–11).]
- **No disparate treatment:** Plaintiff cannot identify any similarly situated non-Armenian customers who were treated more favorably. She admitted that she has no evidence that any other customer was permitted to wear a mask below the nose or was treated differently by the employees in question. [AOE-Ex-4 (Plf-Dep., 152:1–14; 153:13–25 (admitting she has no evidence of how the cashier treated other customers); 154:9–20 (admitting she has no knowledge of whether the cashier asked other customers to have masks covering their noses).]

Plaintiff has failed to present any admissible evidence that she was denied access to goods or services, or that any CVS employee acted with discriminatory intent based on her race, national origin, or disability.

### C. Fifth Cause of Action (42 U.S.C. § 1981)

Section 1981 prohibits racial discrimination between private actors in "the making, performance, modification, and termination of contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." [42 U.S.C. § 1981(b).] Plaintiff's claim under this statute is governed by the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. [*See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145-46 (9th Cir. 2006) (applying *McDonnell Douglas* to section 1981 claims).] Plaintiff must first establish a prima facie case of intentional racial discrimination. [*Id.* at 1145.] If she succeeds, the burden shifts to CVS to articulate a legitimate, non-discriminatory reason for its action(s). [*Id.*] If CVS meets this minimal burden, the burden shifts back to Plaintiff to demonstrate with "substantial

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

responsive evidence" that the stated reason was false or pretextual. [*Id.*; *see also Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.]

***1. Plaintiff cannot establish a prima facie case.***

To establish a prima facie claim under 42 U.S.C. § 1981, a plaintiff must demonstrate: (1) membership in a racial minority; (2) intentional race-based discrimination by the defendant; and (3) that the discrimination impaired a protected activity, such as the right to make or enforce a contract. [*Domino's Pizza, Inc. v. McDonald* (2006) 546 U.S. 470, 476.] Plaintiff cannot satisfy element two or three.

**First,** Plaintiff cannot demonstrate that her race was the "but-for" cause of any alleged injury. [*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media* (2020) 589 U.S. 327, 341 ("To prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").] This standard requires evidence that race was the exclusive reason for the alleged interference—here, CVS's involvement in Plaintiff's arrest. [*See* Compl. ¶ 50; *Waldron v. Rotzler* (N.D.N.Y. 1994) 862 F. Supp. 763, 768 ("In order to make a proper pleading under § 1981, plaintiff must allege some facts that demonstrate that his race was the reason for the defendants' actions.").]

As discussed in Section II(B), there is no evidence that CVS's actions were racially motivated. The record shows that the CVS employees were enforcing a facially neutral mask policy, consistent with local and state public health mandates, without reference to Plaintiff's race or ethnicity. This District Court's reasoning in *Maduk v. CVS Pharmacy, Inc.* is instructive:

> [A]lthough Plaintiff summarily alleges that the CVS Pharmacy employees singled him out in bad faith …he does not allege facts showing that the employees acted out of hatred for African-Americans in general …To state a claim under § 1981, Plaintiff must plead facts that show that his alleged mistreatment was due to the employees' racial animus.

[*Maduk v. CVS Pharmacy, Inc.* (C.D. Cal. Feb. 9, 2023) 2023 WL 3272406, at *8.]

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**Second,** Plaintiff cannot establish that any alleged discriminatory conduct interfered with her right to make or enforce a contract. [*Domino's*, 546 U.S. at 479–80; *see also Addisu v. Fred Meyer, Inc.* (9th Cir. 2000) 198 F.3d 1130, 1137 ["For there to be a violation of § 1981, the plaintiffs must first prove that they have been denied the right to 'make and enforce contracts.'"].] Plaintiff alleges CVS interfered with her contractual rights by "seiz[ing], book[ing], and fraudulently convict[ing] [her] on false charges." [Compl. ¶¶ 49–50.] This allegation fails for several reasons:

