Daniel F. Fears, Bar No. 110573
dff@paynefears.com
Andrew K. Haeffele, Bar No. 258992
akh@paynefears.com
Leilani E. Jones, Bar No. 298896
llj@paynefears.com
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendants GARFIELD BEACH CVS, LLC (erroneously sued as CVS Pharmacy, Inc.) GUY GARCIA and JOE JOHNSON

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANOUSH BURMAYAN,

Plaintiff,

v.

CVS PHARMACY, INC., a corporation doing business in California, GUY GARCIA, an individual, JOE JOHNSON, an individual; CITY OF GLENDALE, Officer JAMES ROSS #22471, individually and as a peace officer, Officer GRIFFIN ARMENDARIZ #27999, individually and as a peace officer, and DOES 1-10,

Defendants.

Case No. 2:23-cv-01788 FMO-AGR

Honorable Fernando M. Olguin

**DECLARATION OF JACK GEVDZHYAN**

Judge: Hon. Fernando M. Olguin
Date: October 23, 2025
Time: 10:00 am
Crtrm.: 6D

Action Filed: January 6, 2023
Trial Date: None set.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**DECLARATION OF JACK GEVDZHYAN**

I, Jack Gevdzhyan, declare as follows:

1. I am currently employed by CVS Pharmacy, Inc. ("CVS") and have been a CVS employee since 2019. My job title is Store Team Leader. I have managed CVS Store No. 9787 in Glendale, California since 2019.

2. I have personal knowledge of the facts set forth below, or knowledge based upon my access to information and records maintained in the regular course of CVS's business. If called and sworn as a witness, I could and would competently testify to these facts.

3. In my role as a Store Team Leader, I am responsible for managing the retail section of a single CVS location (Store 9787). I do not manage the pharmacy section of Store 9787, that section is managed by the Pharmacy Manager. I am not (and have never been) an officer or director of CVS.

4. In my role as a Store Team Leader, my specific job duties include:

- **Staff supervision:** supervising store staff and ensuring tasks are being completed according to company guidelines.
- **Training and performance**: providing training and feedback to store staff as needed.
- **Customer service:** monitoring customer service interactions and addressing customer concerns or complaints.
- **Operations:** overseeing daily store operations, including opening and closing procedures.
- **Products/inventory:** managing inventory levels, coordinating deliveries with vendors, and assisting with merchandising and promotional setups.
- **Materials and sales**: tracking sales performance and key metrics.
- **Loss prevention:** implementing safety and loss prevention measures in accordance with company standards.
- **Store leadership:** Communicating updates and directives from upper management to store staff.

5. The results of my decisions as a Store Team Leader are entirely localized in that they impact only the employees in the retail section of a single location, CVS Store No. 9787.

6. Store Team Leaders do not have independent discretion to make decisions that fall outside of CVS's policies, procedures, and strategic initiatives. Rather, in carrying out my job duties, I am required to follow CVS's corporate policies, procedures, and strategic initiatives.

**Shift Supervisor Guy Garcia**

7. In January 2021, Guy Garcia was an employee of CVS, staffed at Store -9787. His job title was Shift Supervisor. In that role, he reported to me.

8. A CVS Shift Supervisor holds a lower-level position in the retail chain of command. They do not have the authority to hire, fire, discipline, or formally evaluate employees, and they are not responsible for staffing, budgeting, or overall store performance.

9. The role is functionally similar to that of a cashier or floor associate, with the added responsibility of overseeing specific tasks during their scheduled shifts—such as opening or closing the store and assisting with customer complaints.

10. As a Shift Supervisor, Mr. Garcia's responsibilities included:

- **Merchandizing/presentation:** pricing items for sale on the Store's sales floor, stocking sales floor shelves, and putting together product displays and seasonal product displays.
- **Operations**: operating cash registers, opening/closing the store, and assisting with loading and unloading deliveries.
- **Loss prevention**: ensuring compliance with policies about door keys, safes, and alarms.
- **Customer service**: assisting customers with questions and problems, and resolving complaints.