- **No attempt to contract:** Plaintiff admits that her purpose for being in the store was not to enter into a contract by making a purchase, but merely to speak with a manager. [*See, e.g., Morris v. Dillard Dep't Stores, Inc.* (5th Cir. 2001) 277 F.3d 743, 752 ("[W]here a customer has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a § 1981 claim.").]
- **No right to a pleasant shopping experience:** Section 1981 does not guarantee a customer an uninterrupted, enjoyable, or even satisfactory shopping experience. [*See Maduk, supra*; *Clark v. Safeway, Inc.* (D. Or. 2020) 478 F. Supp. 3d 1080, 1090) ("Section 1981 does not guarantee patrons of a store an enjoyable shopping experience").]
- **No denial of service:** Store employees are not liable under § 1981 for contacting law enforcement where the customer was not denied entry or service. [*See Morris v. Office Max, Inc.* (7th Cir. 1996) 89 F.3d 411, 413 (dismissing § 1981 claim where store called police but plaintiff was not denied entry or service).]

This case is analogous to *Jackson v. Tyler's Dad's Place, Inc.*, 850 F. Supp. 53 (D.D.C. 1994), where African-American plaintiffs were initially told a restaurant was full but later discovered that tables were available. They returned to complain, without intending to dine. The court granted summary judgment because they "never sought to enter a contractual relationship on that occasion." [*Id*. at 56, n.6.] Similarly, Plaintiff concedes that she did not enter CVS on January 19, 2021, with the intent to make a purchase or otherwise engage in a contractual transaction. As

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

in *Jackson*, the conduct she challenges—including the events leading to her arrest—falls outside the scope of § 1981 and is not actionable under the statute.

The undisputed evidence confirms that Plaintiff was neither denied the opportunity to make or enforce a contract nor subjected to racial discrimination in violation of § 1981.

***2. CVS's actions were justified and not pretextual.***

Even assuming Plaintiff could establish a prima facie, her claim fails at steps two and three of the *McDonnell Douglas* burden-shifting framework.

At step two, the burden shifts to CVS to articulate a legitimate, non-discriminatory reason for its actions. CVS easily meets this burden. The undisputed evidence shows that its employees were enforcing a facially neutral mask policy consistent with local and statewide public health mandates. [*See Tandon v. Newsom* (N.D. Cal. 2021) 517 F. Supp. 3d 922, 966; *Calm Ventures LLC v. Newsom* (C.D. Cal. 2021) 548 F. Supp. 3d 966, 977 (Walter, J.); *Disbar Corp.,* 508 F. Supp. 3d at 755.]

At step three, the burden shifts back to Plaintiff to show that CVS's stated reason was pretextual. She cannot meet this burden. There is no evidence—let alone the "substantial responsive evidence" required—that CVS's actions were motivated by racial animus. To the contrary, the record shows no mention of race; no evidence of non-Armenian customers being treated more favorably; Glendale's population is predominantly Armenian; and the accused employee's partner is Armenian.

These facts collectively undermine any inference of discriminatory motive or pretext. Plaintiff may argue that employees could have deescalated the situation or avoided contacting law enforcement. But courts have made clear that the relevant inquiry is not whether the employer's decision was ideal, but whether it was motivated by unlawful discrimination. [*See Featherstone v. S. Cal. Permanente Med. Grp.* (2017) 10 Cal. App. 5th 1150, 1159-60 ("The factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is

wise, shrewd, prudent or competent."); *Arteaga v. Brink's, Inc.* (2008) 163 Cal. App. 4th 327, 344 ("The employer's stated legitimate reason does not have to be one that a judge or jurors would act on or approve.").]

Here, the undisputed evidence compels one conclusion: Plaintiff's race was not the motivating factor—nor even a factor—in the events of January 13 and 19, 2021. Accordingly, because Plaintiff cannot show that CVS's legitimate, non-discriminatory reason was pretextual, her § 1981 claim fails as a matter of law.