**Operations Manager Joe Johnson**

11. In January 2021, Joe Johnson was also staffed at Store 9787. His job title was Operations Manager. In that role, he reported to me.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

12. A CVS Operations Manager holds a lower-level position in the retail hierarchy. They do not have authority to hire, fire, discipline, or formally evaluate employees. While they may assist with scheduling, they are not ultimately responsible for staffing, budgeting, or overall store performance.

13. Instead, their role centers on supporting daily operations, e.g., organizing inventory, stocking shelves, managing returns and damaged goods, and conducting safety checks.

14. As an Operations Manager, Mr. Johnson's responsibilities included (and still include):

- **Sales and inventory management**: overseeing incoming stock, managing replenishment, assisting with vendor deliveries, and assisting with loading/unloading deliveries.
- **Staffing**: if needed, helping the Store Team Leader with creating and adjusting employee schedules.
- **Financial management**: ensuring compliance with policies like cash handling, loss prevention, and audit readiness for the store.
- **Customer service**: assisting customers with questions and problems, and resolving complaints.

15. Neither Mr. Garcia nor Mr. Johnson are (or have ever been) officers or directors of CVS. I know this because I held a higher leadership position than both of them, and I myself have never been an officer of director of CVS. The highest job title held by Mr. Garcia (who is no longer a CVS employee) was Shift Supervisor. The highest job title held by Mr. Johnson was Operations Manager, his current job title.

16. The results of any decisions that either Mr. Garcia or Mr. Johnson made in their roles were entirely localized in that they impacted the retail section of a single location, Store 9787.

17. Neither Mr. Garcia nor Mr. Johnson had independent discretion to make decisions that fell outside of CVS's policies, procedures, and strategic

/ / /

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

initiatives. Rather, in carrying out their job duties, they were required to follow CVS's corporate policies, procedures, and strategic initiatives.

18. Because I did not have the authority to establish, influence, or modify CVS's corporate policies—and because I was in a more senior role than both Mr. Garcia and Mr. Johnson—it follows that neither of them could modify or create ad hoc company policy.

19. Instead, like I did in my role, they simply implemented directives from me, their manager. And any of my directives were dictated by policies established by corporate management at CVS.

**<u>2021 Covid Store Procedures</u>**

20. Following the outbreak of Covid in mid-2020, Store 9787 was required to adhere to city, county, and state public health ordinances. Glendale specifically imposed a mask mandate and social distancing.

21. During this period, we prioritized the health and safety of both our customers and employees. Staff were encouraged to maintain appropriate physical distance from coworkers and patrons. Mask-wearing was mandatory, and employees were not required to engage with customers who refused to comply with the mandate if doing so made them feel unsafe. In such cases, we made it clear that no employee was expected to put themselves at risk due to a customer's disregard for public health guidelines.

22. In situations where customers refused to wear masks, it was not uncommon for employees to suggest alternative options to minimize direct interaction. For example, customers could use the self-checkout stations, where available, to complete their purchases independently. This approach allowed staff to maintain their safety while still offering options to the customer.

/ / /

/ / /

/ / /

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed on this 27th day of June, 2025, in Los Angeles, California.

JACK GEVDZHYAN

4907-3553-3132.4

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# Jack Decl [Burmayan]

Final Audit Report 2025-06-27

| | |
|---|---|
| Created: | 2025-06-26 |
| By: | Leilani Livingston (llj@paynefears.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAACtu00c3qn6D4D5-zeHQ2RIIORRKAqW3G |

## "Jack Decl [Burmayan]" History

Document created by Leilani Livingston (llj@paynefears.com)
2025-06-26 - 2:02:03 AM GMT

Document emailed to Jack Gevdzhyan (jackgevdzhyan@yahoo.com) for signature
2025-06-26 - 2:02:07 AM GMT

Email viewed by Jack Gevdzhyan (jackgevdzhyan@yahoo.com)
2025-06-27 - 1:17:56 AM GMT

Document e-signed by Jack Gevdzhyan (jackgevdzhyan@yahoo.com)
Signature Date: 2025-06-27 - 1:19:39 AM GMT - Time Source: server

Agreement completed.
2025-06-27 - 1:19:39 AM GMT