**D. Plaintiff's Claim For Punitive Damages Fails**

"For a punitive damages request to survive summary judgment, there must be evidence from which a reasonable juror c[an] find, by clear and convincing evidence, the [retaliatory] acts were" (1) committed with "oppress[ive], fraud[ulent], or malic[ious] [intent]," and (2) committed by an officer, director, or managing agent of the corporation. [Cal. Gov't Code §§ 3294(a), (b); *Blincow v. MillerCoors, LLC* (E.D. Aug. 15, 2018) 2018 WL 3869162, at *5; *Spinks v. Equity Residential Briarwood Apts.* (2009) 171 Cal.App.4th 1004, 1053.] "The evidence must be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind." [*Harbison v. Am. Motorists Ins. Co.* (E.D. Cal. 2009) 636 F.Supp.2d 1030, 1044.] Here, Plaintiff identified Joe Johnson and Guy Garcia as the CVS employee she believes were responsible for the alleged wrongful acts. [*See* Compl., *passim*.]

***1. Johnson and G. Garcia were not officers, directors, or managing agents of CVS.***

It is undisputed that Johnson and G. Garcia have never been officers or directors of CVS. [AOE-Ex. 25 at ¶ 6; AOE-Ex. 26 at ¶ 15.) The only remaining question is whether either, as store-level employees, qualifies as a "managing agent." They do not. California limits that status to employees who exercise substantial, independent authority over corporate policy. [*White v. Ultramar, Inc.*, 21 Cal.4th 563, 573 (1999); *Roby v. McKesson Corp.*, 47 Cal.4th 686, 714

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

(2009); *Cruz v. HomeBase*, 83 Cal.App.4th 160, 167–68 (2000) (same).]

In *Davis v. Kiewit Pacific Co.*(2013) 220 Cal.App.4th at 366-370, the court outlined a two-step test for determining if an employee is a managing agent. First, the employer must show the employee lacked substantial discretionary authority over significant aspects of the employer's business. This involves detailing the nature and scope of the employee's authority, and describing the employee's duties and responsibilities. If met, the burden shifts to the plaintiff to prove the employee exercised such authority. [*Davis*, supra; *White*, supra, at 577.]

Here, Johnson and G. Garcia do not qualify as managing agents because the scope of their limited authority (neither was the assigned store manager) was narrowly confined to a single store, and strictly bound by company policies created at CVS's corporate headquarters, with no discretion to deviate from or modify those policies. [*See* AEO-Ex-25 at ¶ 5; Ex-26 at ¶¶ 17-19.]

*Limited geographic scope.* Johnson and G. Garcia worked at a single store, and neither was the store manager. Even if they were found to have *some* management authority, it would extend to less than 0.1% of its nearly 10,000 locations. Critically, Johnson and G. Garcia have no role in CVS's non-retail operations, such as specialty pharmacies, infusion services, or medical insurance divisions. [*See* AEO-Ex-28.] Their limited oversight lacked any influence over company-wide policies or strategic initiatives. [*See Taylor v. Trees, Inc.* (C.D. Cal. 2014) 58 F.Supp.3d 1092, 1106 (Ishii, J.).]

*Limited scope of influence.* Johnson and G. Garcia's influence was limited to their single store, where they were required to take direction from a store manager. [*See* AEO-Ex-25 at ¶ 4; Ex-26 at ¶¶ 14, 16.] They had no role in setting budgets, no roles in creating or guiding policies, and no connection whatsoever to broader CVS operations—let alone any other CVS stores. [*Id.*]

*Limited scope of job duties.* Johnson and G. Garcia's job duties/ responsibilities were limited to the day-to-day activities of their assigned store, as

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

directed by their manager. [*See* AOE-Ex-25 at ¶ 4; Ex-26 at ¶¶ 14, 16.] Their roles did not extend beyond this store, nor did it involve duties associated with "top management" or "interfacing with stakeholders." [*Davis, supra*, at 367.]

The limited scope of management authority both employees had was firmly bound by CVS's corporate policies governing day-to-day operations in the front store only (not the pharmacy). Simply put, Johnson and G. Garcia lacked the independent discretion to deviate in any way from CVS's established policies, procedures, and strategic initiatives. [*See* AEO-Ex-25 at ¶ 5; Ex-26 at ¶¶ 17-19.] As a matter of law, they were not managing agents of CVS. [*See e.g., Almaweri v. Walgreen Specialty Pharmacy, LLC* (N.D. Cal. Jan. 26, 2015) 2015 WL 349158.]

*Almaweri* is on point. There, the court (distinguishing *White v. Ultramar*) rejected a store manager's punitive damages claim against Walgreens, finding that the District Manager, Moy, was not a "managing agent." Moy oversaw only 33 stores (0.41% of Walgreens' nationwide locations) and lacked authority to set corporate policies, operating solely within pre-established guidelines. [*Id.* at *10.] Notably, several California courts have already determined that individuals holding a District-level position ***at CVS*** (or other similar retailers, like Walmart)—in other words, multiple hierarchal levels *<u>higher</u>* than Johnson and G. Garcia)—are <u>not</u> managing agents as a matter of law.[10]

***2. Johnson and G. Garcia did not act with oppressive, fraudulent, or malicious intent.***

Even if Johnson and G. Garcia had been officers, directors, or managing

[10] *See Julie Brazelton v. CVS Pharmacy, Inc.*, No. CV-20-10604, at ECF No. 52 (C.D. Cal. June 28, 2022) (District Leader); *Shirin Moghtanei v. CVS Pharmacy, Inc.*, AAA Case No. 01-21-0002-6695, at *30-31 (2023) (Pharmacy Manager and District Leader); *Eva Ventura v. CVS Pharmacy,* Inc., AAA Case No. 01-20-0015-4233, at *12 (2022) (Ops Manager); *Hsiao v. Walmart Assocs., Inc.*, 2018 WL 6136155, at *11 n.18 (C.D. Cal. Apr. 12, 2018) (Store Manager); *Garcia v. Wal-Mart Assocs., Inc.*, No. CV 1907784 CJC SKX, 2020 WL 8455110, at *1 (C.D. Cal. Dec. 21, 2020) (Store Manager); *Raygoza v. Walmart Inc.*, No. CV 21-809-GW-KSx (C.D. Cal. Dec. 21, 2020) (Assistant Manager). AOE-Ex. 27 (Decisions for all six cases).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

agents (they were not), punitive damages nevertheless *would* not apply. Malice is defined as despicable conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people [and has been described as] having the character of outrage frequently associated with crime." [*Andrade v. Arby's Rest. Grp., Inc.* (N.D.Cal.2016) 225 F.Supp.3d 1115; Cal. Civ. Code § 3294 (c)(1).]

There is simply no evidence—let alone the "clear and convincing" evidence required under California Civil Code § 3294—that either Joe Johnson or G. Garcia Guengaged in the type of "vile," "base," or "wretched" conduct necessary to support a claim for punitive damages. [*See Spinks v. Equity Residential Briarwood Apts.* (2009) 171 Cal.App.4th 1004, 1053.] Plaintiff admits she entered the CVS store on January 13, 2021, without wearing her mask over her nose, violating the Glendale Mask Mandate. [AOE-Ex. 4 (Plf. Dep. 121:17–122:2).] By her own testimony, G. Garcia merely instructed her—repeatedly—to pull up her mask. He never touched her, threatened her, or referenced her race, national origin, or alleged disability. Plaintiff further concedes she provided no medical documentation to justify noncompliance, and surveillance footage does not show Garcia and Plaintiff together in the aisles.

As for Johnson, Plaintiff concedes that he never spoke to her, never touched her, and never made any comment whatsoever, let alone one that could be construed as malicious or oppressive. His mere presence near the self-checkout kiosk, which Plaintiff described as "hovering," does not rise to the level of egregious misconduct.

G. Garcia and Johnson's actions fall far short of the standard for conduct that is "so vile, base, or contemptible that it would be looked down upon and despised by ordinary decent people." [*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287.]

## IV. CONCLUSION

CVS respectfully requests that the Court grant its motion in full.

DATED: September 22, 2025 PAYNE & FEARS LLP

By: */s/ Leilani E. Jones*
DANIEL F. FEARS
ANDREW K. HAEFFELE
LEILANI E. JONES

Attorneys for Defendants GARFIELD BEACH CVS, LLC (erroneously sued as CVS Pharmacy, Inc.); GUY GARCIA and JOE JOHNSON

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100