# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIE BRAZELTON,<br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., et al.,<br>Defendant. | CV 20-10604 DSF (AGRx)<br><br>Order GRANTING in Part and DENYING in Part Defendant's Motion for Summary Judgment (Dkt. 23) |

Defendant CVS Pharmacy, Inc. moves for summary judgment on Plaintiff Julie Brazelton's claims. Dkt. 23 (Mot.). Brazelton opposes. Dkt. 36 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Defendant's motion is GRANTED in part and DENIED in part.

## I. UNDISPUTED FACTS

Brazelton worked as a Pharmacy Technician at CVS Store 9512 from June 2006 to February 2019. UF ¶ 1.[1] During her employment, Brazelton was a member of the United Food and Commercial Workers Union, Local 324 (the Union). Id. ¶ 2.

[1] Citations to UF refer to Plaintiff's Statement of Genuine Disputes and Additional Material Facts, dkt. 37, which incorporates CVS's proposed undisputed facts and Brazelton's responses to those facts. Citations to AMF refer to Brazelton's proposed additional material facts, which begin at page 44 of the UF. CVS did not submit a response to Brazelton's AMF. The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

CVS pharmacies typically have five primary workstations: drop-off, pick-up, drive-thru, quality assurance, and production. Id. ¶ 7. CVS uses a WeCare Workflow (WCW) Process, through which pharmacy staff are rotated throughout a multi-workstation facility based on the hour-by-hour needs of the pharmacy. Id. ¶¶ 5-6.

CVS offers accommodation options for injured and disabled employees, including light duty assignments, work environment adjustments, job duty modifications, and leaves of absence (LOAs), though Plaintiff disputes whether Defendant offered her such accommodations. Id. ¶ 9. Requests for accommodations or LOAs are handled through CVS's Reasonable Accommodation department (RA Department) and Leave of Absence department (LOA Department) at CVS's headquarters in Rhode Island. Id. ¶ 10. Accommodation requests are submitted, documented, and accommodated through a multi-step process. Id. ¶ 11.

Between March 2016 and February 2018, Brazelton requested numerous three-month continuous LOAs and extensions to those LOAs. Id. ¶¶ 12-16. In February 2018, Brazelton informed RA Partner Christine Arsenault that she wanted to return to work and would need to use a chair or stool. AMF ¶ 1. Brazelton requested a two-month extension of her LOA, and CVS approved her request through March 30, 2018. UF ¶ 17. Brazelton requested another extension to her LOA in March 2018, which CVS approved through May 3, 2018. Id. ¶ 18.

In May 2018, Brazelton was evaluated by her treating physician, and was placed on various restrictions, including "sit and stand at will for pain" for a duration of six weeks, including sitting for one hour and standing for one hour and repeating for an eight-hour shift. Id. ¶ 22; dkt. 27-7 at 1-5. Brazelton subsequently submitted a Reasonable Accommodation Questionnaire (RAQ) to CVS's RA Department with those restrictions. UF ¶ 22.

On May 10, 2018, Arsenault left a voicemail for Brazelton to let her know that she needed more specific information on how often Brazelton would need to sit. Id. ¶ 23. On May 14, Arsenault told

Brazelton she needed to know the frequency of sitting that would be required, and Brazelton was to clarify that information with her doctor at her upcoming physical therapy appointment. Id. ¶ 23. On May 30, Arsenault spoke with Collier, who said CVS was not able to accommodate Brazelton sitting every other hour in the RX area, and recommended Brazelton's LOA be extended until her next appointment on June 27. Id. On May 31, 2018, Collier spoke with Arsenault about the medical restrictions Brazelton submitted earlier that month. Id. ¶ 55.

On June 27, 2018, Brazelton was examined by her treating physician, who placed a restriction that she "take breaks as needed" through October 6 and to undergo an ergonomic evaluation by that date. Id. ¶ 24; Dkt. 27-8 at 1. Brazelton submitted an RAQ on July 11 with these restrictions. Id. Between July 17 and August 1, Brazelton spoke with RA Partners Tracy Sullivan and Christine Arsenault about returning to work. UF ¶ 25. On July 17, Brazelton stated that she wanted to take a fifteen-minute break every two hours, and that she did not want to sit for the entire eight-hour shift but that she would need to use a stool. Id. On July 24, Sullivan told Brazelton that the direction to "take breaks as needed" needed further clarification. Id. On July 31, Sullivan told Brazelton that her doctor said it was up to Brazelton to determine what she needed in order to take breaks, and they discussed that Brazelton's doctor was no longer with the practice and that Brazelton was unsure if she needed a different physician. Id.

On October 24, 2018, Brazelton was evaluated by her new treating physician, who wrote that Brazelton was "unable to stand or walk" for more than 30 minutes and that she "must sit/stand at will" for a period of four weeks, through November 21, 2018. Id. ¶ 26; dkt. 27-9 at 1. Brazelton submitted a RAQ, which stated that CVS should "allow patient to sit/stand at will, provide stool" until November 21, 2018. Dkt. 27-9 at 2. On November 26, Sullivan spoke with Brazelton, who said she believed she was unable to stand or walk for more than 30 minutes at a time and foresaw not being able to do production due to the constant twisting and turning of her feet that it would require. UF ¶ 27. On that call, Brazelton told Sullivan that prior to her LOA

she worked in the pharmacy primarily doing typing at drop-off and would be able to do everything except production during the period in which she was restricted from other activities. Id.; dkt. 27-9 at 10.

On December 1, 2018, Collier spoke with RA Partner Lynne DeGuilio by telephone about the medical restrictions submitted to the RA Department by Brazelton, which required her to limit walking and standing to 30 minutes. UF ¶ 59. Collier determined that CVS was not able to accommodate Brazelton's restrictions and ultimately determined that it was appropriate to extend Brazelton's LOA. Id. ¶¶ 60-64.

On December 3, 2018, Sullivan and RA Partner Lynne DeGuilio spoke with Collier, who said that there was a high volume of work, techs were constantly moving, and that CVS would not be able to accommodate the 30-minute limit for standing and walking, but that it would be more viable if it were increased to 60-90 minutes. Dkt. 27-9 at 10. Collier also stated that pharmacy techs need to be able to move for a large portion of their shift, and that Brazelton would need to clarify how much time she would need to be sitting. Id. Collier also stated that a new CVS store would be opening, and Brazelton may be able to work there when the restrictions were updated. Id.

Also on December 3, DeGuilio spoke with Brazelton and advised that her RAQ needed to clarify how much time she needed to be sitting, and told Brazelton that a 60-90 minute period for standing or walking would be more viable. Id. Brazelton stated that she and her doctor had tried to make an appointment for orthotics, which had previously been approved by CVS, but was advised while making that appointment that it was not approved, even though that was the "next step" in becoming "more mobile." Id. at 11. Brazelton also stated that her disability benefits would be running out in February 2019, so she would "need to start making alternative plans if she will not be able to come back to work." Id. On December 6, Brazelton submitted another RAQ eliminating the 30-minute sitting restriction. AMF 20; dkt. 39-5 (RAQ with December 6, 2018 timestamp).

On January 9, 2019, Brazelton was evaluated by her physician and was placed on the following restrictions: "unable to stand/walk for more than 30 mins." UF ¶ 28. On January 17, 2019, Brazelton submitted a notice of her resignation, which would be effective February 1, 2019. Id. ¶ 52; AMF ¶ 22.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Id. at 252. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (simplified).

## III. DISCUSSION

### A. Evidentiary Objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." Oracle, 627 F.3d at 385. A party seeking to admit evidence bears the burden of proof to show its admissibility. Id. "At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form. [The Court] instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

CVS submitted twenty-eight pages of evidentiary objections, most of which are repetitive. See dkt. 45 (Evidentiary Objections). The Court briefly considers CVS's objections.

CVS objects to paragraphs 7-9 of the Declaration of Sheila Rivera, dkt. 40 (Rivera Decl.), in which she stated that due to a medical condition in her back she had a doctor's note that requested an accommodation that allowed her to sit and stand as needed in the pharmacy and use a stool, which CVS accepted, and which did not affect her ability to carry out her job duties or participate in the WCW Process. Evidentiary Objections at 2. CVS objects to these statements on the grounds that they violate the best evidence rule by seeking to

prove the content of a writing without producing the original, and that her statements are contradicted by her reasonable accommodation records, which indicated she has no accommodation. Id. However, that Rivera's records did not indicate she was granted an accommodation to use a stool does not mean she did not use a stool, and Rivera may testify at trial as to her personal experience. See Fraser, 342 F.3d at 1036-37 ("At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form. . . . [The Court] instead focus[es] on the admissibility of its contents.") (citing Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (holding that an affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence, even though the affidavit itself might not be admissible). The Court overrules CVS's objections to the Rivera Declaration.

CVS objects to paragraphs 4-5 of the Declaration of Diane Madrigal, dkt. 41 (Madrigal Decl.), on the same grounds as the Rivera Declaration described above. Evidentiary Objections at 3. The Court overrules those objections for the same reasons.

CVS also objects to the Declaration of Steve Monjaras because he was disclosed only as a rebuttal expert and his declaration contains only affirmative opinions about Brazelton's case in chief. Evidentiary Objections at 2-3. The Court does not rely on the Monjaras Declaration in making its decision, but notes that his declaration is inadmissible to the extent it does not rebut statements made by CVS's experts.

CVS objects to several paragraphs of the Declaration of Julie Brazelton. Dkt. 39 (Brazelton Decl.). CVS objects to paragraph 52 of the Brazelton Declaration, which states the WCW Process was not consistently implemented, on the grounds that it contradicts Brazelton's deposition testimony that pharmacy technicians had to use the WCW Process. Evidentiary Objections at 6. The Court finds these statements are not necessarily inconsistent and overrules this objection. CVS also objects to paragraph 8 of the Brazelton Declaration, which states Brazelton spoke to Arsenault in February

2018 and informed her she would need a stool or chair when returning to work. Id. at 10-11. CVS cites statements from Brazelton's deposition that she believes she spoke with several people but did not recall the details, id., but the Court is not convinced those statements are inconsistent with Brazelton's declaration, as CVS argues, and overrules the objection. CVS makes the same objection with respect to Brazelton's statement in paragraph 15 of her declaration, in which she states she spoke with Collier in July 2018, but the statements in Brazelton's deposition to which CVS cites do not contradict that statement in her declaration. CVS also objects to paragraph 45 of the Brazelton Declaration in that it misstates the date of the attached documents. Evidentiary Objections at 14, 28. The Court relies on the underlying documents, not Brazelton's characterization of them.

CVS objects to statements in the Brazelton and Madrigal Declarations regarding their beliefs that CVS refused to return them to work because they had reached the highest rate of pay. Evidentiary Objections at 14-15. For reasons explained in its discussion of Brazelton's claims below, the Court does not rely on these statements.

Finally, CVS objects to statements in the Brazelton, Rivera, and Madrigal Declarations regarding meal and rest breaks as irrelevant because Brazelton did not bring claims under the California Labor Code. Evidentiary Objections at 16. Generally, an objection to evidence on the ground that it is "irrelevant . . . [is] duplicative of the summary judgment standard itself" and thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). CVS's objections are overruled. However, the statements about meal and rest break violations are clearly irrelevant to this action.

**B. Failure to Engage in the Interactive Process (Claim 8)**

Under FEHA, an employer must "engage in a timely, good faith, interactive process with the employee or applicant to determine

effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 379 (2015) (citing Scotch v. Art Inst. of Cal., 173 Cal. App. 4th 986, 1018 (2009) and Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 974 (2008). "An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." Scotch, 173 Cal. App. 4th at 1018 (simplified). "The interactive process determines which accommodation is required." Wysinger v. Auto. Club of S. Cal., 157 Cal. App. 4th 413, 425 (2007). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." Nadaf-Rahrov, 166 Cal. App. 4th at 985.

It is undisputed that the interactive process was over when Brazelton submitted her notice of resignation on January 17, 2019. At issue, however, is whether CVS failed to engage with the interactive process before that date.

CVS argues Brazelton cannot establish her claim for failure to engage in the interactive process because she, not CVS, was responsible for the breakdown in the interactive process. Mot. at 14. CVS points to the extensive communications between Brazelton and CVS employees regarding her accommodation requests and LOAs, which it characterizes as "frequent and consistent, and remained consistent through the date of her voluntary resignation." Id.

A reasonable jury could find that CVS failed to continue engaging in the interactive process when, on December 3, 2018, Brazelton told CVS that she had been unable to make an orthotics appointment because she was told it was not approved, even though she said it had previously been approved by CVS. Dkt. 27-9 at 10. Brazelton also told CVS that such an appointment would be the "next step" in becoming "more mobile" and that her disability benefits would be running out in February 2019, so she would "need to start making alternative plans if she will not be able to come back to work." Id. at 11. CVS has presented no evidence of any communications to Brazelton after December 3. Additionally, while Brazelton submitted another doctor's note to CVS on December 6 eliminating the 30-minute sitting requirement that CVS had said was unworkable, dkt. 39-5, CVS did not submit evidence of any response to that updated doctor's note. A reasonable jury could find this lack of communication with Brazelton was a breakdown in the interactive process.

Therefore, CVS has not met its burden and the Court DENIES its motion to dismiss as to Brazelton's claim for failure to engage in the interactive process.

### C. Failure to Accommodate (Claim 9)

The elements of a reasonable accommodation cause of action are (1) the employee had a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." Nealy, 234 Cal. App. 4th at 373. "[E]limination of an essential function is not a reasonable accommodation." Id. at 375.

CVS argues Brazelton cannot establish her claim for failure to accommodate for several reasons.[2]

First, CVS argues Brazelton was not able to perform the essential functions of her job as a pharmacy technician and was not able to work within CVS's WCW Process. Mot. at 15 (citing UF ¶¶ 5-8, 27). The

[2] CVS does not dispute that Brazelton had a disability.

WCW Process involves employee rotation through workstations at drop-off, pick-up, drive-thru, quality assurance, and production based on the hour-by-hour needs of the pharmacy. UF ¶¶ 5-7. CVS argues Brazelton was not able to perform the essential tasks of "remaining upright on the feet for sustained periods of time" and "moving about on foot to accomplish tasks, moving from one work area to another, which would be required of her due to the nature of the WCW Process. UF ¶ 3. Brazelton does not dispute that she was unable to perform those functions.

However, Brazelton has raised triable issues as to whether the WCW Process was consistently implemented at her CVS location such that it would be required for her to perform all the functions of her job that CVS argues are essential. Brazelton states she primarily worked at drop-off doing typing before she began her extended leave. See Brazelton Decl. ¶ 51; dkt. 27-9 at 9. Additionally, Brazelton cites the Declaration of Diane Madrigal, a Lead Pharmacy Technician at the same CVS store where Brazelton worked, who declared that she worked primarily in the drive-thru or drop-off for an entire shift. Madrigal Decl. ¶ 7. This lends support to Brazelton's claim that the WCW Process was not strictly implemented at Brazelton's location. CVS has not submitted evidence to the contrary.

Brazelton has also raised a triable issue as to whether CVS was able to offer her a stool, one of her requested accommodations. Brazelton cites to the Declaration of Sheila Rivera, a CVS pharmacist and pharmacy manager who worked at the same location as Brazelton and who was permitted to use a stool while performing her job after she received a doctor's note requesting an accommodation that she be allowed to sit and stand as needed in the pharmacy. See Rivera Decl. ¶¶ 7-8; UF ¶¶ 3-4.

Second, CVS contends it is not liable because it extended Brazelton's LOA for thirty-four consecutive months, and Brazelton resigned before the end of the last approved extension. Mot. at 15. A reasonable jury could find the decisions to keep extending Brazelton's LOAs were unreasonable given that Brazelton may have been able to

use a stool or use some other accommodation other than an LOA, particularly because triable issues remain as to whether CVS failed to engage in the interactive process.

Third, CVS argues that it cannot be liable as a matter of law because there was no reasonable accommodation it could give Brazelton that would enable her to perform the job. Mot. at 15. CVS cites Davis v. California Guardian, Inc., an unpublished decision in which the court of appeal affirmed the trial court's grant of summary judgment because the essential functions of the job were undisputed, and it was also undisputed that the plaintiff could not perform those essential duties "regardless of what accommodations were given to him." 2020 WL 7350752 at *9 (Cal. Ct. App. Dec. 15, 2020). Here, unlike in Davis, the essential functions of Brazelton's job are not undisputed.

The Court DENIES CVS's motion for summary judgment as to the claim for failure to accommodate.

## D. Disability and Age Discrimination (Claims 1 and 2)

CVS moves to dismiss Brazelton's claims for disability and age discrimination on the grounds that these claims require Brazelton to prove discriminatory motive, and she cannot. Mot. at 16.

### 1. McDonnell Douglas Framework

FEHA prohibits discrimination by an employer because of certain characteristics, including age and race. Cal. Gov't. Code § 12940(a). In analyzing discrimination claims under FEHA, California courts apply the three-stage burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under the McDonnell Douglas test, the plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354-55 (2000). The burden then shifts to the employer to rebut this presumption by producing admissible evidence sufficient to show that "its action was taken for a legitimate, nondiscriminatory reason." Id. at 355-56.

If the employer meets its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination or offer other evidence of discriminatory motive. Id. at 356. To satisfy this burden and survive summary judgment, Plaintiffs "must raise a genuine factual issue as to whether the articulated reason was a mere pretext for discrimination." Phillips v. PacifiCorp, 304 F. App'x 527, 530 (9th Cir. 2008).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (alteration in original) (quoting Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not establish one of the elements of the FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." Id. (brackets omitted). "If the employer meets its burden, the discharged employee must demonstrate either 'that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Id. (alteration in original).

To establish a prima facie case of discrimination under FEHA, plaintiffs must establish (1) they are members of a protected class; (2) they were performing competently in the position they held; (3) they suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." Guz, 24 Cal. 4th at 355.

To establish a prima facie case, "the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a *substantial factor* in the particular employment decision." Harris v. City of Santa Monica, 56 Cal. 4th 203, 232 (2013). The requisite degree of causation is higher than a "motivating factor" and lower than the "but for cause." Id. Plaintiffs can meet this prong of the prima facie

analysis by demonstrating "similarly situated individuals outside [their] protected class were treated more favorably, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (emphasis added) (brackets in original).

"While the plaintiff's prima facie burden is 'not onerous,' [s]he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were' based on a [prohibited] discriminatory criterion . . ." Guz, 24 Cal. 4th at 355 (alterations in original) (citation omitted); see also Reynaga v. Rosenburg Forest Prods., 847 F.3d 678, 691 (9th Cir. 2017) ("We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (simplified)).

### 2. Disability Discrimination

CVS argues Brazelton cannot establish a discriminatory motive with respect to either her disability or age discrimination claims because its decision to continue Brazelton's LOAs rather than return her to work was based on the advice of her doctors. Mot. at 18. Brazelton argues in opposition that she has raised "strong direct and circumstantial evidence that Defendant CVS acted with a discriminatory and/or retaliatory motive" because CVS's conduct was "repeatedly unreasonable and not in good faith," it is in dispute whether Brazelton could perform the essential functions of the pharmacy technician position, and CVS had "no justification for failing to reassign Plaintiff." Opp'n at 17.

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (simplified) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994)). Nothing Brazelton cites is direct evidence. Brazelton has also

not cited any circumstantial evidence that leads to an inference of a discriminatory motive. Even if CVS acted unreasonably and not in good faith, and even if Brazelton could perform the essential functions of the job, this evidence would not permit the inference that CVS's actions were more likely than not based on a discriminatory motive. See Guz, 24 Cal. 4th at 355.

**3. Age Discrimination**

Brazelton also argues she can establish age discrimination because she and another CVS pharmacy technician were not accommodated with a return to work due to their age, which is evidence of discrimination under California law. Opp'n at 17-18. In support, Brazelton cites Cal. Gov't Code § 12941, which states that "the use of salary as the basis for differentiating between employees when terminating employment may be found to constitute age discrimination if use of that criterion adversely impacts older workers as a group . . . ." This provision is unhelpful here, where Brazelton has not identified any evidence permitting an inference that CVS's decision not to accommodate her by allowing her to return to work was based on her age, rather than other nondiscriminatory reasons. Brazelton merely cites her declaration and the Madrigal Declaration, see AMF ¶ 40, which state their belief that CVS refused to accommodate them with a return to work because they had reached higher rates of pay due to their age and number of years working for CVS. However, their subjective and unsubstantiated beliefs about CVS's motivations do not create an issue of fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing to find a triable issue where the only evidence presented is 'uncorroborated and self-serving' testimony."); see also Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) ("the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.").

Because Brazelton has not established a prima facie case, the Court GRANTS CVS's motion to dismiss as to Brazelton's disability and age discrimination claims.

**E. Retaliation (Claims 5 and 6)**

CVS moves for summary judgment on Brazelton's claims for retaliation under FEHA and CFRA. Mot. at 17-18.

**1. FEHA**

Like claims for discrimination, claims for retaliation under FEHA are analyzed under the McDonnell Douglas burden-shifting framework. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie claim for retaliation, Brazelton must show that (1) she was engaged in a protected activity, (2) CVS subjected her to an adverse employment action, and (3) there is a causal link between the protected activity and CVS's action. Id. at 1042. A plaintiff may establish a causal link between the alleged protected activity and the alleged adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment action. See Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011); see also Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

CVS moves for summary judgment on Brazelton's FEHA retaliation claim on the grounds that Brazelton cannot demonstrate CVS had a retaliatory motive, and therefore cannot establish the third prong of her prima facie case. Mot. at 17. Brazelton has not put forward any evidence in response that demonstrates any retaliatory motive on the part of CVS.

The Court GRANTS CVS's motion as to the FEHA retaliation claim.

### 2. CFRA

The elements of a retaliation claim under CFRA are "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave." Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 885 (2007).

CVS argues Brazelton cannot establish the causation prong of her CFRA retaliation claim because she cannot establish any retaliatory motive. Mot. at 17-18. For the reasons explained above with respect to the discriminatory motive prong of Brazelton's discrimination claims, the Court agrees that CVS has met its burden of establishing that Brazelton cannot establish any retaliatory motive behind CVS's decisions to extend her LOA rather than return her to work other than the reasons set forth by CVS, and Brazelton has not raised triable issues.

The Court GRANTS CVS's motion as to the CFRA retaliation claim.

## F. Failure to Prevent Discrimination and Retaliation (Claim 7)

CVS moves to dismiss Brazelton's claim for failure to prevent discrimination and retaliation on the grounds that it is derivative of her discrimination and retaliation claims. Mot. at 25-26. The Court agrees. See Adetuyi v. City & Cnty. of San Francisco, 63 F. Supp. 3d 1073, 1093 (N.D. Cal. 2014) ("[N]o liability can arise from not preventing discrimination or retaliation that did not occur." (citing Trujillo v. N. Cnty. Transit Dist., 63 Cal.App.4th 280, 289 (1998)). The Court GRANTS CVS's motion as to the claim for failure to prevent discrimination and retaliation.

## G. Constructive Discharge (Claim 14)

CVS argues Brazelton's claims for constructive discharge fails as a matter of law. Mot. at 22-23.

CVS argues that because Brazelton dismissed her third claim for hostile work environment, she necessarily cannot succeed on her constructive discharge claim. Mot. at 23. CVS cites Holmes v. Petrovich Dev. Co., LLC, 191 Cal. App. 4th 1047, 1062 (2011), in which the court found the plaintiff's constructive discharge claim necessarily failed because the plaintiff had also "failed to present sufficient evidence of a hostile work environment." In Holmes, the plaintiff's constructive discharge and hostile work environment claims were based on the same facts: the plaintiff's employer's comments about her pregnancy. Here, however, Brazelton's constructive discharge claim does not appear to be based on the same facts as her dismissed harassment claim; they are based on CVS's repeated placement of Brazelton on LOAs rather than returning her to work, which Brazelton argues left her "no reasonable choice but to retire." See Opp'n at 20.

CVS also argues Brazelton's constructive discharge claims fail because her decision to retire "was not a product of illegal or inappropriate treatment by CVS" and was instead "her own strategic decision to leave the company at a time when she could maximize her retirement medical benefits." Mot. at 23-24. However, as described above with respect to Brazelton's claim for failure to engage in the interactive process, there is a triable issue as to whether CVS's failure to communicate with Brazelton after she notified them that her disability benefits would be running out in February 2019 if she did not return back to work was the reason for her decision to retire.

The Court DENIES CVS's motion to dismiss Brazelton's claim for constructive discharge.

## H. CFRA Interference (Claim 4)

CVS moves to dismiss Brazelton's claim for CFRA interference. Mot. at 24. Brazelton does not oppose CVS's motion as to this claim.

Opp'n at 21. Therefore, the Court GRANTS CVS's motion as to the CFRA interference claim.

## I. Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 13)

CVS argues Brazelton cannot prevail on her claim for breach of the implied covenant of good faith and fair dealing because she was an at-will employee and therefore had no contractual right to continued employment. Mot. at 25 (citing Horn v. Cushman & Wakefield W., Inc., 72 Cal. App. 4th 798, 820 (1999) ("Because we have found that summary judgment was properly granted on the ground that Horn's employment was at will, he can state no claim either for breach of an employment contract or for breach of the implied covenant.").

"The covenant of good faith and fair dealing does not transform a terminable-at-will employment contract into a terminable-only-for-good-cause contract." Gould v. Maryland Sound Indus., Inc., 31 Cal. App. 4th 1137, 1152 (1995), as modified (Feb. 9, 1995).

CVS submitted in support of its motion the CVS Health Colleague Handbook, in which Brazelton acknowledged her at-will employment status. UF ¶¶ 50-51 (citing dkt. 26-1). Brazelton does not dispute that the handbook set out her at-will employment status, and CVS has met its burden of demonstrating Brazelton is an at-will employee. However, Brazelton argues she "presents evidence that a collective bargaining agreement existed between Defendant CVS and the UFCS Local Union of which Plaintiff was a member" and therefore there is an enforceable employment contract between CVS and Brazelton. Opp'n at 21; see also UF ¶¶ 50-51. Brazelton argues the collective bargaining agreement modified her at-will status. Id.; see also dkt. 38-2 (Collective Bargaining Agreement)). This argument raises a preemption issue not briefed by the parties. See Beals v. Kiewit Pac. Co., 114 F.3d 892, 894 (9th Cir. 1997) ("Section 301 of the Labor Management Relations Act (LMRA) preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an

interpretation of a collective bargaining agreement."). Regardless, Brazelton has failed to raise a triable issue because she has not identified how the collective bargaining agreement was violated. The Court therefore GRANTS CVS's motion as to this claim.

**J. Punitive Damages**

CVS argues Brazelton cannot recover punitive damages because she cannot demonstrate oppression, fraud, or malice on the part of any CVS employee, and because Collier was not an officer, director, or managing agent of CVS. Mot. at 26.

Punitive damages are available under the California Civil Code "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); Commodore Home Sys., Inc. v. Superior Court, 32 Cal. 3d 211, 215 (1982). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Id. (c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Id. (c)(3).

As is the case here, where the defendant is a corporate employer, the "authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b). In passing this section as written, "[t]he drafters' goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages." White v. Ultramar, Inc., 21 Cal. 4th 563, 572 (1999).

"Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature." College Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994) (en banc). Ratification may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent and may be inferred from a failure by the employer to investigate an employee's acts once the employer has become aware of them. Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 622 (1989). California courts have held that supervisors who have no discretionary authority over decisions that ultimately determine company policy are not considered managing agents even though they may be able to hire or fire other employees. White, 21 Cal. 4th at 577 ("[A supervisor's] supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent.").

Here, Brazelton has not set forth any evidence that, even in the light construed most favorably to Brazelton, demonstrates oppression, fraud, or malice within the meaning of Section 3294. The Court GRANTS CVS's motion for summary judgment as to Brazelton's prayer for punitive damages.

## IV. CONCLUSION

Defendant's motion is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Date: June 28, 2022

Dale S. Fischer
United States District Judge

**Tina Conley**

**From:** cacd_ecfmail@cacd.uscourts.gov
**Sent:** Tuesday, June 28, 2022 3:50 PM
**To:** noreply@ao.uscourts.gov
**Subject:** Activity in Case 2:20-cv-10604-DSF-AGR Julie Brazelton v. CVS Pharmacy, Inc. et al Order on Motion for Summary Judgment

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered on 6/28/2022 at 3:49 PM PDT and filed on 6/28/2022

**Case Name:** Julie Brazelton v. CVS Pharmacy, Inc. et al
**Case Number:** 2:20-cv-10604-DSF-AGR
**Filer:**
**Document Number:** 52

**Docket Text:**
**ORDER by Judge Dale S. Fischer GRANTING in Part and DENYING in Part Defendant's Motion for Summary Judgment (Dkt. [23]). See Order for specifics. (jp)**

**2:20-cv-10604-DSF-AGR Notice has been electronically mailed to:**

Leilani Elizabeth Jones llj@paynefears.com, abarrantes@paynefears.com, fshamshad@paynefears.com, tconley@paynefears.com

Daniel F Fears mconry@paynefears.com, dff@paynefears.com, ir.courtnotices@paynefears.com, tconley@paynefears.com

Samantha S Bigonger samantha@bigongerlaw.com

Darius Gleason darius@loodg.com

Andrew Keith Haeffele fshamshad@paynefears.com, akh@paynefears.com

**2:20-cv-10604-DSF-AGR Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

**AMERICAN ARBITRATION ASSOCIATION**

**EMPLOYMENT TRIBUNAL**

| | |
|---|---|
| SHIRIN MOGHTANEI,<br><br>Claimant,<br><br>vs.<br><br>CVS PHARMACY, et al.,<br><br>Respondents. | AAA CASE NO. 01-21-0002-6695<br><br>**ORDER RE: RESPONDENTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

Respondents' Motion for Summary Judgment or, in the alternative, for Summary Adjudication came on for hearing on January 30, 2023, via Zoom. Claimant was represented by Paul Tashnizi, Esq., and Andrew E. Haeffele, Esq. appeared for Respondents. Among other arguments, Mr. Tashnizi urged that the fact that Claimant had not been disciplined in her years with CVS until she received Level III warnings and was terminated raises triable issues as to her retaliation claim. This Arbitrator has re-reviewed Claimant's evidence in this regard, as promised. However, that review, together with all the evidence and authorities presented by the parties and the arguments of counsel, results in the following order which is consistent with the Tentative Ruling.

**BACKGROUND**

In this proceeding against her former employers (collectively, "CVS" or "Respondents"), Shirin Moghtanei ("Claimant" or "Moghtanei") alleges claims sounding mostly in FEHA, contract law, and labor law.

The facts which led us to this proceeding, painted in very broad strokes, are as follows[1]:

Claimant is a pharmacist. She began working for CVS in 2009.

In 2015, Claimant sought treatment for neck issues caused by tilting her head to hold a phone between her shoulder and ear. She filed a worker's compensation claim in connection with the work-related, repetitive-motion injury. The issue resolved through physical therapy and the use of a headset and ergo stand.

Claimant transferred to Store # 9715 in Thousand Oaks in January 2016. Garo Kouyoumjian, who oversaw numerous stores, was the store's front-end and pharmacy Supervisor.

The store received numerous customer complaints about Claimant from 2016-2018. The central thread running through them was that she was rude, disrespectful, and unprofessional.

On March 15, 2019, Claimant e-mailed Kouyoumjian about a customer complaint about long phone holds and the lack of adequate staffing at the pharmacy. Claimant testified at her deposition that she followed up on the e-mail by orally discussing with Kouyoumjian her concerns about patient safety caused by scheduling and staffing issues.

Maryam Alvadzhyan became the Pharmacy Manager at the Thousand Oaks location in April 2019, taking over for Chi Lee.

---

[1] The following statement of facts is not in any manner intended to be an exhaustive recitation of the facts, particularly considering that the parties have offered their respective factual summaries. Any directly-pertinent specific facts not mentioned here will be discussed in connection with each claim as necessary and appropriate. Nor does the Arbitrator address every argument or issue raised in the *65+* pages of briefs. In other words, simply because an argument or issue is not mentioned in this ruling does not mean that the Arbitrator has not considered it; the Arbitrator has thoroughly reviewed (and considered) the papers submitted by both sides but endeavors to keep this ruling straightforward and concise.

The parties dispute exactly what transpired the first time Alvadzhyan and Claimant met. Suffice to say it was not a friendly encounter, and it foreshadowed (and likely molded, as first impressions often do) their unpleasant, friction-filled working relationship. Two things are undisputed, though: (1) prior to meeting Claimant, Alvadzhyan had Claimant's headset and ergo box temporarily removed from her workstation; and (2) Alvadzhyan had them returned to Claimant after Claimant protested. Claimant utilized them later that day and continued to use them through her termination.

According to Claimant, after their first encounter, Alvadzhyan scheduled Claimant's shifts in a way which made it difficult and stressful for Claimant to fulfill her job duties, including many night and weekend shifts.

On April 24, 2019, CVS issued a Level 3 Final Warning to Claimant regarding customer complaints, including an April 23, 2019, complaint from a doctor's office. It was the first written disciplinary action against Claimant in the nearly 10 years she had worked for CVS. Claimant's union looked into the warning but chose not to take action on it. Claimant asserts that the warning "contained categorically false statements." (Opp., at 10:16.)

In June 2019, CVS issued a second Level 3 Final Warning to Claimant. That warning referenced a customer complaint about what could have been a very dangerous dispensing error (i.e., a misfill with the potential for anaphylaxis). Claimant disputes the accuracy of the accusations underlying that warning, too. (See, Opp., at 11:7-23.) To the contrary, Claimant contends that Alvadzhyan misfilled numerous prescriptions, and that she (Claimant) documented and reported them.[2]

In July 2019, Kouyoumjian transferred to another district.

In late September 2019, CVS (led by Kouyoumjian's replacement, Eric Gibbons, in conjunction with the Colleague Relations/Advice & Counsel department) terminated Claimant's

[2] The deposition testimony cited by Claimant for this proposition does not support it. (See, Opp., at 15:22, citing Claimant's Depo. Tr. at 125:6-127:7.) Claimant testified that she counseled each patient and then *discussed the misfills with Alvadzhyan*. Claimant does not point to evidence that she documented the misfills or reported them (to management).

employment based on what it asserts were continued behavioral problems. Claimant disputes the content of the Level 4 termination notice. (See, Opp., at 11:24-27.)

Claimant's Complaint (which the parties later stipulated would be arbitrated pursuant to a pre-existing arbitration agreement expressly governed by the FAA) alleges 11 claims: (1) Disability Discrimination (FEHA); (2) Failure to Engage in Interactive Process (FEHA); (3) Failure to Accommodate (FEHA); (4) Retaliation (FEHA); (5) Failure to Prevent/Remedy Discrimination and Retaliation (FEHA); (6) Harassment/Hostile Work Environment (FEHA); (7) Wrongful Termination in Violation of Public Policy (policies embodied in FEHA); (8) Failure to Provide Wages When Due (Labor Code); (9) Violation of Business & Professions Code sec. 17200; (10) Breach of the Covenant of Good Faith and Fair Dealing; and (11) Breach of Implied-In-Fact Contract (good cause termination).

Respondents seek summary judgment, or in the alternative, summary adjudication as to each of the Complaint's eleven causes of action (as well as Claimant's punitive damages claims). They assert that all the claims fail because Claimant cannot raise a triable issue of material fact as to any of them.

The motion for summary judgment is denied. However, summary adjudication is granted as to a majority of the claims, as well as the claim for punitive damages.

## <u>**CLAIMANT'S REQUEST FOR A CONTINUANCE**</u>

As a threshold matter, Claimant's request for a continuance of this motion in order to pursue further discovery must be addressed.

FRCP, Rule 56(d)(2) (formerly 56(f)) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may ... allow time to obtain affidavits or declarations or to take discovery."

A party requesting a Rule 56(d) continuance bears the burden of: (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion. (See, *Emp'rs Teamsters Local Nos. 175 &*

*505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); accord, *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 966 n.3 (9th Cir. 2009) ["Rule 56([d]) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact"] (punctuation, quotation marks, and citation omitted)).

Thus, in requesting a continuance pursuant to Rule 56(d), the nonmovant must make clear "what information is sought and how it would preclude summary judgment." (*Burnett v. Frayne*, No. C 09–04693, 2011 WL 5830339, at *1 (N.D.Cal. Nov. 18, 2011), quoting *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998)). "[T]he party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." (*Id.*, quoting *Continental Maritime v. Pacific Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir.1987)); see also, *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1101 (9th Cir.2006) [party seeking continuance has burden of producing declaration explaining "that additional discovery would have revealed specific facts precluding summary judgment"].)

Claimant has failed to meet her burden of showing that additional discovery would reveal specific facts precluding summary judgment. Rather, Claimant makes the request in a perfunctory, vague, and conclusory manner. (See, Opp., at 26:8-16; Tashnizi Dec ISO Opp., at para. 6.) She merely states that she seeks the deposition of a key witness and certain documents. She does not explain what specific, material facts the requested discovery would likely uncover, nor does she explain what facts she hopes to discover. Put differently, nowhere does she explain why the proposed discovery is essential to resisting this motion for summary judgment. The Arbitrator is aware that, due to no fault of Respondents or lack of diligence on Claimant's part, Alvadzhyan has been unavailable for deposition. Moreover, it is and has been unclear whether she will **ever** be available for deposition and continued delays in the hope that she will are not justified.

The request for a continuance is denied.[3]

[3] Claimant made the request under Cal. Code Civ. Pro., section 437c(h). But Section 437c does

## MERITS

***General summary judgment/partial summary judgment principles***

Federal Rule of Civil Procedure, Rule 56 provides in pertinent part: "**Motion for Summary Judgment or Partial Summary Judgment**. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).) [4]

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. (See, Fed. R. Civ. P. 56(c); *Celotex Corp*., *supra*, at 322.) A fact is material when, under the governing substantive law, it could affect the outcome of the case. (*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).) The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. (*Id.*, at 248, 251–52; *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 355 (9th Cir.1987).)

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. (*Celotex*, 477 U.S. at 323.) The moving party can

---

not apply here: pursuant to the parties' arbitration agreement and the Arbitrator's July 16, 2021 scheduling order, this motion is governed by the Federal Rules of Civil Procedure and the AAA Employment Arbitration Rules. However, even if the Arbitrator evaluated the request for a discovery continuance under this state statute, the result would be the same. (See, e.g., *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253-254 [declaration in support of a request for continuance under section 437c(h) must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts]; *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715-716.

[4] The results herein would be the same if Code of Civil Procedure section 437c were applied rather than FRCP, Rule 56.

satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. (*Id.*, at 322–23.)

If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. (*Adickes v. S.H. Kress & Co*., 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).) If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir. 1995) ["The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" (citing *Anderson*, 477 U.S. at 242, 252).)[5] Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." (*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).) In other words, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." (*Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1409 (9th Cir.1991).)

When determining the existence of a triable issue of material fact, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. (See, *Matsushita*, 475 U.S. at 587; *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir.2002).) "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." (*T.W. Elec. Serv*., *supra*, 809 F.2d at 631.) However, as previously mentioned, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (*Triton Energy Corp*., *supra*, 68

---

[5] "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." (*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).)

F.3d at 1221.) "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." (*Id.*)

Thus, summary judgment is warranted if the responsive evidence is "merely colorable" or "not significantly probative." (*Anderson*, at 249–50.) The test is whether the opposing party "has come forward with sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of the opposing party's claim." (*Triton Energy Corp*., *supra*, at 1221.) This obligation cannot be satisfied by "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." (*Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir.2001); *Jackson v. Kaplan Higher Educ*., LLC, 106 F. Supp. 3d 1118, 1123 (E.D. Cal. 2015) (under California law, in a FEHA case "'speculation cannot be regarded as substantial responsive evidence'"]; accord, *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162-63 [responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial and is insufficient to establish a triable issue of material fact]; *Martin v. Lockheed Missiles and Space Co.* (1994) 29 Cal.App.4th 1718, 1735 [speculation cannot be regarded as substantial responsive evidence of pretext sufficient to defeat summary judgment]; *Lyons v. Sec. Pac. Nat. Bank* (1995) 40 Cal. App.4th 1001, 1014, as modified on denial of reh'g ["An issue of fact can only be created by a conflict of evidence. It is not created by speculation, conjecture, imagination or guess work. Further, an issue of fact is not raised by cryptic, broadly phrased, and conclusory assertions, or mere possibilities"] (internal quotations and citations omitted); *Mills v. U.S. Bank* (2008)166 Cal.App.4th 871, 894, quoting *Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647 ["When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork"]; *Cucuzza v. City of Santa Clara* (2002) 104 Cal. App. 4th 1031, 1038 [in discrimination cases, proof of reasons for adverse action often depends on inferences rather than direct evidence; a material triable controversy is not established unless the inference is reasonable and "an inference is reasonable if, and only if, it implies the unlawful motive is more likely than [the] defendant's proffered explanation"].)

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." (*Anderson*, 477 U.S. at 255.)

***Respondents are entitled to adjudication of Claimant's Disability Discrimination claim***

In this cause of action, Claimant asserts that Respondents discriminated against her based on a physical disability (a pinched nerve caused by holding a phone between her ear and shoulder, resulting in neck spasms).

FEHA prohibits an employer from, *inter alia*, discriminating against an employee on the basis of specified criteria such as race, national origin, sexual orientation, age, gender, or *disability* in compensation, terms, conditions or privileges of employment. (§ 12940, subd. (a).) Generally, the elements of a prima facie case of discrimination under the FEHA are: (1) *plaintiff was a member of a protected class*, (2) plaintiff was qualified for the position he or she sought or was performing competently in the position he or she held, (3) plaintiff suffered an adverse employment action, such as termination, and (4) *some other circumstance suggests a discriminatory motive*. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)[6]

The parties dispute the existence of a triable issue of material fact as to the two italicized elements: (1) disability; and (2) a nexus between the adverse employment actions and discriminatory motive or intent. The Arbitrator concludes that Claimant has not established a

[6] Claimant asserts: "Although retaliatory/discriminatory motive or intent is a requirement to demonstrate *some* kinds of FEHA claims (e.g., racial or sex-based discrimination), neither is required for *disability* discrimination/retaliation claims. California law is settled on this distinction." (Opp., at 17:11-13, emphases in original.) That curious assertion (repeated at 18:14 of the Opposition) disregards the well-known, indisputable nexus requirement of FEHA discrimination and retaliation claims and is wrong. A FEHA discrimination plaintiff must demonstrate that discrimination was a substantial motivating factor in the adverse employment action. (See, as matters of example only and in addition to other authorities cited in this Order, *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 and *Alamo v. Practice Management Information Corp*. (2013) 219 Cal.App.4th 466, 478-479.) Judging by the authorities and arguments which follow this misstatement of law by Claimant, there does not appear to have been an intention to mislead.

prima facie case as to a disability (and for reasons explained *infra*, does not reach the issue of whether she has shown a prima facie case as to nexus).[7]

As to a "disability":

FEHA prohibits employment discrimination based on a physical disability. (§ 12940, subd. (a).) The statute's provisions are to be interpreted broadly to provide robust protection. (See, § 12926.1, subd. (b); see also § 12993, subd. (a) ["The provisions of [FEHA] shall be construed liberally for the accomplishment of [its] purposes"].) The plaintiff must show that he or she "suffered from a disability, or was regarded as suffering from a disability." (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310.)

In contrast to the federal Americans with Disabilities Act of 1990 (ADA), which requires that a disability "*substantially* limits" a major life activity (42 U.S.C. § 12102(1)(A), italics added), FEHA requires only that the physiological impairment "limit" such activities. (§ 12926.1, subd. (c); § 12926, subd. (m)(1)(B); *Sandell*, *supra*, 188 Cal.App.4th at 312.) "This distinction is intended to result in broader coverage under the law of this state than under that federal act." (§ 12926.1, subd. (c).) Thus, under FEHA, whether a condition limits a major life activity "shall be determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity." (§ 12926, subd. (m)(1)(B)(i); § 12926.1, subd. (c).)

---

[7] The *McDonnell Douglas* test applicable to motions such as this one is discussed at length *infra*. Suffice to say for now that when a defendant moves for summary judgment in a case alleging discrimination under FEHA, instead of or in addition to challenging the plaintiff's ability to make a prima facie case of discrimination, the defendant may proceed directly to the second step of the analysis and present competent, admissible evidence of its nondiscriminatory reasons for terminating the plaintiff's employment. (*Guz*, *supra*, 24 Cal.4th at 357, 360; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181 ["In the context of summary judgment an employer may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case 'is lacking…'"]; *Arteaga v. Brink's Inc.* (2008) 163 Cal.App.4th 327, 344.) Here, Respondents opted to challenge Claimant's ability to establish her prima facie case as to her discrimination claim prior to proceeding to the second step of the *McDonnell Douglas* test; the same goes for Claimant's retaliation claim.

FEHA further defines "physical disability" to include: "[h]aving a record or history of a disease, disorder, condition ..., or health impairment [that constitutes a physical disability], which is known to the employer" (§ 12926, subd. (m)(3)); "[b]eing regarded or treated by the employer ... as having, or having had, any physical condition that makes achievement of a major life activity difficult" (§ 12926, subd. (m)(4)); or "[b]eing regarded or treated by the employer ... as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability ...." (§ 12926, subd. (m)(5).) Claimant asserts that she was disabled under subsections (1), (3), (4), and (5) of 12926(m). (Opp., at 12:2-14:23.)[8]

Even applying these liberal standards, Claimant has not established that her orthopedic injury constituted the requisite disability.

With regard to a "disability" under subsection (m)(1): to quality as a protected individual, a plaintiff "must demonstrate his impairment constitutes a disability according to the statutory definition." (*Gelfo v. Lockheed Martin Corp*. (2006) 140 Cal.App.4th 34, 47.) It is insufficient for a plaintiff "simply to allege a disability or to identify an injury or physical condition," instead, "[t]o proceed as a physically disabled person under the first prong of the statutory definition, [a plaintiff] must demonstrate his injury or physical condition ... makes 'difficult' the achievement of work or some other major life activity." (*Gelfo*, at 47.) "'[T]he touchstone of a qualifying [physical] disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities.' [Citation.]" (*Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 353–354.)

It is not enough merely to allege a physical disability. (*Gelfo*, at 47; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256; *cf*., *Roman v. BRE Properties, Inc*. (2015) 237 Cal.App.4th 1040, 1054 (noting at summary judgment, "conversational use of the term 'disability' is not proof that [plaintiff's] condition, whatever it may be, equates to a disability

---

[8] Any of the numerous arguments set forth at 12:2-14:23 of the opposition brief which are not expressly addressed in this section of this Order are rejected without further discussion.

within the meaning of the statutory definitions"].) To be sure, "[p]ain alone does not always constitute or establish a disability. [Citations.] An assessment must be made to determine how, if at all, the pain affects the specific employee." (*Arteaga*, *supra*, 163 Cal.App.4th at 348; see, *id*. at 349 [employee's diagnosis of carpal tunnel syndrome "does not mean he had a physical disability"]; *Leatherbury v. C&H Sugar Co., Inc.* (N.D.Cal. 2012) 911 F.Supp.2d 872, 880 ["Although pain can be a disability under FEHA, it must actually limit the employee's ability to work"].)[9] Although broad, FEHA's definition of "disability" does not recognize all temporary ailments as disabilities. (See, *Diaz v. Federal Express Corp*., 373 F. Supp. 2d 1034, 1050 (C.D. Cal. 2005) [collecting cases discussing whether various physical conditions qualify as physical disabilities].)

The evidence before the Arbitrator is that in *2015* (four years before her termination), Claimant went to the doctor for her neck pain, but missed only a couple of days work, and resolved the problem with physical therapy and the use of a headset and ergo stand. The physical therapist released her to work with "no restrictions" and no mention of a headset. (Jones Decl. ISO Motion, Ex. F.) Indeed, the only mention of using a headset was from an Urgent Care doctor on May 12, 2015, who merely "recommend[ed]" she use one (and did not mention an ergo stand). (*Ibid*., Ex. H.) Admittedly, Claimant has not had a problem or been treated since *2016*.

Moghtanei has not shown that her symptoms rendered work, or any other major life activity, difficult. Indeed, it appears that any (purported) requirement of ergonomic equipment might have been due to a temporary injury, as preventive in nature or simply the Urgent Care doctor's assertion of best practices. (Cf., *Jaco v. Winco Holdings, Inc*., No. 1:18-cv-00301-DAD-EPG, 2019 WL 1438069, at *1 (E.D. Cal. Mar. 31, 2019) [defendant's motion to dismiss granted because the only facts pled in support of plaintiff's disability were that her "kidney

---

[9] *Arteaga* is similar to this case. There, the employee experienced pain and numbness in his hands, which the court concluded "did not make the performance of his job duties difficult as compared to his unimpaired state or to a normal or average baseline." (163 Cal.App.4th at 346.) When the employee reported the issue to the employer, a supervisor took the employee to a physician, who "found nothing wrong ... and sent him back to work without any restrictions." (*Id*. at 347.)

condition [ ] caused [her] to have urgent needs to urinate"; without more the court was "unable to determine whether plaintiff's alleged condition makes achievement of a major life activity difficult and thus constitute [sic] a protected condition under FEHA"].)[10]

Nor has Claimant raised a triable issue of material fact as to whether CVS perceived her as being disabled. To the contrary, Claimant's own evidence of (and characterization of) her first encounter with Alvadzhyan shows that CVS did not mistakenly conclude that Claimant had, or previously had, a condition that made working difficult, nor did it mistakenly believe that any nonlimiting condition made it difficult for her to work. To CVS (through Alvadzhyan), Moghtanei was a nondisabled employee who was using the headset and the ergo stand for convenience/comfort and not out of necessity due to a disability.

The analysis of this claim could easily end here: Claimant has not established an essential element of her prima facie case (disability). However, even assuming *arguendo* that Moghtanei established a prima facie case in her opposition papers as to *both* disability and nexus, the Arbitrator would still dispose of this claim because Respondents have shown a legitimate, nondiscriminatory reason for her termination and she has not shown pretext.

Summary judgment for the employer may still "be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." (*Guz*, *supra*, at 362; but see, *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 286 ["many employment cases present issues of intent, and motive, and hostile working environment, issues not determinable on paper. Such cases, we caution, are rarely appropriate for disposition on summary judgment...."].)

Because direct evidence of an unlawful discrimination is seldom available, courts use a system of shifting burdens to aid in the presentation and resolution of such claims at trial. (*Guz*, *supra*, at 354.) In considering a grant of summary judgment in a case alleging employment discrimination where the evidence offered to show discriminatory intent is circumstantial,

---

[10] The fact that Claimant never submitted an accommodation request as to either device further indicates that she herself did not view her condition as a "disability" under FEHA.

courts apply the *McDonnell Douglas* test. (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792; *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 122–123.)[11] "At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination… While the plaintiff's prima facie burden is 'not onerous' [citation], [she] must at least show '"actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion ....' [Citation.]" [Citation.]' [Citation.]" (*Guz*, *supra*, 24 Cal.4th at 354–355.)

If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce admissible evidence, sufficient to raise a genuine issue of fact and to justify judgment for the employer, that its action was taken for a "legitimate, nondiscriminatory reason." (*Guz*, *supra*, 24 Cal.4th at 355–356.) The employer's reasons need not have been wise or correct, as long as they are nondiscriminatory. "While the objective soundness of an employer's proffered reasons supports their credibility ..., the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, 'legitimate' reasons [citation] in this context are reasons that are facially unrelated to prohibited bias and which, if true, would thus preclude a finding of discrimination. [Citations.]" (*Id.* at 358.) If the employer meets this burden, the plaintiff has the opportunity to attack the employer's proffered reasons as pretexts for discrimination or to produce other evidence of discriminatory motive. The plaintiff retains the burden of proving discrimination. (*Id.* at 356.)

"The *McDonnell–Douglas* framework is modified in the summary judgment context" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861) because summary judgment law places the initial burden on a moving party defendant to show the plaintiff's claim lacks merit by either negating an essential element of the claim or establishing a complete defense to the claim. (See also, e.g., *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d

---

[11] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [their] own statutes." (*Guz*, 24 Cal.4th at 354.)

728, 745 (9th Cir. 2011) [although at trial, the plaintiff employee generally has the initial burden of establishing a prima facie case of discrimination, the burden is reversed when a defendant employer moves for summary judgment].) The employer has the initial burden to present evidence that the employee cannot establish one or more prima facie elements, or that the adverse employment action was taken for legitimate, nondiscriminatory reasons. (*Arteaga v. Brink's Inc.*, *supra*, 163 Cal.App.4th at 343–344; see also *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098 [an employer meets its initial moving burden on summary judgment "if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination"].) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.'" (*Serri*, *supra*, 226 Cal.App.4th at 861.)

In other words, the employer is entitled to summary adjudication on a FEHA discrimination claim if there is no triable issue that the employer acted for legitimate, nondiscriminatory, and nonretaliatory reasons. "[T]he ultimate issue is simply whether the employer acted with a motive to discriminate illegally." (*Guz*, *supra*, 24 Cal.4th at 358.) Legitimate reasons include "a failure to meet performance standards [citation] or a loss of confidence in an employee." (*Serri, supra,* 226 Cal.App.4th at 861.)

In response to a showing of legitimate reasons, the plaintiff must do more than make a prima facie showing, deny the credibility of the employer's witnesses, or speculate as to discriminatory motive. (*Id.* at 862.) As previously discussed, speculation does not constitute the type of substantial, responsive evidence required. Rather, the plaintiff must set forth specific facts that would allow a reasonable fact finder to conclude the employer's proffered reasons are unworthy of credence. (*Ibid.*) The plaintiff may rely on reasonable inferences, but "an inference is reasonable if, and only if, it implies the unlawful motive is more likely than [the] defendant's proffered explanation." (*Ibid.*) "Where a former employee's suspicions of improper motives are primarily based on conjecture and speculation, he or she has not met the

requisite burden of proof of establishing a pretextual basis for [the adverse employment action]." (*Walker v. Blue Cross of California* (1992) 4 Cal.App.4th 985, 996, abrogated on another point in *Guz*, *supra*, 24 Cal.4th at 351.)

Further: "It is not enough for the employee to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound (e.g., refuting claims of poor job performance): 'The employee cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' [*Hersant v. California Dept. of Social Services* [(1997)] 57 [Cal.App.4th 997,] 1005 ... ; see also *Guz v. Bechtel Nat'l, Inc.* (2000) 24 [Cal.4th] 317, 358 ....]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022), ¶ 10:268.30.)

In sum, "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz*, *supra*, 24 Cal.4th at 361.) "[S]ummary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." (*Id.* at 362.)

Assuming *arguendo* that Claimant has established her prima facie case (she has not), the burden shifts to Respondents to articulate a legitimate, nondiscriminatory reason for the adverse employment action. (See, e.g., *Arteaga v. Brink's Inc*., *supra*, 163 Cal.App.4th at 343–344.) Respondents have carried that burden here. They have produced facially valid evidence showing a legitimate, nondiscriminatory reason for terminating Claimant: repeated customer and co-worker complaints. Claimant admits as much. (See, Opp., at 19:8-13 ["Respondents present a non-discriminatory/non-retaliatory justification for issuing written warnings and terminating Ms. Moghtanei in 2019, namely alleged customer complaints and an alleged policy violation. Accordingly, under the McDonnell Douglas burden-shifting test, the burden returns to Ms. Moghtanei to raise a triable issue of fact as to whether Respondents' proffered reason is its actual reason, or whether it is pretext..."].)

"If the employer presents admissible evidence … that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing. (*Caldwell v. Paramount Unified Sch. Dist.* (1995) 41 Cal.App.4th 189, 203.) "Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination." (*Little v. Illinois Dept. of Revenue* (7th Cir.2004) 369 F.3d 1007, 1012.)

"Evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate. (*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998), as amended (Aug. 11, 1998); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) [quoting *Godwin*; "if circumstantial evidence [of pretext] is offered, such evidence has to be 'specific' and 'substantial'"]; *Husman*, *supra*, 12 Cal.App.5th at 1182 ["'Circumstantial evidence of "'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate" on an improper basis'"].)

In order to establish that the nondiscriminatory reasons given by an employer are pretextual, "[a]n employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the reasons offered by the employer for the employment decision that a reasonable trier of fact could rationally find the reasons not credible, and thereby infer the employer did not act for the stated nondiscriminatory purpose." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1007.)

"[T]he plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 553, internal quotations and citations omitted.) A plaintiff is required to produce "'very little' direct evidence of the employer's discriminatory intent to move past summary judgment."" (*Id.*, some internal quotations omitted.) As the court explained in *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952: "Because proof of

discriminatory intent often depends on inferences rather than on direct evidence, very little evidence of such intent is necessary to defeat summary judgment. [Citations.]" (*Id.* at 991.)

Nevertheless, as previously discussed, speculation is insufficient to raise a triable issue of material fact. Indeed, as one court stated in connection with evaluating the third step of the *McDonnell Douglas* test: "Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it 'remains subject to careful scrutiny.' [Citation.] The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' [Citation.] The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, '*an actual causal link between prohibited motivation and termination*.'" (*Featherstone v. S. California Permanente Med. Grp.* (2017) 10 Cal.App.5th 1150, 1159 (emphasis added).)

Here, viewing Claimant's evidence through the lens of the law previously discussed on this page and in the last several pages, the Arbitrator concludes that Claimant has not carried her responsive burden of establishing a triable issue of material fact as to pretext. Simply put, Claimant has not tied any adverse employment action to her (alleged) disability other than by sheer conjecture. As previously mentioned, speculation and conjecture are insufficient to raise a triable issue of material fact. (See, e.g., *Sangster v. Paetkau*, *supra*, 68 Cal.App.4th at 163.) Rather, "substantial" and "specific" evidence is required. (See, e.g., *Husman*, *supra*, 12 Cal.App.5th at 1182.)

The fact that Claimant had a protected disability (***assuming*** she did) does not – even supposing that Respondents knew of it - demonstrate disability-based animus. It merely confirms that she was in a protected class. The *reasonable* inferences simply do not support her assertion of discriminatory animus. Claimant's evidence shows only that she *surmises or speculates* that improper motives led to her termination. These subjective beliefs are not sufficient to carry the day.[12]

---

[12] As CVS point out, the lack of prior written counseling sheds little light on any purported discriminatory intent. (See, Motion, at 18:7-22.) Simply because *Lee* (and her predecessor) chose not to issue written warnings to Claimant based on customer and co-worker complaints,

Accordingly, disposition of this claim in Respondents' favor would be appropriate even if Claimant established a prima facie case (which, again, she did not).

Respondents' request for disposition of this claim in their favor is GRANTED.

***Respondents are entitled to adjudication of Claimant's Failure to Accommodate and Failure to Engage in the Interactive Process claims***

FEHA requires an employer "to make reasonable accommodation" for an employee with a known mental or physical disability unless the employer demonstrates that the accommodation produces undue hardship. (§ 12940, subd. (m)). In order to show a failure to accommodate, the plaintiff must establish (1) *a disability covered by FEHA*; (2) he or she was qualified to perform the essential functions needed for the position; and (3) the employer failed to make a reasonable accommodation for the disability. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009–1010.) "Under the express provisions of the FEHA, the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256; *Bagatti*, *supra,* at 357.)

If the employee requests a reasonable accommodation, the employer is required to engage in a "timely, good faith, interactive process." (§ 12940, subd. (n).) "[The] employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424.) The "interactive process" is an informal procedure that "imposes burdens on both the employer and employee." (*Scotch*, *supra*, at 1013.) Failure to engage in this process is a separate FEHA violation independent of an employer's failure to provide a reasonable disability accommodation. (*Wysinger*, *supra*, at 424.)

---

does not in any way indicate that *Alvadzhayan* (who apparently had a confrontational management style) acted with discriminatory (or retaliatory) intent.

Claimant has not raised a triable issue of material fact as to either claim. As discussed previously in connection with Claimant's cause of action for disability discrimination, she has not established the existence of a disability recognized under FEHA. As a result, these claims fail outright as a matter of law. (See, e.g., *Higgins-Williams v. Sutter Med. Found*. (2015) 237 Cal.App.4th 78, 86 [claims for failure to accommodate and failure to engage in the interactive process failed "in light of the undisputed facts showing that plaintiff did not have a legally recognized mental disability"].)[13]

Respondents' requests for adjudication of these claims in their favor are thus GRANTED.

***Respondents are entitled to adjudication of Claimant's Retaliation claim***

An employer may not retaliate or otherwise discriminate against any person because "the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA.]" (§ 12940, subd. (h).) To establish actionable retaliation under FEHA, Claimant must show that he engaged in a protected activity and Respondents' adverse employment action was due to that protected activity. (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at 1042; *Rope v. Auto–Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 651.) To put it another way: "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472.)

The *McDonnell-Douglas* framework also applies to retaliation claims. (See, e.g., *Husman*, *supra*, 12 Cal.App.5th at 1193 ["Like claims for discrimination, retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis. (*Loggins v. Kaiser Permanente Internat*. (2007) 151 Cal.App.4th 1102, 1108-1109, 60 Cal.Rptr.3d 45)"]; *Xin Liu v. Amway*

---

[13] Accordingly, the Arbitrator does not discuss the balance of the numerous arguments posited by the parties as to these two claims.

*Corp.*, 347 F.3d 1125, 1143 (9th Cir.2003) ("For purposes of summary judgment, we analyze Liu's Title VII and FEHA retaliation claim under the *McDonnell Douglas* burden shifting standard"). Thus, a FEHA retaliation plaintiff must demonstrate that retaliation was a *substantial motivating factor* in the adverse employment action. (E.g., *Harris*, *supra*, at 232.)

Respondents assert that Claimant cannot establish a prima facie case because she cannot demonstrate the requisite causal connection between an adverse employment action and any protected activity. Respondent urges that even if Claimant shows her prima facie case, she cannot produce the required specific and substantial evidence of pretext in the face of Respondents' legitimate business reason.[14]

The Arbitrator concludes that Moghtanei has established a prima facie case as to the nexus element. Despite having no prior written disciplinary record, within months of her March 15, 2019 e-mail to Kouyoumjian and her follow-up discussions as to same in the context of patient safety (Claimant's Depo. Tr., at 344:19-345:9), and confronting Alvadzhyan about misfills, she received the two Level 3 warnings and terminated. In fact, the first warning came within a month of her March 2019 complaint. Evidence of such temporal proximity can satisfy an employee's *initial* burden of establishing a prima facie case of retaliation. (*Loggins*, *supra*,151 Cal.App.4th at 1112-1113; see also, e.g., *McRae v. Department of Corrections and Rehabilitation* (2006) 142 Cal.App.4th 377, 388 ["A plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision"].)

However, that temporal proximity does not save the day as to *pretext*. The courts have held that mere timing is not *itself* sufficient to show pretext. (See, e.g., *Arteaga v. Brink's, Inc.*, *supra*, 163 Cal.App.4th at 353 ["the temporal proximity between an employee's disclosure of

---

[14] CVS *appears* to assert *for the first time* on reply that Claimant did not engage in protected activity with regard to the March 2019 e-mail complaint to Kouyoumjian. (See, Reply, at 4:2-16.) Asserting any material argument in this manner raises significant issues of due process, fairness, and notice – whether intended or not. The Arbitrator thus declines to consider the arguments to the extent they go to whether Moghtanei engaged in a protected activity.

his symptoms and a subsequent termination may satisfy the causation requirement at the first step of the burden-shifting process" but "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination. ... This is especially so where the employer raised questions about the employee's performance before he disclosed his symptoms, and the subsequent termination was based on those performance issues"]; *Loggins*, *supra*, at 1112–1113 ["[T]emporal proximity, although sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual.... Instead, an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce *substantial* additional evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual" (emphasis added)]; *Godwin*, *supra*, 150 F.3d at 1220 ["[A] plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing"].)

Claimant has not raised a triable issue of fact as to any retaliation based on protected activity. Simply put, any evidence which purports to show retaliation based on protected activities is speculative rather than substantial. In this regard, the "dismissive" attitudes of Kouyoumjian and Alvadzhyan do not evidence that they retaliated against her for raising patient safety concerns with them.

Accordingly, Respondents' request for adjudication of this claim in their favor is GRANTED.

***Respondents are entitled to adjudication of Claimant's Failure to Prevent/Remedy Discrimination and Retaliation claims***

Employers are required to "take all reasonable steps necessary to prevent discrimination and harassment" in the workplace. (Gov.Code, § 12940, subd. (k).)[15] Under section 12940(k), the duty of an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring ... is affirmative and mandatory. [Citations.]" (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035.)

A claim of failure to prevent under section 12940, subdivision (k) is dependent upon an underlying claim of discrimination, harassment, or retaliation. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 282, 289 ["[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, ...."]; *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1315, 1317 [discussing *Trujillo* and explaining that, before an employer may be held liable for failure to prevent discrimination or harassment under section 12940, subdivision (k), there must be a finding that actionable harassment or discrimination, as defined under FEHA, occurred; otherwise, an employer may be held liable for failing to prevent conduct that is legally permissible]; accord, *Tritichler v. County of Lake* (9th Cir.2004) 358 F.3d 1150, 1154 [plaintiff must "be found to have been subjected to sexual harassment stemming from a hostile environment" before jury can reach issue of whether Gov.Code, § 12940, subd. (k), was violated]; *Sneddon v. ABF Freight Sys.* (S.D.Cal.2007) 489 F.Supp.2d 1124, 1132 [Because "[t]he Court has found no viable claim of discrimination[,] ... there can be no independent cause of action for failure to prevent discrimination under FEHA"].)

Here, Claimant has not established a claim for discrimination or retaliation. Thus, her claim for failure to prevent/remedy discrimination and retaliation must be dismissed.

---

[15] Retaliation is included within the meaning of discrimination for these purposes. (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1239–1240, disapproved on another ground in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173–1174.)

Respondents' request for disposition of this claim in their favor is GRANTED.

***Respondents are entitled to adjudication of Claimant's Harassment claim***

It is an unlawful employment practice for "an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person" to harass an employee because of any protected characteristic. (Gov.Code, § 12940, subd. (j)(1).

To establish a prima facie case of harassment, the plaintiff must show that (1) s/he was a member of a protected class; (2) s/he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe and pervasive so as to interfere with his or her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the defendant is liable for the harassment. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876.)

Respondents contend that Moghtanei cannot establish a prima facie case of harassment because she has no evidence that she was harassed because of any protected characteristic. They essentially posit that, in any event, the alleged harassing conduct was not sufficiently severe or pervasive to constitute the required "concerted pattern of harassment of a repeated, routine or a generalized nature." (See, e.g., *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610).

Even assuming *arguendo* that Claimant has tied the alleged harassment to an actual or perceived disability (she has not), the claim still fails.

"[T]o prevail, an employee claiming harassment based upon a hostile work environment must demonstrate, [*inter alia*], that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees…." (*Miller v. Department of Corrections*, *supra*, 36 Cal.4th at 462; see also, e.g., *Dawson v. Entek Int'l, 630 F.3d 928, 939* (9th Cir. 2011) ["To prevail on the hostile work environment claim based on sexual orientation, Dawson is required to establish a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment"].) "The plaintiff must show a 'concerted pattern of harassment of a repeated,

routine or a generalized nature.'" (*Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013), quoting *Aguilar v. Avis Rent A Car Sys., Inc.* (1999) 21 Cal.4th 121.) "When the workplace is *permeated* with discriminatory intimidation, ridicule and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' the law is violated." (*Kelly-Zurian v. Wohl Shoe Co., Inc.* (1994) 22 Cal.App.4th 397, 409, emphasis addded.)

"The harassment must satisfy an objective and a subjective standard." (*Hope v. California Youth Auth.*, 134 Cal. App. 4th 577, 588 [sexual orientation harassment].) "The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609–610, fn. omitted; cf., § 12923, subd. (a) [hostile work environment exists when the harassing behavior "sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being"].)

Thus, "annoying or 'merely offensive' comments in the workplace are not actionable." (*Lyle v. Warner Bros. Television Prods.* (2006) 38 Cal.4th 264, 283, quoting *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21.) "The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive is a crucial limitation that prevents …. harassment law from being expanded into a 'general civility code.'" (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377.) "[W]hen the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions." (*Lyle, supra,* at 284.)

Accordingly, although the severity of alleged conduct is a highly fact-specific inquiry, courts must and do play an important role in "filter[ing] out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" (*Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 788; see

also, e.g., *Lyle*, *supra*, 38 Cal.4th at 291 [affirming grant of summary judgment on hostile work environment sexual harassment claim where conduct alleged insufficiently severe]; *Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 145 [same].)

Here, the matters cited by Claimant (the incident the first day she and Alvadzhyan met, "dismissiveness," scheduling issues, etc.) – even assuming arguendo that they are tied to a disability - simply do not evidence acts *sufficiently severe or pervasive* to alter the conditions of her employment and create an abusive working environment.

*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, a sexual harassment case, is instructive in this regard. In *Mokler*, the Court of Appeal held that three incidents of harassing conduct engaged in by a county supervisor (Norby) over a five-week period did not establish a hostile work environment as a matter of law. The first incident occurred at an off-site budget meeting, during which Norby "asked [Mokler] about her marital status and called her an 'aging nun' when he learned she was not married." (*Id.* at 144.) The second incident occurred at a hotel during a victory party for a newly-elected supervisor: "Norby took Mokler by the arm, pulled her to his body, and asked, 'Did you come here to lobby me?' When she answered no, Norby, [sic.] responded: 'Why not? These women are lobbying me.' He told Mokler she had a nice suit and nice legs, and looked up and down at her." (*Ibid.*) The third incident occurred at Norby's office: "Norby told Mokler she looked nice and put his arm around her. He then asked Mokler where she lived, demanding to know her exact address. Norby again put his arm around Mokler and, as he did so, his arm rubbed against her breast. When Mokler tried discussing the services provided by [her department], Norby interrupted, stating: 'Why ... do you have to do something special for Mexicans?'" (*Ibid.*)

The Court of Appeal held "these acts of harassment fall short of establishing 'a pattern of continuous, pervasive harassment' [citation], necessary to show a hostile working environment under FEHA. Norby did not supervise Mokler or work in the same building with her. The first incident involved no touching or sexual remarks; rather, Norby uttered an isolated but boorish comment on Mokler's marital status. The second incident did not occur at work, and involved a minor suggestive remark and nonsexual touching. The third incident involved touching when Norby placed his arm around Mokler and rubbed his arm against her breast in

the process. The touching, however, was brief and did not constitute an extreme act of harassment. Norby's request for Mokler's home address was brazen, but this conduct falls short of what the law requires to establish a hostile work environment. Norby's derogatory statement regarding Mexicans was unmistakably foul and offensive, but not sexual. [¶] Taken as a whole, the foregoing acts demonstrate rude, inappropriate, and offensive behavior. To be actionable, however, a workplace must be '"permeated with 'discriminatory intimidation, ridicule and insult,' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"' [Citation.] The acts Mokler has alleged here are similar in scope to those found insufficient to constitute a hostile work environment in other cases." (*Mokler*, *supra*, 157 Cal.App.4th at 145.)

If the numerous disgusting and patently offensive acts engaged in by Norby in *Mokler* were insufficient to establish a hostile or abusive work environment, the admissible evidence presented by Claimant is certainly insufficient in this regard. In other words, Claimant's evidence here, even if considered in total, falls woefully short of the evidence in *Mokler*.

Compare Claimant's evidence with the facts in *Hope*, *supra*. In that case, the Court of Appeal "conclude[d] that the evidence supports a finding that the harassment would have interfered with a reasonable employee's work performance and seriously affected the psychological well-being of a reasonable employee and that Hope himself believed that the work environment was hostile and offensive." (*Hope*, at 591.)

In *Hope*, the plaintiff was a cook at a juvenile detention facility. He was repeatedly called "'motherfuckin' faggot' and a 'homo'" by his immediate supervisor in front of other employees. The supervisor would "'rant and rave'" to the next level supervisor that he would not work with "'this gay guy'" and the next level supervisor would do nothing to correct the behavior. (*Id.*, at 582.) A guard assigned to the kitchen routinely called plaintiff "'faggot ass bitch,'" "'faggot ass motherfucker,'" told the wards that plaintiff "looked at them because he thought they were pretty[,]" instructed them to not to assist plaintiff with duties, and tore up incident reports plaintiff wrote on wards. (*Id.* at 581.) The facts in *Hope* stand in stark contrast to those offered by Moghtanei in opposition to the request for disposition of this claim.

Claimant has not raised a triable issue of material fact as to the existence of severe or pervasive harassment, i.e., she has not shown that the trier of fact could reasonably conclude that her pharmacy/store was "permeated with [harassment] that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (*Mokler*, *supra*, 157 Cal.App.4th at 145.) Thus, this claim fails and may be properly disposed of by this motion. (*Cf.*, *Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 959 ["Whether an employee was subjected to a hostile work environment is *ordinarily* one of fact"] (emphasis added); § 12923, subd. (e) .)

Accordingly, Respondents' request for adjudication of this claim in their favor is GRANTED.

***Respondents are entitled to adjudication of Claimant's Wrongful Termination claim***

In her seventh cause of action, Claimant alleges that Respondents violated public policy by terminating her employment for a reason proscribed under FEHA – namely, discrimination. (See, Complaint, Paras. 101-103.)

A common-law tort claim for wrongful discharge may lie where an employee's termination violates a fundamental public policy. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 176.) "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) *the termination was substantially motivated by a violation of public policy*, and (4) the discharge caused the plaintiff harm." (*Yau v. Santa Margarita Ford, Inc.* (2014) 229 Cal. App. 4th 144, 154.)

To succeed on a wrongful discharge in violation of public policy claim (i.e., a *Tameny* claim), a plaintiff must have been wrongfully discharged in violation of a policy "delineated in either constitutional or statutory provisions." (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159.)

However, "the common law cause of action cannot be broader than the constitutional provision or statute on which it depends." (*Id.* at 1159.) Thus, if an underlying FEHA claim fails, "any claim for wrongful discharge in violation of the public policy embodied in those

claims fails." (*Walker v. Brand Energy Servs., LLC*, 726 F. Supp. 2d 1091, 1107 (E.D. Cal. 2010); see also *Featherstone v. S. California Permanente Med. Grp.*, *supra*, 10 Cal.App.5th at 1169 ["if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails"].) In this regard, the *McDonnell Douglas* approach applies to a *Tameny* claim (see, e.g., *Loggins*, *supra*, 151 Cal.App.4th at 1108–1109 and *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215 [applying *McDonnell Douglas* approach to wrongful termination claim alleging violation of Art. 1, Sec. 8]).

As previously explained, Claimant has not raised a triable issue of material fact as to her discrimination claim (or, for that matter, her claims for retaliation and harassment). Because Claimant's underlying discrimination claim fails, as a matter of law her cause of action for wrongful discharge in violation of the public policies embodied in that claim cannot survive.

Respondents' request for disposition of this claim in their favor is GRANTED.

***Respondents are <u>not</u> entitled to adjudication of Claimant's Failure to Pay Wages and Section 17200 claims***

Claimant's eighth cause of action, citing labor Code sections 201-204, alleges that CVS has failed to pay her wages due for "Paid Time Off (PTO)." (Complaint, Para. 107.) Her ninth cause of action is derivative of the unpaid wages claim. (See, Complaint, Para. 112.)

For the several alternative reasons well-stated at 23:9-24:10 of the opposition brief, this claim survives this motion. In this regard, the Arbitrator respectfully rejects CVS' assertion (as to one of those grounds) that Claimant is improperly raising a new theory of liability in response to the motion. (See, Reply, at 13:23-14:24.) Unpaid, pre-2016 PTO would have been due *at the time of her termination* – not before.

Accordingly, Respondents' requests for adjudication of these claims in their favor are DENIED.

***Respondents are <u>not</u> entitled to adjudication of Claimant's Contract claims***

Respondents sought summary disposition of the tenth and eleventh causes of action (for Breach of the Covenant of Good Faith and Fair Dealing and Breach of Implied-In-Fact

Contract, respectively) *exclusively* on the basis of LMRA section 301 preemption principles. (See, Motion, at 24:5-25:20.) Claimant responded with a cogent argument explaining why section 301 does not preempt these state-law claims, which, per Claimant, do not arise from the CBA. (Opp., at 24:13-25:3.)

Rather than address Claimant's *argument of law regarding LMRA preemption*, CVS argues that the opposition *concedes that no breach occurred*, because "Claimant does not cite to a single piece of conflicting evidence" or to "authority supporting some alternate interpretation of the facts." (Reply, at 15:13-14.) Respondents' argument is non-responsive.

By not properly responding to Moghtanei's points, CVS have conceded their merits, whether or not CVS intended to do so. (See, e.g., *Dorsic v. Kurtin* (1971) 19 Cal.App.3d 226, 239; *County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1012, n. 7; *Gagosian v. Burdick's Television and Appliances* (1967) 254 Cal.App.2d 316, 318.)

Accordingly, Respondents' requests for adjudication of these claims in their favor are DENIED.

***The disposition of Claimant's Punitive Damages requests***

Moghtanei's claims for punitive damages fall with her FEHA-based claims.

But even if one or more of those claims had survived, the Arbitrator would *still* dispose of her requests for punitive damages.

To recover punitive damages against a corporate defendant, the plaintiff must properly allege fraud, oppression or malice on the part of "an officer, director, or managing agent of the corporation," acting on behalf of the corporation. (Civil Code sec. 3294(b); see also, CACI No. 3948 ["Punitive Damages - Individual and Corporate Defendants (Corporate Liability Based on Acts of Named Individual)"].) Unlike compensatory damages, for which a corporation may be liable as the result of an employee's tort under the doctrine of *respondeat superior*, punitive damages may be imposed on a corporation "only if the corporation itself, acting through those who managed its general affairs, engaged in the requisite oppression, fraud, or malice." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 569.)

"'Managing agents' are employees who 'exercise[ ] substantial discretionary authority over decisions that ultimately determine corporate policy.'" (*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167; see also, *White v. Ultramar, Inc.*, *supra*, at 576-577.) "'[C]orporate policy' is the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations. A 'managing agent' is one with substantial authority over decisions that set these general principles and rules." (*Cruz*, at 167-168.)

It is simply not enough that an employee's decisions may have significant consequences: "Whether the corporation will be liable for punitive damages depends, not on the nature of the consequences, but rather on whether the malicious employee belongs to the leadership group of 'officers, directors, and managing agents.'" (*Id.*, at 168.) Of course, a corporate defendant cannot shield itself from liability by giving an employee a nonmanagerial title and relegating to him crucial policy decisions. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822-823.)

To put it simply: in order to be considered a managing agent, the person in question must have discretionary authority over "formal policies that affect a substantial portion of *the company* and that are the type likely to come to the attention of corporate leadership." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 715, emphasis added.)

Respondents have easily carried their initial moving burden on this issue. (See, Motion, at 26:3-22.) Claimant's responsive evidence (Opp., at 25:14-24) does not raise a triable issue of material fact as to whether a managing agent acted with, authorized, or ratified the (alleged) malice or oppression.[16]

## <u>ORDER</u>

Respondents' motion for summary judgment is DENIED. Respondents' requests in the alternative for summary adjudication are GRANTED as to all FEHA-based claims, the *Tameny*

---

[16] There is little - if any - point in reaching the issue of whether Claimant has raised a triable issue of material fact as to the existence of malice or oppression under Section 3294.

claim, and all punitive damages claims. They are DENIED as to the two contract claims and the unpaid wages and section 17200 claims.

IT IS SO ORDERED.

DATED: January 31, 2023

*Lesley C. Green*

Lesley C. Green
Arbitrator

AMERICAN ARBITRATION ASSOCIATION

EMPLOYMENT ARBITRATION TRIBUNAL

In the Matter of Arbitration Between

**EVA VENTURA,** AAA No. 01-20-0015-4233

Claimant,

and

**CVS PHARMACY, INC., CVS CAREMARK,**

**CVS HEALTH ET AL.**,

Respondents.

---

Counsel for Claimant
Timothy J. Donahue
Law Offices of Timothy J. Donahue
374 S. Glassell Street
Orange, CA 92866

Counsel for Respondents
Daniel F. Fears
Andrew K. Haeffele
Leilani E. Jones
Payne & Fears LLP
4 Park Plaza, Suite 1100
Irvine, CA 92614

Arbitrator:
Linda S. Klibanow
Law Offices of Linda S. Klibanow
466 Foothill Blvd., #419
La Canada, California 91011

Date of Interim Decision and Order on
Respondents' Motion for Summary Judgment: May 26, 2022

Date of Final Award: June 23, 2022

THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the parties' arbitration agreement;

The arbitrator, on November 16, 2020, having executed the Arbitrator's Oath, and;

The arbitrator, in or about May – June, 2022, having reviewed the respondents' March 10, 2022 Motion for Summary Judgment, the claimant's April 14, 2022 Opposition and April 22, 2022 Supplemental Opposition to same, and the respondents' May 5, 2022 Reply in Support of Motion for Summary Judgment, and;

The arbitrator on May 12, 2022 having conducted oral argument upon the aforereferenced Motion, and;

The arbitrator on May 26, 2022 having issued her Interim Decision and Order on Respondents' Motion for Summary Judgment granting said motion, and;

The arbitrator having noted that respondents have not timely submitted a memorandum of costs;

The arbitrator finds, concludes and issues this Final Award.

## I. PROCEDURAL BACKGROUND

Claimant's Initial Demand for Arbitration herein was filed October 26, 2020 and respondents' Answer on November 13, 2020. At the Initial

Arbitration Management Teleconference conducted herein on December 14, 2020, the arbitrator required that no later than January 4, 2021 claimant file Amended Demand "supplying factual circumstances underlying such Demand and identifying particular causes of action." Amended Demand was submitted December 15, 2020 and Amended Answer on December 29, 2020. On several occasions the parties stipulated to extension of merits hearing dates as well as deadline for filing of dispositive motion.

On March 10, 2022 respondents timely filed their Motion for Summary Judgment, discerning, within the brief Amended Complaint, twelve causes of action, as to each of which respondents sought summary judgment/adjudication.[1] Claimant's Opposition was filed on April 14, 2022. On April 22, 2022 claimant sent a supplemental email with attached email correspondence demonstrative of claimant's efforts "since January" to conduct a PMK deposition/production of documents, with attached copies of notices served January 11 and February 16, 2022. No discovery motions were brought to the attention of the arbitrator for determination. Respondents in Reply observe that claimant in her Opposition failed to

[1] Wrongful termination, harassment, retaliation (FEHA), age/disability discrimination, failure to engage in interactive process, failure to accommodate, violation of Business & Professions Code Section 17200, failure to pay overtime, failure to provide meal and rest breaks, waiting time penalties, inaccurate wage statements, and retaliation (Labor Code). Claimant's Opposition concurs as to this delineation of causes of action before this arbitrator.

offer evidence that any accommodation would have enabled claimant to perform the physical functions of stocker/stock handler or any other position at the Distribution Center (DC) at which claimant was employed. Respondent filed Reply on May 5, 2022. Following oral argument conducted on May 12, 2022, it appears that, in the early afternoon of May 12, 2022 claimant submitted for consideration the decision in *Atkins v. City of Los Angeles* (2017) 8 Cal. App. 5th 696.[2] Later that same date respondents objected to the unauthorized and "belated sur-reply"/notice of lodging and argued that the decision in *Atkins* supports respondents position in holding that employers generally are not required to make light duty assignments permanent. On May 13, 2022 claimant argued further as to *Atkins,* in contending: "there is no proof that it [the light duty assigned to claimant] was temporary" and "the burden is on defendant CVS to justify making it temporary."[3] In such May 13 email claimant further contends, *inter alia,* that respondents' designation of Susan Zamarelli as PMK constituted "a deliberate attempt to evade discovery obligations under AAA

[2] In actuality it appears that the arbitrator was not served with claimant's email of May 12 pertaining to the *Atkins* decision; rather, the arbitrator became aware of such through review of respondents' objection to what respondents termed an unauthorized and "belated sur-reply."

[3] "They [respondent] have presented no explanation as to why it was temporary, could it be made permanent, what was the cost…?"

rules" and "due to gamesmanship, claimant did not get even 1 real deposition."[4]

On May 26, 2022 the arbitrator issued her Interim Decision and Order on Respondent's Motion for Summary Judgment finding that:

(i) as to claimant's claims for violation of the California Fair Employment and Housing Act (FEHA) and any claims derivative of such, i.e., claims as to wrongful termination in violation of public policy and unfair business practices, c*laimant failed to adduce evidence showing triable issue of fact* as to the alleged harassment, discrimination, failure to engage in interactive dialogue, failure to accommodate, or that respondents' asserted legitimate, nondiscriminatory and nonretaliatory reason for claimant's separation from employment and evidence in support thereof, was pretextual for conduct unlawful under the FEHA, and

(ii) also finding that, as to claimant's claims for violations of the California Labor Code, claimant *failed to adduce evidence showing triable issue* that claimant was unlawfully denied any rest or meal breaks or that she was unlawfully compelled to work "off the clock" and unlawfully denied compensation therefor.

[4] See discussion at Section IV, *infra*.

## II. POSITIONS OF THE PARTIES

A. Position of Respondents

Respondents filed their motion for summary judgment/adjudication on March 10, 2022. Respondents contend generally that claimant cannot create a genuine dispute as to any material fact that would support either a *prima facie* case of age or disability discrimination and associated claims for failure to engage in interactive process, failure to accommodate, harassment or retaliation or a *prima facie* case as to any of claimant's wage and hour or associated claims.

Respondents note that employer accommodated claimant's April 2019 medical restrictions, i.e., no lifting over shoulder greater than 30 lbs., no lifting from waist to shoulder greater than 30 lbs., and no exercise of right hand/wrist, by placing her on light duty and assigning only light duty tasks. When, in July 2019, the restrictions were altered to no lifting over shoulder greater than 15 lbs. and no lifting below waist greater than 15 lbs. and claimant requested a three-month leave of absence (LOA), such leave was granted through October 10, 2019. Then in September 2019 claimant apprised respondent employer ("respondent") of her treating physician's issuance of permanent work restrictions of no lifting, carrying, pushing or pulling over 18 lbs. Respondent notes it properly accommodated claimant at this juncture by extending her leave of absence an additional eight

months, evaluating whether her permanent restrictions could be accommodated, and providing claimant time to bid for an alternative position, although respondent notes that no alternative position was identified which claimant was physically capable to perform and claimant did *not* bid on any alternative positions.

Respondent contends that undisputed relevant evidence indicates that (i) from April 2019 through April 2020 respondent accommodated claimant with light-duty assignments and multiple leaves of absence (LOAs), and (ii) respondent's decision to separate claimant from employment was made solely because, with permanent work restrictions prohibiting her from lifting/pushing/pulling greater than 18 lbs., she could not perform either her then current job position or any job at the Distribution Center (DC).

At the relevant juncture in her experience working for respondent, claimant's position was stock handler.[5] The essential duties of the stock handler position were "to ensure that products are accurately and efficiently moved from pallets to the correct shelving units."[6] Thereafter in the

[5] Claimant had bid for and been promoted from order selector to stock handler. Claimant was a member of the CVS bargaining unit represented by General Truck Drivers, Office, Food & Warehouse Union Local 952 and the applicable collective bargaining agreement provided bidding procedures for assignment to stock handler position.

[6] "The stock handler position is physically demanding and requires constant movement."

process, employees in the "order selector" position select products needed to replenish low/empty inventory at CVS retail stores.

On January 24, 2019 claimant suffered a work-related injury to the back and knee. Although an evaluation five days later determined claimant was "fit for duty," she was seen by her treating physician for the first time as to this injury on April 12, 2019 and he imposed the above referenced "no greater than 30 lbs. restrictions" which continued in effect through July 8, 2019. During this period respondent accommodated claimant's injury and restrictions by assigning "light duty" tasks. On July 9, 2019 claimant's treating physician modified claimant's restrictions by prohibiting lifting anything greater than <u>15 lbs</u>., hence, claimant requested a three-month leave of absence, i.e., through October 10, 2019, which was granted and in October 2019[7] claimant's request for an additional two months leave also was granted despite claimant's failure to supply supporting medical documentation, in actuality, respondent accorded claimant a six-month leave from October 2019.

In February 2020 Reasonable Accommodation (RA) Partner Thomas Maloney spoke several times with claimant and also with the DC's Senior

[7] Despite several reminders claimant failed to submit the required supporting documentation with respect to this two-month leave extension.

Manager of Logistics Sean Moriarty and respondent determined there were no available positions which could accommodate the claimant's weightlifting restrictions. Operations Manager Vince Mendoza reviewed RA Maloney's examination and proposed findings and concurred with Senior Manager Moriarty's assessment that there were no positions open for bid which claimant could perform with her physical restrictions.

With multiple supporting citations to *claimant's own deposition testimony*, respondent established that claimant, at the relevant time and to this date, has not been physically capable of performing any job position at the DC where she worked. Citing Moriarty's declaration, respondent in support of its motion contended, "From the time her treating physician deemed her permanently restricted in September 2019, through her termination in April 2020, there was not a single available job at the DC that Claimant was physically capable of performing [citations to Moriarty, Mendoza and Zamarelli declarations omitted]."

Thus, as to claimant's FEHA claims and any claims derivative of them, respondent cited the decision in *Davis v. California Guardian*, 20 WL 7350752 (Ca. Ct. App. 12/15/20) as to the propriety of granting dispositive motion in the case before the arbitrator. Respondent noted that where, as

here, there is no direct evidence of discrimination,[8] the McDonnell Douglas burden-shifting paradigm requires claimant to adduce evidence sufficient to support the *prima facie* elements of her discrimination and/or retaliation claims, i.e., a preponderance of evidence demonstrating causal connection between protected status or activity and the adverse employment decision, whereas here the undisputed evidence shows that claimant was separated from employment solely due to the physical restrictions issued by her physicians which disabled her from performing her job or any available job with respondent.

Moreover, respondent has adduced evidence as to its legitimate and nondiscriminatory and nonretaliatory reason for claimant's separation from employment, respondent identifying in support of the foregoing, *inter alia*, claimant's leave of absence/accommodation records (4 months of light duty and 9 months of continuous leave), the stock handler job description, and

[8] Respondent noted claimant's burden as opposing party on pending dispositive motion to establish a genuine issue by citing to record evidence, and that an Opposition such as claimant's here, which contained no evidence but simply asserted that triable issues exist, is insufficient to withstand summary judgment, citing decisions in *Shepherd v. Jones* (1982) 136 Cal. App. 3d 1049, 1062 and *Hansen v. U.S*. (9th Cir. 1993) 7 F3d 137, 138. Cf. also, *Lerma v. Cty. of Orange* (2004) 120 Cal. App. 4th 709, 715. Respondent also remarked that claimant here has not asked for additional time to conduct discovery and that, even had she done that, she could not establish requisite diligence to warrant such a continuance. Noting that in this case respondent CVS carried its burden as to legitimate business reason for the termination, respondent emphasizes that consequently any presumption of discrimination disappeared, necessitating that claimant meet her burden to prove CVS acted with discriminatory intent, i.e., that the legitimate reasons proffered by CVS through declaration of Mendoza, were false and pretextual, which claimant utterly failed to do. Nor, argued respondent, has claimant adduced any evidence of harassing conduct and her own deposition testimony substantiates the absence of harassing conduct by the alleged harassers.

job postings showing no vacant positions which claimant was physically capable to perform. Respondent averred, finally, that claimant adduced no evidence of pretext, far less the substantial evidence of pretext required under precedent.

As to harassment, which claimant alleged as to her supervisors Norma Carrillo[9] and then Tony Mallard, and Operations Manager Vince Mendoza, respondent argues that claimant's testimony in support of such allegations is plainly insufficient. Thus, as to Carrillo, according to claimant's deposition testimony claimant construed Carrillo's staff rotations by seniority to be unfair because claimant had low seniority. As to Mendoza, claimant testified that on two occasions she deemed his conversation harassment but only twice because she really didn't speak much to him and found him arrogant. Finally, as to Mallard, claimant testified that she "never had any negative interactions" with him and he never said anything to her concerning any medical condition or her age.[10]

With respect to the claimed wage/hour violations, supported by declaration of Human Resources Partner Susan Zamarelli, respondent

---

[9] Respondent also argued that any harassment claims as to Carrillo were time-barred since after Mallard became her supervisor on or before January 1, 2018 claimant had negligible contacts with Carrillo yet her FEHA administrative complaint was not filed until October 14, 2020.

[10] Respondent notes that claimant's WTVPP and unfair business practice claims are wholly derivative, hence, entirely unsupported.

asserts that its policies prohibit working "off the clock" and that claimant was provided such policy on multiple occasions, as well as required to complete computer-based learning courses which affirmed respondent's strict prohibition against "off the clock" work. Moreover, as asserted to in Mendoza's declaration in support of motion, respondent CVS's meal and rest period policy and practice require employees to take rest and meal breaks and it actually regulates such policy via a bell system, setting all first shift employees, such as claimant, to take rest period at 6 AM, meal period at 8 AM, a second rest period at 10 AM and end of shift at 12:30 PM. Respondent submits that claimant's deposition testimony fails to substantiate any unpaid or "off the clock" work, or that she was prevented by the employer from taking the requisite rest and meal breaks, arguing that the decision in *Reece v. Unitrin Auto & Home Ins. Co.* (N.D. CA, 2013), 2013 WL 2454532, where the court granted summary judgment where plaintiff employee knew of his right to take meal periods, never complained of not being able to take breaks, and provided no evidence to support conclusory allegations, is on point in requiring the granting of summary judgment in such circumstances.[11] Finally respondent contended that,

[11] Respondent notes that claimant's Opposition failed to offer evidence of unpaid time or missed meal/rest periods/breaks. Respondent notes that, in Opposition claimant adduced no evidence of off-the-clock work known to respondent or impedance on the part of respondent in claimant's taking meal or rest

according to judicial precedent, such determination is conclusive as to derivative Labor Code Sections 203 and 226 causes of action, as well as derivative cause of action under Business & Professions Code Section 17200.

Respondent addressed at length claimant's allegation that respondent failed to present appropriate PMK on topics designated by claimant. Respondent, with use of a "grid," reviewed the cited questions and responses from deposition excerpts relied upon by claimant to demonstrate that claimant asked PMK Zamarelli questions outside the scope of her "noticed PMK topics" and noted as well that claimant made no effort to reconvene the PMK deposition, nor has she noticed any "fact witness" depositions.

Finally, per respondent the record is devoid of evidence warranting imposition of punitive damages, as the record shows no evidence of fraud, oppression or malice or that sole decisionmaker Mendoza was an officer, director or managing agent of respondent employer.[12]

---

breaks, fatal as well to derivative claims for waiting time penalties, inaccurate wage statements and unfair business practices.

[12] Respondent underscored that while claimant would discount claimant's deposition admissions based on counsel's "multiple objections," in fact, there were only two objections to questions and answers upon which respondent has *not* relied.

B. Position of the Claimant

Claimant commenced her Opposition with the assertion that each of the six declarations which respondent submitted in support of its dispositive motion is "inadmissible or disputed and contradictory." Claimant also contended that on February 16, 2022 claimant noticed deposition of a PMK "on the relevant topics" and on March 7, 2022 respondent produced witness Susan Zamarelli whom claimant's counsel immediately advised respondent's counsel was "completely unprepared at a minimum." Claimant moreover contended that Zamarelli's March 9 declaration submitted in support of the motion "contradict[s] her deposition testimony." Claimant thus asserted that respondent tried to "sandbag," in that "the person most knowledgeable basically testified….I know nothing." Consequently, argued claimant,

> "Defendant cannot meet the initial burden of proof with contradictory testimony. Defendant cannot meet the burden of proof anyway. Defendant has not met the initial burden of proof. Everything is disputed. Everything is a question of fact."

Claimant objected to all the declarations submitted by respondent in support of the motion, characterizing their contents generally as "inadmissible conclusions and opinions." Claimant accused respondent of "abusive conduct," "trying to gag plaintiff with vague alleged undisputed

facts," Claimant cited numerous decisions in which courts lambasted attorneys in dispositive motion proceedings for "expecting judges to hunt for truffles like pigs." A significant portion of claimant's Opposition Points and Authorities is comprised of citations to such decisions, "railing" against improper dispositive motions.[13]

Claimant repeatedly averred that respondent is "bound by the testimony of their PMK." Claimant notes that PMK Zamarelli testified that claimant Ventura was a "stocker," rather than a "Stock Handler."[14] As to respondent's reliance upon the claimant's deposition, claimant maintained, that "Some of claimant's testimony might be admissible, but, not everything argued," yet claimant failed to follow up with the expected analysis as to what evidence from claimant's deposition she contends is admissible and what, presumably relied upon, claimant contends is not admissible.

In oral argument claimant referred to Mendoza as an uneducated "hack," accused respondent of "willful suppression of evidence" in designating Zamarelli as PMK, and asserted that respondent terminated

[13] Claimant argued that the declarations are "legalese" and are "beyond a leading question. More like dragging their employee/witness around by the nose." Claimant's "wholesale" objections bear semblance to those described by District Judge Fisher in the *Knight v. Air Prods. & Chems.,* 2021 BL 231447 (C.D. CA 2021), in which Judge Fisher remarked that "many of these objections do not make any sense….[and] are…perplexing."

[14] Says claimant, "They can't even get her job right." From the evidentiary record it appears to the arbitrator simply that there are two names for the same job position.

claimant's employment "to send a message and to punish her and rub her nose in her limitations." Claimant repeatedly insisted that upon the pending motion, "claimant does not have to prove anything" and that claimant "could do the job she was terminated from." Claimant similarly maintained that claimant at this juncture has no burden to show that she performed "off the clock" work.[15] Claimant objected to, and argued, without particularity, that the arbitrator should disregard any and all content of each and all of respondent's declarations in support of dispositive motion. Claimant also contended that "the termination was the harassment" of which claimant complains in her complaint.

## III. STANDARDS AND SHIFTING BURDENS

The decision in *Zamora v. Security Industry Specialists, Inc*. (2021) 71 Cal. App. 5th 1, cited by claimant, is an appropriate guide to application of the McDonnell Douglas shifting burdens of proof in context of motion for summary adjudication in an employment discrimination case. In *Zamora* the court held that a defendant moving for summary adjudication meets the

[15] While claimant in her Opposition provided no evidence with respect to the "bell system" for meal and rest breaks attested to by Mendoza in his declaration, in oral argument claimant asserted that respondent's burden on dispositive motion encompassed a burden to adduce affirmative evidence that the bell system was "loud enough," that it was "not tardy," that the bell system was working properly during the time period in question, and that claimant heard them. The arbitrator disagrees that, in the absence of claimant adducing affirmative evidence as to the foregoing issues, respondent had a burden to address them in its motion and reply.

requisite burden to show there is no triable issue as to any material fact and the moving party is entitled to judgment, as a matter of law, by

> "presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the claim. [citation omitted] Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. [citation omitted] Material facts are those that relate to the issues in the case as framed by the pleadings. [citation omitted] There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [citation omitted]."

The court in *Zamora* identified the three elements of a plaintiff's *prima facie* case in a disability discrimination context such as the instant case before the arbitrator as follows: (1) that plaintiff suffered from a disability or was regarded as such; (2) that plaintiff could perform the essential duties of a job with or without reasonable accommodations, and (3) that plaintiff was subjected to an adverse employment action because of the disability or perceived disability. Satisfaction of these *prima facie* case requirements gives rise to a presumption of discrimination which, if unanswered by respondent, is mandatory, requiring judgment for the plaintiff.

More particularly, *Zamora* held that when seeking summary adjudication in an employment discrimination case the employer has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's *prima facie* case is lacking or that the adverse employment action was based upon legitimate nondiscriminatory factors. If the employer satisfies its initial burden, it will be entitled to summary adjudication *unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing*. "[T]he burden rests with the moving party to negate the plaintiff's right to prevail on a particular issue. [citation omitted]. *From commencement to conclusion, the party moving for summary adjudication bears the burden of persuasion that there is no triable issue of material fact and that it it is entitled to judgment as a matter of law*. [citation omitted]." [Emphasis supplied]

Following *Zamora***,** in order to make out a *prima facie* case claimant is required to show that she (1) suffered from a disability, (2) could perform the essential duties of a job with respondent with or without a reasonable accommodation, and (3) was subjected to an adverse employment action because of the disability/perceived disability. In the case before the arbitrator, as in *Zamora*, the employer challenges the second and third elements of claimant's *prima facie* case.

> "A defendant moving for summary judgment bears the initial burden of presenting evidence to negate an essential element of the claim or to establish an affirmative defense. [citation omitted]."

*Arthur v. Disneyland Resort,* 2020 BL 146918 (Calif. Ct. of App.) [unpub.]

The traditional McDonnell Douglas burden-shifting paradigm[16] is modified in proceedings on dispositive motion -

> "…because the employer bears the initial burden on its motion, and it may meet that burden by presenting evidence of nondiscriminatory reasons for the termination [citation omitted] 'To defeat the motion [for summary judgment], the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by preponderance that intentional discrimination occurred [citations omitted]. Once an employer presents evidence of a legitimate non-discriminatory reason, 'an employee seeking to avoid summary judgment cannot simply rest on the *prima facie* showing, but must adduce substantial[[17]] evidence from which a trier of fact could infer

[16] According to the paradigm, the requirements for plaintiff employee's *prima facie* case are that: plaintiff suffers from a disability; plaintiff is a qualified individual, and; plaintiff was subjected to an adverse employment action because of the disability. *Engel v. Time Warner Cable*, 2020 BL 171461 (C.D. CA 2020). This then triggers the employer's burden to show either that plaintiff cannot establish an element of the foregoing FEHA claim or there was a legitimate nondiscriminatory reason for the decision to terminate plaintiff's employment. *Ibid.* The second element of plaintiff's *prima facie* case requires that he demonstrate that he could perform the essential duties of a job with or without reasonable accommodation. *Zamora v. Security Industries, Inc., supra.*

[17] "A plaintiff must offer 'specific' and 'substantial' evidence to prove pretext in a retaliation claim under FEHA. [citations omitted]." *Knight v. Air Prods & Chems., supra*. As the court said in *Zamora v. Security Industry Specialists, Inc.*, *supra*, "by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained. [citation omitted]."

> the articulated reasons for the adverse employment action were untrue or pretextual. [citation omitted].'"

*Ibid*.

In other words, the employer's initial showing shifts the burden to the employee to present rebuttal evidence that 'raises a rational inference of discrimination.'[citation omitted]." *Ibid.* See also, *Davis v. Calif. Guardian, Inc., supra*,[18] in which the court found the movant employer demonstrated both that Davis could not establish a *prima facie* case for discrimination and also that it had proffered a legitimate reason for the termination, to wit, that the plaintiff was unable to perform the essential duties of the position with or without reasonable accommodation. In *Davis* the court, affirming summary judgment, held that no reasonable accommodation was shown to exist which "mooted" the issue whether the employer sufficiently engaged in the interactive process. Cf. also *Zamora v. Security Industry Specialists, Inc., supra.* As set forth in greater detail in Section VI, Analysis, below, in this case, pursuant to the above authorities, summary judgment was granted herein as to the FEHA and FEHA derivative claims because claimant submitted no evidence to rebut respondent employer's competent

[18] "…[T]he ultimate issue is simply whether the employer acted with a *motive to discriminate illegally.* Thus, 'legitimate' reasons [citation] in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.' [citation omitted]." [emphasis in original]

and admissible declarations substantiating interactive dialogue, accommodations made when temporary light duty consistent with claimant's medical restrictions was available, leaves of absence granted, and the absence of any available positions consistent with claimant's permanent restrictions; and likewise, as to the wage/hour claims, summary judgment was granted because claimant submitted no evidence to rebut the employer's showing that claimant was made aware of respondent's policy against off the clock work as attested to by declarant Zamarelli and that meal and rest breaks were provided and monitored/enforced via a "bell ringing" system attested to by declarant Mendoza. Contrary to claimant's contention that, notwithstanding respondent's supporting deposition testimony of the claimant and the declarations as described hereinabove, claimant was not required, at this juncture, to produce any evidence, the arbitrator found that respondent's motion was supported by claimant's testimony cited by respondent from her deposition in this case and in her workers compensation matter as well as facts attested to by respondent's declarants as referenced above. Claimant's generalized objection that all of the material submitted by respondent in support of its motion was inadmissible, contradictory, conclusory or opinion or disputed, was not well-

taken and, in fact, no facts were adduced by claimant to dispute competent evidence supporting respondent's motion.[19]

## IV. CLAIMANT'S "OBJECTION" OF INADEQUATE DISCOVERY OPPORTUNITY IS NOT SUBSTANTIATED BY THE RECORD

Although not referenced in claimant's April 14, 2022 Opposition to respondent's Motion for Summary Judgment/Adjudication, in claimant's May 13, 2022 email reply to respondent's May 12, 2022 remarks on claimant's "notice of lodging" as to the *Atkins* decision, claimant complains that respondent's "selection of the PMK was a joke and a deliberate attempt to evade discovery obligations under AAA rules," that respondent "never produce [sic] the records…until threatened AFTER the deposition was completed—each party got 1 deposition…but due to gamesmanship, claimant did not get even 1 real deposition." In fact, while at the Initial Arbitration Management Teleconference conducted herein on December 14, 2020, the parties stipulated to certain limitations on *written* discovery with the express proviso that "a party, upon a showing of good cause, may apply to the arbitrator for leave to serve additional discovery," (Initial

[19] Nor did claimant submit evidence of harassment in violation of FEHA. In this respect respondent relied upon claimant's own deposition testimony to substantiate insufficient evidence of harassment; indeed, in opposition, claimant contended that the harassment was "the termination." Claimant also objected that respondent did not prepare a separate statement, however, in the initial arbitration management teleconference counsel were advised that separate statement or other conformance with the CCP was not required so long as the argument and supporting evidence were clearly articulated, which the arbitrator finds they were.

Arbitration Management Order at paragraph 6), the same paragraph 6 provides that "the parties shall meet and confer concerning a schedule of depositions." Thus, there was no limitation on numbers of depositions in this matter.

Paragraph 8 of the same Initial Arbitration Management Order sets forth a specific yet informal procedure for the parties to present any discovery dispute to the arbitrator for resolution. Hence, the parties had full opportunity as to the taking of depositions, the claimant at no time sought relief from the arbitrator relative to a discovery dispute of any sort, and the claimant at no time, including the conduct of oral argument upon the pending motion, sought additional time for taking of discovery relative to the filing of Opposition to respondent's dispositive motion.

## V. LIMITS OF REASONABLE ACCOMMODATION, TEMPORARY "LIGHT" DUTY, AND INDEFINITE LOA

The law does not require an employer to eliminate essential functions of the position or to create what amounts to a new position. *Arthur, supra*. Nor does the FEHA require an employer to shift a disabled employee's essential duty to other employees, or to require other employees to work harder or longer. Slowing production or assigning an injured worker lighter loads is not required; indeed, that another employee is required to do an

employee's duties suggests that the duties are essential. *Duarte v. Vons Cos*., 2015 BL 338043. [unpub.][20]

Moreover, it is well-established that an employer's provision of temporary light duty assignments does **not** require that the employer make such arrangement permanently. *Duarte v. Vons Cos., supra.* To same effect, see *Knight v. Air Prods. & Chems., Inc., supra* (The employer's creation of a temporary light duty position for Knight also does not demonstrate it could have accommodated Knight. 'FEHA does not require an employer to exempt a disabled employee from any essential function of the job or convert a temporary, light-duty accommodation into a permanent position. [citations omitted.])" Cf. also, to same effect, *Raine v. City of Burbank*, (2006) 135 Cal. App. 4th 1215 (court held that reasonable accommodation did not encompass duty to make temporary position permanent where that would essentially require the creation of a new position.) In this case, as set forth in greater detail in Section VI, Analysis, below, claimant ultimately maintained that respondent violated the FEHA by failing to provide claimant with a permanent light duty position, and the arbitrator found that, based upon the facts adduced by respondent and not

[20] While "it is true that generally the determination of a job's essential duties is a question of fact [citation omitted]…when the plaintiff does not submit sufficient evidence from which a reasonable finder of fact can find in his favor, the issue becomes one of law.. Cases have held that the issue of essential job duties may be determined on a summary judgment. [citation omitted]." *Duarte v. Vons, supra.*

refuted by claimant, such would require that respondent create a new position which applicable precedent does not require.

It is similarly well-established that the employer is not obligated to maintain an employee on leave indefinitely. See*, Knight v. Air Prod. & Chems., supra.* Consequently, an employer is relieved of the duty to reassign a disabled employee if there is no vacant position for which the employee is qualified*. Knight v. Air Prods. & Chems., supra.*

> "Although an employee cannot be expected to identify and request all possible accommodations during the interactive process, 'the employee should be able to identify specific, available reasonable accommodations through the litigation process, and particularly by the time the parties have conducted discovery and reached the summary stage. [citation omitted] If the employee cannot identify such a reasonable accommodation after discovery in litigation, he or she has suffered no remediable injury from any violation of section 12940 subdivision (n). [citation omitted]."

*Duarte v. Vons Cos., supra.* See, to same effect, *Knight v. Air Prods. & Chems. Inc., supra.*

## VI. ANALYSIS [21]

A. Respondent's Reasonable Accommodations Made

[21] While in discussion of her analysis the arbitrator may not have specifically addressed each evidentiary item, argument or case precedent offered in support of or in opposition to the parties' positions, nevertheless, she has carefully considered all of the evidence, argument and authority adduced by the parties and issues this decision consistent with such consideration.

In *Zamora,* there were factual disputes regarding the essential functions and physical requirements of the job. In the case before the arbitrator, while claimant protests that "everything is disputed," "everything is a question of fact," and "defendant has no evidence," *respondent has adduced competent and admissible evidence, through the declarations of Moriarty and Mendoza, as to the essential functions of a stocker/stock handler, notably, among others, including a "lifting" qualification of "20 lbs. frequently and 75 lbs. occasionally."* Respondent has also adduced competent evidence as to the DC's practice, about 2019, to place employees with temporary lifting restrictions of "30 lbs. and above" into **temporary** light duty assignments. The evidentiary record further shows that respondent, through Mendoza, upon learning of the initial **temporary** 30 lb. restriction in April 2019, assigned claimant to "light duty" work; were the restriction of a lower weight, there would have been no light duty, even temporarily, due to the nature of the enterprise. When Mendoza was apprised in July 2019 of the updated restriction to "no more than 15 lbs.," Mendoza and claimant's supervisor Mallard agreed to place claimant on a temporary leave of absence.

B. Respondent's Inability to Reasonably Accommodate Claimant's Permanent Work Restrictions

In September/October 2019 time frame, Mendoza was apprised of a **permanent** restriction to lift no more than 18 lbs. On October 10, 2019 claimant contacted the RA Department and initiated a job duty modification request which was assigned to RA Partner Maloney. Maloney interviewed the claimant and Senior Logistics Manager Moriarty, and then the matter was elevated to Operations Manager Mendoza. Based upon the decisionmakers' comprehensive knowledge of DC operations, accrued over their substantial DC tenure, it was determined there were no positions open for bid which claimant could have performed within her physical restrictions, as Maloney advised claimant on or about April 23, 2020.

Respondent in its motion first addressed claimant's causes of action for failure to engage in interactive process and failure to accommodate. As to the interactive process, respondent cited several decisions, including *Raine v. City of Burbank* and *Duarte v. Von's,* as precedent that [notwithstanding the plaintiff's contention of entitlement to permanent light duty work[22]], an employer meets its statutory duties as to a disabled worker

[22] The assertion that claimant contends she is entitled to permanent light duty work is not expressed in the sparse Amended Demand. In claimant's Opposition, however, in discussing the employer's affirmative duty to make known to the employee [who is not physically able to perform the essential functions of the regular position] "other suitable opportunities with the company" and in such context remarks upon the respondent moving party's admission that for a time period prior to April 2020 "plaintiff

where the employer's "interactive process and efforts over time [are] comprised of (1) temporary light duty work, (2) leave(s) of absence, and (3) termination upon receipt of permanent restrictions which disable the worker from performing essential duties, with or without reasonable accommodations, of any available positions. This series of reasonable accommodation steps, preceded sequentially by communications between claimant and respondent's RA Partner Thomas Maloney, claimant's supervisor Tony Mallard, DC Senior Logistics Manager Sean Moriarty and Operations Manager Vince Mendoza, as substantiated by their respective declarations and not controverted by any evidence in support of claimant's Opposition, effectively negates claimant's opportunity to prove the unlawful refusal to engage in interactive dialogue generally or conclusorily alleged by claimant.

Equally, such series of steps of sequentially according claimant temporary light duty followed by respondent's granting of claimant's repeated leave requests (some not substantiated by medical certification) negates opportunity for claimant to prevail upon her cause of action for failure to accommodate. While claimant recited general requirements for

---

was performing light duty assignments and multiple LOAs….as demonstrative that claimant obviously she was capable of working and was in fact working by defendant's on [sic] admission. Performing LOAs and light duty assignments…for 1 year."

declarations to establish foundation for knowledge and that statements in declarations must comprise admissible evidence (as opposed to hearsay not within recognized objections), claimant specifically addressed only two aspects of Mendoza's supporting declaration. Firstly, noting that PMK Zamarelli, Human Resources Partner for eight years, when questioned at her March 7, 2022 deposition as PMK what were claimant's duties, testified that claimant was a stocker required to cut boxes of products and put them out on our shelves for our order selectors, claimant objects that Zamarelli's March 9, 2022 declaration that from October 10, 2010 to April 27, 2020, attesting that claimant worked as a "Stock Handler" with duties described in Exhibit A to Zamarelli's declaration, is contradictory to her declaration, but these are the same duties noted in the Position Description for Stocker identified by Vince Mendoza as Exhibit B to his declaration. Accordingly, the arbitrator accorded no import to claimant's contention in objecting to and dismissing the declarations in support of respondent's motion as "attorney declarations attempting to argue the case…not factual admissible declarations," or claimant's quip, "They can't even get her job right." In Mendoza's declaration, although the attached position description bears the title "Stocker," Mendoza uses the terminology "Stock Handler."

While claimant, with a "broad brush," "objected to all declarations submitted by defendants," the only other issue specifically addressed in claimant's Opposition is Operations Manager Mendoza's statement in Paragraph 36 of his declaration that

> "Based on my many years of operations experience at the DC, I can unequivocally state than an individual who cannot lift, carry, push or pull more than 18 lbs. would not be physically capable of performing any open positions listed in Exhibit F."

Mendoza's declaration attests that he has worked at the DC for almost 36 years and has served as Operations Manager of Logistics at the relevant La Habra DC for nine years. Thus, Mendoza, based on personal experience, attests to the Position Description for Stock Handler, identifies the main position responsibilities as to cut open merchandise cases from drop zone pallets and receiving pallets, to load and re-load carts with merchandise to stock, and to prepare all merchandise for the Order Selectors. As described in paragraphs 13 and 14 of Mendoza's declaration, the essential functions of the Stock Handler position are predominantly physical, i.e., restacking merchandise onto work carts, pushing/pulling carts of cut merchandise down aisles, pushing merchandise down a conveyor rack and manually stacking cases onto appropriate shelves, pushing cases to the front of shelves for access, refilling locations,

putting damaged merchandise in designated areas, handling empty pallets which weigh up to 40 lbs., etc.. Accordingly, as attested by Mendoza, the physical requirements include lifting/carrying/pushing/pulling over 20 lbs. frequently and 75 lbs. occasionally, and also constant bending, reaching, stooping, climbing, standing, etc.

The arbitrator overruled claimant's "objection" that Mendoza's declaration is wholly inadmissible. The arbitrator found material, admissible evidence in the Mendoza declaration as follows: (i) as to the requirements of the Stock Handler position, including lifting/carrying/pushing/pulling of particular weights; (ii) Mendoza's review of the work restrictions provided by claimant's physician, initially as temporary restrictions not to lift, etc. over 30 lbs; (iii) Mendoza's consequent assignment of claimant to "light duty" work, and also (iv) that "At the DC there are a very limited number of tasks available, on a temporary basis, wherein an employee can limit his or her lifting to 20 lbs.; (v) further, Mendoza's review in July 2019 of claimant's updated restrictions (over 15 lbs.) and his determination there are no light duty assignments in the DC in which an employee can ensure he or she does not lift more than 15 lbs.; (vi) Mendoza's review of claimant's **permanent** restrictions (over 18 lbs.) in or about September/October 2019; (vii) Mendoza's decision together with

Logistics Supervisor Mallard and members of CVS's RA Department as to the DC's inability to accommodate claimant's permanent restrictions, and, (viii) Mendoza's assessment as to job openings/postings during the period September 2019 through April 2020 that none of these (postings compiled as Exhibit E to Mendoza's declaration) could be performed by an individual physically incapable of lifting, etc., over 18 lbs. While claimant challenged Mendoza's assessments recited above as to physical job requirements of available job positions on the bases that Mendoza is neither a medical doctor nor a vocational rehabilitation expert, the arbitrator has accepted as admissible and unrebutted evidence Mendoza's testimony as to the positions available at the DC and the physical requirements of such positions.

To the extent that respondent relied upon claimant's deposition testimony, either her August 6, 2021 deposition in this action or transcripts of claimant's deposition testimony in her workers compensation action, claimant merely generally commented that "Some of claimant's testimony might be admissible, but, not everything argued." As noted, however, claimant failed to identify any evidence from claimant's deposition

testimony upon which respondent relied but which claimant maintains comprises inadmissible evidence.[23]

While claimant accurately recited that an employer who is aware of an employee's disability has an affirmative duty to make known to the employee other suitable opportunities within the company, claimant failed to identify any such opportunities as to which claimant was physically capable to perform the essential duties. Claimant in Opposition did not rebut respondent's assertion by the Operations Manager as to what positions became open to bid, nor did she controvert his testimony that claimant did not bid for any of those positions which were posted. Indeed, the only assertion or argument made as to claimant's physical capabilities to work is claimant's accounting that "obviously [claimant] was capable of working and was in fact working by defendants' own admission. Performing LOAs and light duty assignments..according to defendant…for 1 year."[24] Case precedent is clear that an employer's affording an

---

[23] While claimant has cited to published decisions in which courts railed against counsel for moving parties, notably citing to the decision in *Christian v. Wu* (9th Cir. 2010) 626 F3d 483, in which the court wrote that "judges are not like pigs, hunting for truffles," claimant's Opposition requires such hunting by the arbitrator, as, for example, in his remark that certain of claimant's deposition responses may be inadmissible since claimant's attorney made objections at the deposition that these certain deposition questions were not clear, inasmuch as claimant fails to identify any such material instance.

[24] Claimant curiously appeared to argue that claimant's "LOA" status is evidence of her physical capability to perform. Such argument might pertain in a case in which there is debate about the employee's ability to perform essential functions of any available position within a time certain which considering all circumstances would constitute a reasonable time period, as opposed to an indefinite time period. In the instant case, however, claimant's own physician advised as to claimant's *permanent* physical restrictions disabling her from her regular position and all other positions at the DC. Moreover, case precedent is

employee temporary light duty will not constitute admission or evidence that a permanent light duty position is reasonable accommodation.

C. Claimant Failed to Make *Prima Facie* Case and Also Failed to Raise Triable Issue as to Pretext

In this case claimant adduced no competent evidence to rebut respondent's showing that it reasonably accommodated claimant's significant lifting, etc., restrictions with light duty, to the extent it was available, and then leaves of absence so long as claimant's restrictions were temporary and then, when permanent restrictions were issued, engaged in dialogue with claimant and assessed all available positions at the DC and determined no positions were available which claimant was capable to perform and for these reasons only terminated claimant's employment. Claimant's only proffering to refute the foregoing, i.e., that claimant was able to perform light duty tasks offered on temporary basis and that she went on leaves of absence, does not suffice to meet her burden to adduce evidence to establish either a *prima facie* case or to raise

---

clear that an indefinite leave is not a reasonable accommodation. In this case subpoenaed medical records indicate that on September 13, 2019 claimant's treating physician placed her on permanent work restrictions, no lifting, etc. over 18 lbs. Declaration of RA Partner Maloney avers that both on January 9, 2020 and again on February 12, 2020, in conversation with claimant, he confirmed these restrictions and claimant's agreement with them, that he confirmed with senior manager Moriarty that an employee unable to lift over 18 lbs. could not perform the essential functions of the stock handler position. After Maloney learned from Ops Manager Mendoza that there were no positions open for bid which claimant could perform with reasonable accommodation, on April 23, 2020 Maloney apprised claimant that her physical restrictions could not be reasonably accommodated.

triable issue that respondent's aforedescribed legitimate business reason to terminate was pretextual. Accordingly, claimant failed to establish *prima facie* case or triable issue that she was physically capable to perform the essential duties of her position or any available position at the DC, that respondent did not engage in good faith interactive process, or that reasonable accommodation to her work restrictions was possible.

D. Claimant Failed to Raise Triable Issue as to Alleged Claims for Missed Meal and Rest Breaks and Uncompensated Off-the-Clock Work

Additionally, while respondent, through declarations of Zamarelli and Mendoza which the arbitrator finds competent and unrefuted, has adduced competent evidence of its amply communicated policy against "off-the-clock" work and also operation of its "bell system" to monitor and enforce its meal and rest break policy, claimant offered no evidence whatsoever that the claimant worked off the clock or, derivatively, that respondent was aware of such circumstances.[25] Nor has claimant raised triable issue that despite claimant's notice of respondent's meal and rest break policy and its bell system of enforcement of same, claimant ever missed such breaks.

[25] See note 15, *supra*.

## VII. FEES

Pursuant to CCP 1021 ("the American rule"), each party is responsible for payment of her/its attorneys fees.

## VIII. CONCLUSION

A. Claimant has failed to establish any of her claims against respondents; therefore, claimant shall take nothing by her causes of action.

B. Claimant's prayer for attorneys fees is denied.

C. Claimant's request for punitive damages is denied.

D. Except as specifically found in claimant's favor herein, claimant's claims are denied.

E. Except as specifically determined herein in respondents' favor, respondents' defenses and affirmative defenses are denied.

F. The administrative filing and expenses of the AAA totaling $2,950.00 are to be borne as incurred.

G. The fees and expenses of the neutral, totaling $27,820.00, shall be borne as incurred.

H. Having failed to timely submit Memorandum of Costs, respondents' claim for costs is denied.

I. This Final Award is confidential pursuant to Rule 23 of the American Arbitration Association National Rules for Resolution of Employment Disputes as amended and effective November 1, 2009.

Dated: June 23, 2022

LINDA SUSAN KLIBANOW
Impartial Arbitrator

# *Hsiao v. Wal-Mart Assocs.*

United States District Court for the Central District of California, Southern Division

April 12, 2018, Decided; April 12, 2018, Filed

Case No.: SACV 17-00152-CJC(GJSx)

**Reporter**
2018 U.S. Dist. LEXIS 226352 *; 2018 WL 6136155

WALTER HSIAO, Plaintiff, v. WAL-MART ASSOCIATES, INC.; WAL-MART STORES, INC.; AND DOES 1 TO 15, Defendants.

**Subsequent History:** Motion denied by, Without prejudice *Hsiao v. Wal-Mart Assocs., 2018 U.S. Dist. LEXIS 226349 (C.D. Cal., Apr. 23, 2018)*

Motion granted by *Hsiao v. Wal-Mart Assocs., 2018 U.S. Dist. LEXIS 226353 (C.D. Cal., Apr. 23, 2018)*

## Core Terms

coach, terminate, disability, retaliate, accommodate, summary judgment, cause of action, wine, pretext, discriminatory, appointment, prima facie case, return to work, no evidence, discipline, non-discriminatory, doctor's, genuine, proffer, hire, partial summary judgment, wrongful termination, retaliatory, substantial evidence, punitive, sheet, proximity, credence, unworthy, emailed

**Counsel:** **[*1]** For Walter Hsiao, an individual, Plaintiff: Ben J Galante, LEAD ATTORNEY, Galante Law Inc Pasadena, CA USA; Jennifer Kramer, LEAD ATTORNEY, Jennifer Kramer Legal APC, Los Angeles, CA USA; Rahul Sethi, Sethi Law Firm, Los Angeles, CA USA.

For Wal-Mart Associates, Inc., Wal-Mart Stores, Inc., Defendants: Cheryl Johnson-Hartwell, Paloma P Peracchio, Susan E Coleman, Amber N Morton, Burke Williams and Sorensen LLP, Los Angeles, CA USA.

**Judges:** CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CORMAC J. CARNEY

## Opinion

**ORDER GRANTING IN SUBSTANTIAL PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Walter Hsiao brings this action against Defendants Wal-Mart Associates, Inc., Wal-Mart Stores, Inc., and Does 1 to 15 (together "Defendants" or "Walmart") for eleven causes of action related to the termination of Plaintiff's employment as an Assistant Manager at one of Defendants' Southern California stores. (Dkt. 1 Exs. A [Complaint], B [First Amended Complaint, hereinafter "FAC"].) Plaintiff filed this action in Orange County Superior Court on October 25, 2016, (Complaint), and Defendants removed the action to this Court on January **[*2]** 27, 2017, (Dkt. 1). Before the Court is Defendants' motion for partial summary judgment as to Plaintiff's fifth, eighth, ninth, tenth, and eleventh causes of action and claim for punitive damages, (Dkt. 38-1 [hereinafter "Def. Mot."]), and Plaintiff's motion for partial summary judgment as to Defendants' seventeenth affirmative defense, after-acquired evidence, (Dkt. 37

[hereinafter "Pl. Mot."]). For the following reasons, Defendants' motion is GRANTED IN SUBSTANTIAL PART and Plaintiff's motion is DENIED.

**II. BACKGROUND**

On September 9, 2013, Walmart hired Plaintiff and on November 2, 2013, he became an Assistant Store Manager at Store # 2218 in Foothill Ranch, California. (Dkt. 49-1 [Defendants' Reply to Plaintiff's Statement of Facts, hereinafter "SUF"] ¶ 1.) During his formal job orientation period, Plaintiff learned the rules and procedures related to his employment, as well as signed a form acknowledging his employment was at-will. (*Id.* ¶¶ 2-3.) In May 2015, Plaintiff transferred to Store #5600 in Santa Margarita, California. (*Id.* ¶ 12.) Shortly thereafter, Matt Benice became the Store Manager at Store #5600. (*Id.* ¶ 13.) Benice was responsible for overseeing the operations of that **[*3]** single store. (*Id.* ¶ 69.)

Plaintiff has been diagnosed with adjustment disorder, anxiety, and depression. (*Id.* ¶ 72.) At some point before September 27, 2015, Benice learned that Plaintiff had requested an accommodation to leave work by a certain time on specific days to attend doctor's appointments. (*Id.* ¶¶ 69, 75.) From May 2015 to November 2015, Plaintiff states that he missed doctor's appointments because he was called in to work on the day of his appointment or his work shift was changed, but there is no evidence of when he missed such appointments or why he missed appointments. (*Id.* ¶ 14; Dkt. 38-6 Ex. A [Plaintiff's Deposition I, hereinafter "Pl. Depo I"] at 112:17-113:10, 120:19-121:18.)[1]

During an operational meeting in or around September 2015, Benice reprimanded Plaintiff and other overnight staff for not completing all of the assigned tasks.[2] (Dkt. 38-6 Ex. B [Plaintiff's Deposition II, hereinafter "Pl. Depo. II"] at 331:1-332:21, 334:1-336:9.) Plaintiff attempted to give his input on the shift schedule, but Benice interrupted Plaintiff and told him "Get over yourself. Get over your narcissism. If you don't like it, bring it up to HR." (*Id.*; SUF ¶ 17.) Benice states he made **[*4]** this comment "out of frustration at Plaintiff's attitude during the meeting" and "not based on Plaintiff's disability." (Dkt. 38-4 ¶ 3.)[3] Plaintiff, however, states that Benice made these statements based on Plaintiff's disability because Benice is "old school" and is "the type of person that . . . delegates tasks to you, if those tasks don't get done, everything else is an excuse." (Pl. Depo II at 335:21-226:9.) Plaintiff also "assumes" Benice made this comment because Plaintiff was "asking for the job accommodation, to be permitted to see [his] therapist once a week." (*Id.* at 336:22-337:8.) Later that fall, Plaintiff states that Benice told him he was "useless to Walmart" if he "didn't go overnight." (*Id.* at 336:14-21.) Plaintiff also states he felt criticized for his disability based on a "feeling" he had when he entered the store, and on at least one occasion Benice was "dismissive" of Plaintiff and sent him away from a conversation amongst members of management. (*Id.* at 337:20-338:13.)

On October 28, 2015, Plaintiff submitted a Cash Fund Transfer ("CFT") requesting a $50 reimbursement from Walmart for a doctor's visit and a sleep medication prescription. (SUF ¶ 23.) Plaintiff had **[*5]** not received approval for the expense before he submitted the form, and Walmart treated his CFT request as one for a personal expense. (*Id.*; Dkt. 49-2 Ex. KK [Plaintiff's Coaching Improvement Spreadsheet, hereinafter "CFI Sheet"].) Plaintiff believed

---

[1] The correspondence from Plaintiff's doctors states that until June 2015, Plaintiff was consistently attending appointments, but thereafter his doctors had to "start flexibly scheduling to accommodate his fluctuating work schedule" and that there were weeks where Plaintiff and his doctors "were unable to meet due to last minute changes in his work schedule." (Dkt. 38-7 Ex. O.) Defendants object to these statements as hearsay. (Dkt. 49-3 ¶ I.) The Court, however, is not considering the doctors' statements as proof that Walmart did, in fact, change Plaintiff's work schedule. The Court is only considering the doctors' statements as evidence of the doctors' state of mind as to why they rescheduled certain of Plaintiff's appointments and why they believed Plaintiff missed certain of his appointments.

[2] Plaintiff argues that at this meeting, Benice called him a "princess." (Dkt. 44 [Plaintiff's Opposition, hereinafter "Opp."] at 19.) But at his deposition, Plaintiff testified that Benice called another associate a princess and "did not directly call me a princess." (Dkt. 38-6 Ex. B [Plaintiff's Deposition II, hereinafter "Pl. Depo. II"] at 333:6-14.)

[3] Plaintiff's objects to Benice's statement that his comment was not based on Plaintiff's disability as a statement containing a legal conclusion and lacking foundation. (Dkt. 44-2 at 7-8.) The Court overrules the objection because it can consider the statement to show Benice's intent and reason for making the statement.

this was a business-related expense, but admits he did not get approval to submit this CFT request before submitting it. (Dkt. 44-4 Ex. 1 at 92:11-93:10.) Plaintiff's CFT was entered into Walmart's system as approved by a Store Manager, which it was not. (SUF ¶ 25; CFI Sheet.) When Plaintiff made his CFT request, he was aware of Walmart's CFT policy that required a salaried manager to approve his request, if the manager is available. (SUF ¶¶ 21-22.) Plaintiff had a Customer Service Supervisor ("CSS") sign his CFT request, even though there was a salaried manager present in the store. (*Id.* ¶ 24.) Plaintiff states that the only other salaried manager was unloading trucks in the back, a one to two hour job, when he entered his CFT request. (Pl. Depo. I at 89:3-16.)

Walmart's "Coaching for Improvement" policy ("CFI policy") provides that when any employee violates a company policy or is performing poorly, that Associate will be "coached." (SUF **[*6]** ¶ 8.) The CFI policy has three progressive levels-First Written, Second Written, and Third Written-that are given depending on the conduct, and any level can be skipped if the violation is particularly egregious. (*Id.* ¶¶ 8-9.) When an Associate is given a "Coaching" it remains active for a one year period. (*Id.* ¶ 8.) The CFI policy provides that the next step after a Third Level Coaching is termination. (*Id.*) Plaintiff received training on the CFI policy upon his hire. (*Id.* ¶ 11.)

After Benice learned of Plaintiff's unapproved CFT request, Plaintiff approached him to inform him about the request and his belief that it was a business expense. (Dkt. 38-6 Ex. H.)[4] Benice contacted his superiors, Market Manager Dorisanne Wilbert and Market Human Resource Manager Randy Wines, about the issue. (*Id.*; Dkt. 38-6 Ex. E 68:20-71:12.) Wilbert was responsible for overseeing operations of 13 to 15 stores in Orange County, California. (SUF ¶ 71.) Wines was responsible for providing advice and guidance on human resources matters for Neighborhood Markets in the Los Angeles and San Diego counties. (*Id.* ¶ 70.) Wilbert and Wines reviewed the incident to determine what level of accountability, if any, should **[*7]** result from Plaintiff's actions. (*Id.* ¶ 27; Dkt. 38-6 Exs. H, E 68:20-71:12.) Wines made the determination to give Plaintiff a Second Level Coaching, and Benice agreed with that decision. (SUF ¶ 28; Dkt. 38-6 Ex. C at 83:10-21.)[5] On November 10, 2015, Plaintiff received a Second Level Coaching based on his CFT request. (SUF ¶ 32; CFI Sheet.) Plaintiff admitted that he requested a CFT reimbursement for sleeping medication without the required approval, but disagreed with the level of discipline imposed. (SUF ¶ 33; Pl. Depo. I at 90:15-92:1, 94:1-95:16.)

On November 13, 2015, three days after receiving his Second Level Coaching, Plaintiff requested a leave of absence from November 15 to November 30, 2015, due to "acute stress" stemming from the lack of consistent doctor's appointments and a hostile work environment. (Pl. Depo. O at 122:14-123:20; Dkt. 38-7 Ex. K.) Walmart approved Plaintiff's request for a leave of absence. (SUF ¶ 35.) Plaintiff then requested an extension of his leave to February 6, 2016, which Walmart also approved. (*Id.* ¶ 36.) On February 8, 2016, Plaintiff returned to work and met with Wines regarding the accommodations he had requested while on leave. **[*8]** (*Id.* ¶ 37.) Plaintiff had requested to transfer to a different store. (Pl. Depo. I at 154:17-156:2.) Plaintiff also acknowledged that his work schedule did not permit him to make his weekly doctor's appointment at times because Store #5600 did not "have enough salary members in management." (*Id.*)

On February 27, 2016, Benice emailed Plaintiff to ask what day he needed to be off work for his doctor's appointments. (Dkt. 38-7 Ex. Q.) Benice told Plaintiff that taking Friday or Saturday for appointments each week was "not doable on a long term basis." (*Id.*) On February 28, 2016, Plaintiff responded to Benice that he had a weekly doctor's appointment "every Friday morning," but stated that "[i]f you need me to work on a particular Friday, just schedule me and I'll schedule around it but I like to have 3 weeks advance notice so I can cancel my appointments with my doctor." (*Id.*) Benice created the work schedule one to three weeks in advance, using a

[4] Plaintiff objects to Amber N. Morton's statements regarding the exhibits attached to her declaration as lacking foundation, not within her personal knowledge, and that the exhibits were not properly authenticated. (*See generally* Dkt. 44-2; Dkt. 39-1 [Declaration of Amber N. Morton, hereinafter "Morton Decl."].) Ms. Morton is Defendants' counsel of record, (Morton Decl. ¶ 1), and exhibits F through DD attached to her declaration were each identified during and attached as exhibits to a witness's deposition. The Court overrules Plaintiff's objection, as each of the documents was authenticated by a witness with knowledge during a deposition in this matter.

[5] Wilbert stated, at the time, that she viewed the incident as a "serious integrity issue," (SUF ¶ 29), and Wines told her that a Second Level Coaching had been issued in similar circumstances, (Dkt. 38-6 Ex. D at 69:1-20).

template from Walmart's internal system and taking into consideration factors such as the store's headcount, coverage, available shifts, and requests. (SUF ¶ 46.)[6]

In June or July 2016, when an Asset Protection Manager asked Plaintiff **[*9]** about a scrape on Plaintiff's hand, he responded, "do you want me to rub my AIDS blood on you." (Pl. Depo. I at 97:14-98:17.) In July 2016, Plaintiff asked a Customer Service Supervisor if she wanted to smell his armpit. (*Id.*) As of July 8, 2016, Benice had informed his superiors of this conduct and stated that Plaintiff would need to be held accountable. (Dkt. 38-6 Ex. C at 222:21-224:23; Dkt. 38-7 Ex. V.)[7] Benice then investigated the incidents by interviewing the individuals involved, including Plaintiff, and other potential witnesses. (SUF ¶ 50.) Wines then reviewed the witness statements. (*Id.*) Then, on July 30 or 31, 2016, Plaintiff stood on a milk crate to stock shelves, which is not permitted under Walmart policy. (Pl. Depo. I at 97:22-98:17; CFI Sheet.) When an Assistant Store Manager approached Plaintiff and asked him to use a ladder, he refused. (Pl. Depo. I at 97:22-98:17; CFI Sheet.)

Wines recommended combining these three incidents into one coaching, although each was a separate ground for discipline. (SUF ¶ 52.) Wines determined that Plaintiff would receive a Third Level Coaching for his conduct. (*Id.* ¶ 53.) On August 12, 2016, Plaintiff received a Third Written Coaching **[*10]** for the three incidents that had occurred in June and July 2016. (*Id.* ¶ 54.) When Benice met with Plaintiff to issue the Coaching, Benice discussed with Plaintiff Walmart's CFI policy[8] and after receiving the coaching, Plaintiff requested a personal day. (*Id.* ¶ 55; Pl. Depo. I at 103:14-18.) Plaintiff refused to sign the coaching, and handed Benice his keys on his way out. (Dkt. 38-7 Ex. W.)

On August 11, 2016, Plaintiff had requested a leave of absence from August 15 to September 15, 2016, under the Family Medical Leave Act ("FMLA") and/or the California Family Rights Act ("CFRA"), as well as short term disability. (SUF ¶ 58.) Sedgwick, Walmart's third party disability and leave claims manager, approved Plaintiff's FMLA/CFRA leave of absence. (*Id.* ¶ 59.) Plaintiff requested to extend his leave to October 15, 2016. (*Id.* ¶ 60.) Sedgwick denied Plaintiff's request on October 12, 2016, because Plaintiff failed to provide medical documentation supporting the extension, and the leave could not be designated as FMLA, CFRA, or Walmart Medical Leave. (*Id.* ¶¶ 60-61.) Plaintiff did not return to work. (*Id.* ¶ 61.) On November 6, 2016, Walmart contacted Plaintiff to inform him that his leave of **[*11]** absence had expired, and that Plaintiff had to either return to work on November 16, 2016, or get an extension of his leave of absence. (*Id.*) Walmart informed Plaintiff that he would be terminated if he did not do either. (*Id.*) Plaintiff mailed a letter to Wines on November 22, 2016, stating that he could not return to Walmart until Walmart agreed to accommodate his disability. (Dkt. 44-4 Ex. A at 185:10-23; Dkt. 44-5 Ex. 9.) Plaintiff did not return to work or submit an extension. (SUF ¶ 62.) Regional Manager Bethany Turon decided to terminate Plaintiff's employment for failing to return from leave.[9] (*Id.*) Walmart then processed Plaintiff's termination paperwork and sent it to him. (*Id.* ¶ 64.)

Plaintiff brings eleven causes of action against Defendants arising out of his employment and termination as an Assistant Store Manager: (1) Failure to pay wages owed; (2) Failure to authorize and permit rest breaks; (3) Failure

---

[6] Plaintiff identifies five instances he claims that his work schedule changed, resulting in him missing appointments after his return from leave in February 2016: (1) March 22, 2016, (2) May 11, 2016, (3) June 1, 2016, (4) June 16, 2016, and (5) July 29, 2016. (*Id.* ¶ 40.) March 22, 2016, was a Tuesday. (*Id.* ¶ 41.) May 11, 2016, was a Wednesday on which Plaintiff was scheduled to work from 12:30 p.m. to 10:30 p.m. (*Id.* ¶ 42.) On June 1, 2016, Plaintiff requested a later doctor's appointment on June 3, 2016, because he was working late the night of June 2. (*Id.* ¶ 43.) On June 16, 2016, Plaintiff emailed his therapist to request a later appointment on June 17, 2016, when Plaintiff was not scheduled to work. (*Id.* ¶ 44.) If Plaintiff had an appointment on July 29, 2016, it would have been between 8:00 a.m. and 11:00 a.m., but Plaintiff was scheduled to work from 10:00 p.m. to 7:00 a.m. that day. (*Id.* ¶ 45.)

[7] Plaintiff argues that Benice did not believe these issues needed to be addressed until May 1, 2016, (Dkt. 44-5 Ex. 8), but Benice reported these incidents to his superiors and began investigating prior to that date.

[8] At this meeting, Benice told Plaintiff that he could consider stepping down out of a management position, as another coaching would result in his termination. (SUF ¶ 55.)

[9] Benice did not have the authority to terminate employees without approval from the market level. (SUF ¶ 63.)

to provide accurate and itemized wage statements; (4) unlawful and/or unfair business practices; (5) Disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (6) Failure to engage in a timely good faith interactive process; (7) **[*12]** Failure to accommodate; (8) Retaliation in violation of the FEHA; (9) Retaliation under the California Family Rights Act ("CFRA"); (10) Failure to prevent discrimination and retaliation under the FEHA; and (11) Wrongful termination in violation of public policy. (*See generally* FAC.) Plaintiff's requests for relief include punitive damages. (*See id*. Prayer for Relief ¶ 5.) Defendants assert thirty-five affirmative defenses in their answer to the FAC, one of which is for after-acquired evidence. (Dkt. 1 Ex. E [Answer to the FAC] ¶ 18.)

**III. LEGAL STANDARD**

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." *Fed. R. Civ. P. 56(a)*. Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also* *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp., 477 U.S. at 325*. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue **[*13]** in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id. at 249*.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)*. In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-60, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*, or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp., 477 U.S. at 325*. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under *Rule 56*, "specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 256*. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine **[*14]** dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. *Fed. R. Civ. P. 56(c)(1)(A)-(B)*. The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." *Fed. R. Civ. P. 56(c)(2)*. But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson, 477 U.S. at 252*.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)*. The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992)*. But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)*. The evidence the parties present must be admissible. *Fed. R. Civ. P. 56(c)*. "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the **[*15]**

**IV. DISCUSSION**

**A. Unlawful Discrimination and Retaliation**

Plaintiff's fifth cause of action is for unlawful discrimination on the basis of disability in violation of the FEHA, *Cal. Gov. Code §§ 12900 et seq.* (FAC ¶¶ 23-32.) The FEHA makes it an unlawful employment practice to discriminate against any person because of a physical or mental disability. *Cal. Gov. Code § 12940(a)*. There are three elements to a prima facie case of discrimination on grounds of physical disability under the FEHA. The plaintiff must show "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Faust v. California Portland Cement Co., 150 Cal. App. 4th 864, 886, 58 Cal. Rptr. 3d 729 (2007)*. In *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, the Supreme Court set forth the three-step burden-shifting test for analyzing discrimination claims. California has adopted the *McDonnell Douglas* test for trying claims of discrimination under the FEHA. *Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)*.

Plaintiff's eighth cause of action is for retaliation in violation of the FEHA, *Cal. Gov. Code § 12940(h)*, which makes it unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden by [*§ 12940(h)*]." (FAC ¶¶ 52-60.) "To establish a prima facie case of retaliation under [*§ 12940*], a plaintiff must show (1) that he or **[*16]** she engaged in a protected activity,[10] (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005)*. If any employee presents a prima facie case of retaliation, the court then employs the three-stage *McDonnell Douglas* burden shifting analysis to the employee's claim. *Id.*

Plaintiff's ninth cause of action is for retaliation in violation of CFRA. (FAC ¶¶ 61-68.) Plaintiff took two CFRA leaves of absence, one from November 15, 2015, to February 6, 2016, and the second from August 15, 2016, to September 15, 2016.[11] The elements of a cause of action for retaliation in violation of CFRA are: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised [his] right to take [leave] for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of [his] exercise of [his] right to CFRA [leave]." *Moore v. Regents of the Univ. of California, 248 Cal. App. 4th 216, 248, 206 Cal. Rptr. 3d 841 (2016)* (citing *Faust, 150 Cal. App. 4th at 885*). "[T]he *McDonnell Douglas* burden shifting analysis applies to retaliation claims under CFRA." *Id. at 248-49*.

Under the *McDonnell Douglas* burden-shifting **[*17]** analysis, the plaintiff first has the burden of establishing a prima facie case of discrimination or retaliation. *McDonnell Douglas, 411 U.S. at 802*. The defendant then has the burden to articulate some legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action taken against the plaintiff. *Id.* The employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate non-discriminatory reasons. *Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*. Once the defendant carries that burden, the presumption of discrimination or retaliation disappears, and the plaintiff must demonstrate that the legitimate reason offered by the defendant was merely pretext for discrimination or retaliation. *McDonnell Douglas, 411 U.S. at 805*. "The plaintiff must do more than raise the inference that the employer's asserted reason is false." *Hicks v. KNTV Television, Inc., 160 Cal. App. 4th 994, 1003, 73 Cal. Rptr. 3d 240 (2008)*. "[A] reason cannot be proved to be 'a pretext *for*

---

[10] Plaintiff identifies the following instances where he complained to management about Walmart's failure to accommodate his disabilities: November 13, 2015, November 18, 2015, November 19, 2015, November 23, 2015, November 30, 2015, December 5, 2015, February 1, 2016, February 4, 2016, February 8, 2016, July 29, 2016, August 31, 2016, and November 22, 2016. (FAC ¶ 54; SUF ¶ 67.) Defendants do not contest that Plaintiff engaged in a protected activity. (Mot. at 15-16.) Plaintiff also claims that he had been requesting accommodations since his transfer in May 2015. (SUF ¶ 74.).

[11] Before Plaintiff took any CFRA leave, Plaintiff received his Second Level Coaching, Benice made his "narcissistic" comment, and Benice allegedly changed Plaintiff's work schedule to conflict with his doctor's appointments. None of these actions could have been in retaliation for taking any CFRA leave, as they pre-dated the leave.

*discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). "If plaintiff produces *no* evidence from which a reasonable factfinder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment." Hicks, 160 Cal. App. 4th at 1003 (citing Caldwell v. Paramount Unified School Dist., 41 Cal. App. 4th 189, 203, 48 Cal. Rptr. 2d 448 (1995).

The Court will consider each of Defendants' allegedly discriminatory **[*18]** or retaliatory actions in turn, assuming that Plaintiff has established a prima facie case of discrimination and retaliation under the FEHA.

*i. Second Level Coaching*

Defendants have "articulate[d] some legitimate, non-discriminatory reason" for Plaintiff's Second Level Coaching. McDonnell Douglas, 411 U.S. at 802. "[C]ourts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002). Plaintiff received his Second Level Coaching on November 10, 2015. Walmart gave Plaintiff his Second Level Coaching because he violated Walmart's CFT policy when he reimbursed himself for a personal expense without prior approval. Plaintiff admits that he reimbursed himself for the sleep medication without first getting approval for the CFT transaction as required by Walmart's CFT policy.

The burden now shifts to Plaintiff to demonstrate that Defendants' justification for his Second Level Coaching was pretextual. Plaintiff has failed to meet his burden.

An "employee can satisfy its burden to prove pretext by "produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual." Dep't of Fair Employment & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (citation omitted). A "plaintiff may establish pretext either **[*19]** directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998), *as amended* (Aug. 11, 1998). "If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence 'must be specific' and 'substantial.'" *Id.* (quoting Godwin, 150 F.3d at 1221). Plaintiff here has not produced specific and substantial evidence to show that Walmart's legitimate, non-discriminatory and non-retaliatory reason for disciplining him was untrue or pretextual.

Plaintiff argues that he did not violate Walmart's CFT policy because he had the designated hourly supervisor sign the CFT log, and the salaried manager was not available. (Dkt. 44 [Plaintiff's Opposition, hereinafter "Opp."] at 13.) But Plaintiff admits that his CFT request was not pre-approved, as required by the CFT policy. Plaintiff also argues that he was given a higher level coaching because Benice used unsubstantiated allegations that Plaintiff left the doors unlocked to convince Wines and Wilbert to give a Second Level Coaching. (Opp. at 9.) However, these allegations were not included in the basis for Plaintiff's coaching. (CFI Sheet.) Plaintiff's arguments **[*20]** really go to the correctness of Defendants' decision to give him a Second Level Coaching, and do not provide evidence of pretext. "An employee in this situation can not simply show the employer's decision was wrong, mistaken, or unwise." Lucent Techs., Inc., 642 F.3d at 746 (quoting Morgan v. Regents of the Univ. of Cal., 88 Cal. App. 4th 52, 105 Cal. Rptr. 2d 652, 670 (2000) (internal quotation marks omitted)). Plaintiff must show that Defendants' decision was unworthy of credence, or was more likely than not discriminatory or retaliatory. He has not.

Plaintiff also argues that Walmart disciplined him because of his many disability accommodations requests, not for his unapproved CFT request. (Opp. at 7-13.) Nor is Plaintiff's speculation that Walmart disciplined him because of these requests "substantial evidence" that demonstrates pretext. *See* Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1735, 35 Cal. Rptr. 2d 181 (1994) ("[S]peculation cannot be regarded as substantial responsive evidence" to demonstrate pretext.). Plaintiff has failed to present evidence that his disability accommodations requests had anything to do with Walmart's decision to discipline him for violating Walmart's CFT policy. Without more evidence, Plaintiff's unsupported claim amounts only to "mere allegation and speculation," and therefore

"[does] not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996)*.

Plaintiff's evidence **[*21]** that Benice called Plaintiff "narcissistic" and "useless" also is not sufficient evidence of discriminatory or retaliatory animus.[12] "[O]n summary judgment, 'a 'stray' discriminatory remark that a court determines is unconnected to the adverse employment action is insufficient evidence of a discriminatory motive, as a matter of law, and may be wholly disregarded by the court.'" *Serri v. Santa Clara Univ., 226 Cal. App. 4th 830, 867-68, 172 Cal. Rptr. 3d 732 (2014)* (quoting *Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 320, 115 Cal. Rptr. 3d 453 (2010))*. Plaintiff "assume[s]" these comments were related to his disability, (Pl. Depo. II at 336:22-337:8), but has proffered no logical reason why these statements were related to his disability. As to Benice's "useless" comment, Plaintiff characterized Benice's statement as referring to Plaintiff's inability or choice not to work overnights.[13] And at his deposition, Plaintiff testified that Benice called him "narcissistic" because Benice is "old school" and is "the type of person that . . . delegates tasks to you, if those tasks don't get done, everything else is an excuse." (Pl. Depo II at 335:21-226:9.) Neither comment, on its face, relates to Plaintiff's disability or accommodations requests. *See* *Serri, 226 Cal. App. 4th at 867-68* (finding stray comments insufficient to establish pretext where the defendant's statements, on their face, **[*22]** had no relation to the plaintiff's ethnicity or national origin, and the plaintiff did not explain how the statements related to either).

Simply stated, Plaintiff has not produced specific and substantial evidence of Defendants' discriminatory or retaliatory motive, or has demonstrated why Walmart's proffered reason for Plaintiff's Second Level Coaching is unworthy of credence.

*ii. Third Level Coaching*

Defendants have proffered a legitimate, non-discriminatory and non-retaliatory reason for giving Plaintiff his Third Level Coaching on August 11, 2016. Walmart gave Plaintiff his Third Level Coaching because Plaintiff engaged in three separate incidents of inappropriate conduct-two comments Plaintiff made to coworkers, and his choice to stock shelves unsafely. Plaintiff admits he engaged in this inappropriate conduct.

Plaintiff nevertheless argues that his Third Level Coaching was issued in retaliation for his accommodations requests following his transfer to Store #5600. (Opp. at 7-14.) Specifically, Plaintiff argues that the gap in time between Plaintiff's statements in June and July 2016 and when he received his Third Level Coaching in August 2016 is evidence of pretext. However, Benice knew **[*23]** of and began investigating Plaintiff's alleged violations of Walmart's policy as of July 8, 2016. That Plaintiff did not receive his Third Level Coaching until after Benice's investigation and deliberation does not render Defendants' stated reason for Plaintiff's discipline unworthy of credence, or demonstrate any discriminatory or retaliatory animus.

Plaintiff also argues that after he returned from his first CFRA leave, "Benice began a campaign to have Plaintiff gone," which included giving Plaintiff his Third Level Coaching. (Opp. at 14-17.) Plaintiff cites the following communications to demonstrate that "campaign." On February 12, 2016, Benice emailed Wines about Plaintiff's unapproved CFT request and stated "Can he go somewhere else please." (SUF ¶ 118; Dkt. 44-5 Ex. 23.)[14] Wines

---

[12] Plaintiff also refers to an email where Benice "expressed great stress about store operations" on October 27, 2015. (SUF 84.) Plaintiff argues that because this email occurred while Plaintiff was asking Benice to accommodate Plaintiff's scheduling needs, this provides evidence of discriminatory animus. (Opp. at 8-9.) Again, this argument is unpersuasive. Not only does Benice's email not mention Plaintiff, but the only person it specifically refers to is Benice, as he said, "This store is failing because of me." (Dkt. (Dkt. 44-5 Ex. 11.) Plaintiff's speculation that Benice's stress was due to his accommodations requests is unsupported by facts or evidence.

[13] Plaintiff requested not to work overnights as an accommodation only *after* these comments were made during his CFRA leave. (Dkt. 44-5 Ex. 13.)

reported to Joseph Rubino that Plaintiff's store was "having a struggle" with accommodating Plaintiff's request to take both Fridays and Saturdays off. (SUF 119; Dkt. 44-5 Ex. 18.) On February 28, 2016, Benice emailed Wines concerning Benice's inability to accommodate Plaintiff's requests, and stated that no other nearby store wanted to hire Plaintiff. (SUF ¶ 122.) On March 28, 2016, Benice and Wines exchanged emails about the difficulty **[*24]** of accommodating Plaintiff's request to take Fridays off. (*Id.* ¶ 125.) On May 10, 2016, Benice told Wines he was no "longer able to write schedules around" Plaintiff and that he needed a doctor's note to support Plaintiff's accommodation. (*Id.* ¶ 129.) On July 8, 2016, Benice informed his superiors that Plaintiff would need to be "accountable for harassment" based on Plaintiff's comments about his armpits and "AIDS blood." (*Id.* 131; Dkt. 38-7 Ex. V.) On July 23, 2016, Benice emailed Wilbert to ask if she and Wines could "help find [Plaintiff] a home as a [overnight] support?" (SUF 133; Dkt. 44-5 Ex. 28.)

Contrary to Plaintiff's assertions, none of these communications prove Benice, Wines, or Wilbert engaged in a campaign of discrimination or retaliation. The communications show the opposite. They were trying to accommodate Plaintiff's requests, but struggling to do so. Significantly, none of the communications display any animus towards Plaintiff, nor reference his disability. Indeed, they indicate an ongoing attempt to accommodate Plaintiff, rather than to discipline him for his requests. And, Wines, and not Benice, made the determination to give Plaintiff a Third Level Coaching, and Plaintiff's **[*25]** evidence does not establish that Wines wanted Plaintiff "gone." All that is left is the temporal proximity of these communications to Plaintiff's Third Written Coaching, but temporal proximity is simply not enough to prove pretext. *See Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 353, 77 Cal. Rptr. 3d 654 (2008)* ("[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, non-discriminatory reason for the termination.") (collecting cases); *Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995)* (affirming the district court's grant of summary judgment on the plaintiffs' disability discrimination claim where the plaintiffs presented no evidence beyond that produced for the prima facie case to show pretext).

Plaintiff also argues that this coaching was given in retaliation for Plaintiff's two complaints to management on February 8, 2016, and July 29, 2016. But Benice knew about Plaintiff's inappropriate comments, the basis of the coaching, and was seeking to hold him accountable as of July 8, 2016, before Plaintiff made his July 29, 2016 complaint. Plaintiff also provides no evidence that his February 8, 2016, complaint, made sixth months before Plaintiff received his coaching, was related in any way to his receipt of discipline.[15]

In summary, **[*26]** Plaintiff has not produced substantial evidence of Defendants' discriminatory or retaliatory motive, nor has demonstrated why Walmart's proffered reason for Plaintiff's Third Level Coaching is unworthy of credence.

*iii. Termination*

Defendants have proffered a legitimate, non-discriminatory and non-retaliatory reason for terminating Plaintiff's employment. Plaintiff was on a personal leave of absence and refused to return to work after that leave expired. (Mot. at 12.) Plaintiff was aware that his request for a leave extension was denied as of October 12, 2016. Thus, Plaintiff knew that his continued leave of absence after September 15, 2016, was not protected FMLA/CFRA leave. When Walmart requested that Plaintiff return to work on November 6, 2016, Plaintiff refused. Regional Manager

---

[14] Defendants object to Plaintiff's evidence of an email from Benice to Wilbert concerning Plaintiff's CFT requests and other comments about Plaintiff as hearsay and lacking foundation. (Dkt. 49-3.) The Court overrules Defendants' objection, as Benice made these statements within the scope of his employment for Walmart.

[15] Plaintiff also argues he received this coaching in retaliation for taking his first CFRA leave, which ended about six months before he received his Third Level Coaching. (Opp. at 16-17.) But Plaintiff has provided no evidence to dispute that he was disciplined because of his work policy violations, or to show he was disciplined because he exercised his right to CFRA leave.

Bethany Turon decided to terminate Plaintiff's employment for his failure to return from leave. Plaintiff admits that he neither returned to work nor received an approved leave extension.[16]

Plaintiff provides no evidence that Turon had a discriminatory motive when she made the decision to terminate Plaintiff's employment. Plaintiff admits he did not return to work after his leave. Plaintiff speculates that **[*27]** he was terminated because he requested accommodations in a letter addressed to Wines on November 22, 2016. (Opp. at 10, 15.) Plaintiff's letter stated that he could not return to work until Walmart agreed to accommodate his disability. (SUF ¶ 137; Dkt. 44-5 Ex. 9.) The temporal proximity of Plaintiff's November 2016 request to Plaintiff's termination, alone, is insufficient to establish pretext.[17] *See Arteaga, 163 Cal. App. 4th at 353*. And Plaintiff provides no evidence that his letter was received or reviewed by anyone at Walmart, let alone received by Turon, who made the decision to terminate Plaintiff's employment. Against the backdrop of Plaintiff's evidence that suggests that his supervisors were attempting to accommodate his scheduling requests, but found it difficult, the fact Plaintiff made another accommodations request right before he was terminated, does not cast doubt on Defendants' proffered reason for terminating Plaintiff's employment.

Plaintiff also argues that his termination was in retaliation for his last complaint to management on August 31, 2016, and for taking his second CFRA leave. However, beyond the temporal proximity of his complaint and his termination, Plaintiff provides no evidence that Defendants' **[*28]** proffered reasons for terminating his employment were pretextual. Plaintiff also provides no evidence to show he was terminated because he took CFRA leave. Plaintiff's request for an extension of leave was denied and he neither returned to work nor submitted the required certification to extend his leave.

Even if the Court considers Plaintiff's evidence in the aggregate, the "weak suspicion" of discriminatory or retaliatory animus raised may have sustained Plaintiff's burden of proving a prima facie case, "but it does not amount to substantial evidence of discrimination necessary to defeat summary judgment." *Serri, 226 Cal. App. 4th at 868*. Walmart is entitled to summary judgment on Plaintiff's discrimination and retaliation claims as the "the record conclusively reveal[s] some other, non-discriminatory reason for the employer's decision, [and] the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*. Because Plaintiff has failed to provide evidence beyond the prima facie case presented, Plaintiff has not produce "specific" and "substantial" evidence of pretense required to create **[*29]** a triable issue with respect to whether Defendants intended to discriminate or retaliate against him. *See* *Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996)* (affirming the district court's grant of summary judgment on the plaintiff's sex discrimination claim where she presented no evidence beyond that produced for the prima facie case to show pretext); *Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994)*, *as amended on denial of reh'g* (July 14, 1994) ("a plaintiff cannot defeat summary judgment simply by making out a prima facie case") (quotation omitted).

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's fifth, eighth, and ninth causes of action.

### B. Failure to prevent discrimination and retaliation under the FEHA

---

[16] That Plaintiff claims he failed to return from his second CFRA leave "because Walmart had a pattern and practice of failing to engage in the interactive process aimed at reasonably accommodating his disability," (Opp. at 10), does not render Walmart's reason for terminating Plaintiff's employment untrue or unworthy of credence. Plaintiff's statements go to his reason for not returning, not Walmart's reason for terminating his employment.

[17] Plaintiff states that Wines should not be believed because he "has a history of misrepresentations" in failing to disclose to Benice Plaintiff's requests for accommodation and the medical documentation he had submitted. (Opp. at 11.) Plaintiff also states there is a dispute as to whether Wines received his November 2016 request. (*Id.*) However, whether Wines can be believed or received this letter does not affect the veracity of Turon's reason for terminating Plaintiff's employment-Plaintiff did not return from his CFRA leave or get an approved leave extension.

Plaintiff's tenth cause of action is for failure to prevent discrimination and retaliation under the FEHA. (FAC ¶¶ 69-75.) FEHA makes it unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." *Cal. Gov. Code § 12940(k)*. The cause of action does not stand alone, but depends upon one being able to prove the plaintiff was actually the victim of discrimination or retaliation. *Trujillo v. N. Cty. Transit Dist., 63 Cal. App. 4th 280, 286-87, 73 Cal. Rptr. 2d 596 (1998)*, *as modified* (May 12, 1998); *Lelaind v. City & Cty. of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008)*; *2 Cal. Code Regs. § 11023(a)(2)* ("There is no stand-alone, private cause of action under Government Code *section 12940(k)*. In order for **[*30]** a private claimant to establish an actionable claim under Government Code *section 12940(k)*, the private claimant must also plead and prevail on the underlying claim of discrimination, harassment, or retaliation."). Because the Court has granted summary judgment in favor of Defendants on Plaintiff's discrimination and retaliation causes of action, Plaintiff cannot state a claim under *Section 12940(k) of the FEHA* as a matter of law.

**C. Wrongful termination in violation of public policy**

Plaintiff's eleventh cause of action is for wrongful termination in violation of public policy. (FAC ¶¶ 76-82.) This claim shares the same factual and legal basis as Plaintiff's causes of action for disability discrimination and retaliation under the FEHA and CFRA. Because the Court has granted summary judgment in favor of Defendants on Plaintiff's discrimination and retaliation causes of action, Plaintiff's cause of action for wrongful termination also fails to the extent it relies on the conduct underlying those claims. *See* *Markowitz v. United Parcel Serv., Inc., No. SACV151367AGDFMX, 2016 U.S. Dist. LEXIS 86245, 2016 WL 3598728, at *7 (C.D. Cal. July 1, 2016)*, *aff'd*, *711 F. App'x 430 (9th Cir. 2018)* (granting summary judgment on the plaintiff's wrongful termination claim because the court had granted summary judgment on a duplicative FEHA claims, including **[*31]** for disability discrimination); *Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229, 87 Cal. Rptr. 2d 487 (1999)* ("[B]ecause [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails."). Accordingly, the Court GRANTS Defendants' motion for partial summary judgment on Plaintiff's wrongful termination cause of action to the extent it is based on the conduct underlying his fifth, eighth, and ninths claims.

However, the Court DENIES Defendants' motion to the extent his eleventh cause of action relies on Plaintiff's allegations underlying his seventh cause of action for failure to accommodate. "[T]he consequence of the failure to accommodate is . . . frequently an unlawful termination." *Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1139-40 (9th Cir. 2001)*. "For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Id.* Thus, where the "employer's failure to reasonably accommodate a known disability [] leads to discharge for performance inadequacies resulting from that disability," an employee may be able to demonstrate that he was fired because of his disability. *Id. at 1140*. The Court cannot fully resolve Plaintiff's wrongful termination claim until his failure to accommodate claim **[*32]** also is resolved.

**D. Punitive damages**

Plaintiff requests punitive damages. (FAC at Prayer for Relief ¶ 5.) Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Cal. Civ. Code § 3294(a)*. California law defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Cal. Civ. Code § 3294(c)(1)*. It defines "oppression" as despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Cal. Civ. Code § 3294(c)(2)*. Lastly, it defines "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Cal. Civ. Code § 3294(c)(3)*.

Defendants argue that Plaintiff's prayer for punitive damages fails as a matter of law because he has not established malice, oppression, or fraud by an officer, director, or managing agent of Walmart, as required under

California Civil Code Section 3294. (Mot. at 20-21.) The Court **[*33]** agrees. Defendants gave Plaintiff his Second and Third Level Coachings because he engaged in conduct that violated Walmart's policies. Defendants terminated Plaintiff's employment because he failed to return to work or receive an approved leave extension. Defendants have demonstrated some efforts to accommodate Plaintiff's scheduling requests and disability. None of Defendants' actions or treatment of Plaintiff were malicious, oppressive, or fraudulent.[18]

**E. Defendants' Affirmative Defense of After-Acquired Evidence**

Plaintiff moves for summary judgment on Defendants' seventh affirmative defense of after-acquired evidence because there is "no basis" for the defense. (Pl. Mot.; Dkt. 1-1 Ex. E [Defendants' Answer] ¶ 18.) "The doctrine of after-acquired evidence refers to an employer's discovery, after an allegedly wrongful termination of employment or refusal to hire, of information that would have justified a lawful termination or refusal to hire." *Salas v. Sierra Chem. Co., 59 Cal.4th 407, 428, 173 Cal. Rptr. 3d 689, 327 P.3d 797 (2014)*. "[T]he burden of proof with respect to this issue [is] on the employer . . . [who] must establish not only that it *could* have fired an employee for the later-discovered misconduct, but that it *would* in fact have **[*34]** done so." *O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir. 1996)*. Defendants intend to present evidence that Plaintiff made false statements about his past employment history on his employment application and at the time of his hire. (Dkt. 43 at 2.)

Todd Stokes, the Regional Human Resources Director for Walmart Stores in the Southern California Region 57, became aware after Plaintiff's employment was terminated that Plaintiff provided false information when he applied for and was hired by Walmart. (Dkt. 43-4 ¶¶ 1-6.) Specifically, Plaintiff put on his application that he was employed with BDS Marketing as a Regional Sales Manager from June 1, 2005, through January 31, 2013. (*Id.* Ex. A at 5.) After Plaintiff was hired, he completed a "Work Experience Credit Worksheet" and again represented he worked at BDS Marketing as a Regional Sales Manager during that period. (*Id.* Ex. B.) Based on his statements on the Worksheet, Plaintiff was credited with 7.1 years of service, which resulted in Plaintiff receiving a pay increase of twenty percent higher than the base rate-the maximum increase. (*Id.* ¶ 5, Ex. B.) During discovery in this action, Plaintiff testified that he was a "field tech" or "brand ambassador" at BDS Marketing, that he generally **[*35]** only worked on the weekends, and that he was not working with BDS Marketing for the entire duration of June 1, 2015, through January 31, 2013. (Dkt. 43-5 Ex. D at 25:2-12, 35:18-37:20; Ex. G.)[19] Falsifying employment records is grounds for termination from Walmart. (Dkt. 43-4 ¶¶ 7-9, Ex. C.)

Walmart has created a triable issue of material fact as to whether Plaintiff provided false information on his employment application and whether Walmart would have terminated Plaintiff for these acts. Plaintiff presents no evidence to dispute that he made false statements about his position-title and the duration of his employment at BDS Marketing. These false statements resulted in Plaintiff's receipt of a pay increase. Plaintiff's false statements

---

[18] Defendants also argue that there is no evidence that Walmart ratified or authorized the conduct of Benice, Wines, or Wilbert, or that an officer, director, or managing agent within Walmart engaged in any malicious conduct. (Mot. at 21-22.) "Because Defendant is a corporation, the evidence must demonstrate an officer, director or managing agent of Defendant *committed, authorized or ratified* an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." *Yeager v. Corr. Corp. of Am., 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013)* (emphasis added); *Cal. Civ. Code § 3294(b)*. Courts have interpreted "managing agent" under *Section 3294(b)* to "be more than a mere supervisory employee." *White v. Ultramar, Inc., 21 Cal. 4th 563, 573, 88 Cal. Rptr. 2d 19, 981 P.2d 944 (1999)*. A "managing agent" is one who "exercise[s] substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." *Id. at 566-67*. While Plaintiff has demonstrated that Benice and Wines were his supervisors who had some decision-making authority, he has not established that either of them exercised or had substantial discretion so that their decisions ultimately determined corporate policy for Walmart. Defendants are entitled to summary judgment on Plaintiff's claim for punitive damages for this additional reason.

[19] Plaintiff objects to Stokes' Declaration as lacking personal knowledge, as Stokes stated he is "informed that plaintiff may have provided false information about his employment history." (Dkt. 47 at 2; Dkt. 43-4 ¶ 6.) However, Defendants have presented Plaintiff's own testimony regarding his employment at BDS Marketing, which contradicts the information he provided on his employment application and Worksheet. Defendants' arguments do not rely on Stokes' statement to create a triable issue of fact.

may qualify as a grounds for termination under Walmart's policies. Plaintiff argues that Walmart has not "established a factual basis that it certainly would have terminated" Plaintiff for falsifying information. (Dkt. 47 at 3-4.) However, Defendants are not moving for summary judgment on this defense, and thus are only required to set forth, by affidavit, or as otherwise provided under *Rule 56*, "specific facts showing that there is a genuine issue for trial." **[*36]** *Anderson, 477 U.S. at 256*. Defendants have done so.

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion for partial summary judgment as to Plaintiff's fifth, eighth, ninth, tenth, and eleventh causes of action and claim for punitive damages is GRANTED IN SUBSTANTIAL PART. Plaintiff's motion for partial summary judgment is DENIED.

DATED: April 12, 2018

/s/ Cormac J. Carney

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

End of Document

# *Garcia v. Wal-Mart Assocs.*

United States District Court for the Central District of California

March 2, 2021, Decided; March 2, 2021, Filed

Case No.: CV 19-07784-CJC (SKx)

**Reporter**
2021 U.S. Dist. LEXIS 40134 *

GUSTAVO GARCIA, Plaintiff, v. WAL-MART ASSOCIATES, INC. and DOES 1 through 20, inclusive, Defendant.

**Prior History:** *Garcia v. Wal-Mart Assocs., 2020 U.S. Dist. LEXIS 249644 (C.D. Cal., Dec. 21, 2020)*

## Core Terms

summary judgment, summary judgment motion, payroll records, personnel, personnel records

## Case Summary

**Overview**
HOLDINGS: [1]-The court denied the plaintiff's motion for summary judgment for plaintiff's claim that defendant failed to respond to his request for payroll and personnel records and the corresponding statutory damages under Lab. Code, §§ 226, 1198.5 because a critical dispute of a material fact precluded the court from entering summary judgment in plaintiff favor since the defendant stated that it did not receive plaintiff's request and that such request was sent to the wrong address; [2]-Defendant's claim that summary judgment was appropriate in its favor because the plaintiff did not properly serve defendant with his request for personnel and payroll records was meritorious because plaintiff failed to serve the request on defendant's designated person under Lab. Code, §§ 226(c), 1198.5(f).

**Outcome**
Defendant's motion for summary judgment granted, and plaintiff motion for summary judgment denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

*HN1* **Entitlement as Matter of Law, Appropriateness**

The court may grant summary judgment on each claim or defense—or the part of each claim or defense—on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. A factual issue is genuine when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. A fact is material when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. Factual disputes that are irrelevant or unnecessary will not be counted.

Civil Procedure > ... > Summary Judgment > Supporting Materials > Affidavits

Evidence > Inferences & Presumptions > Inferences

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

**HN2 Supporting Materials, Affidavits**

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. The court does not make credibility determinations, nor does it weigh conflicting evidence. But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.

Business & Corporate Compliance > Labor & Employment > Wage & Hour Laws > Recordkeeping Requirements
Labor & Employment Law > Wage & Hour Laws > Recordkeeping Requirements

Labor & Employment Law > Employer Liability > Contract Liability > Contract Indemnity

**HN3 Wage & Hour Laws, Recordkeeping Requirements**

California law provides current and former employees the right to inspect and receive a copy of payroll records and personnel records from their employers. Lab. Code, §§ 226(c), 1198.5(a). Employers must respond to requests for such records within 21 days for payroll records and 30 days for personnel records. Lab. Code, §§ 226(c), 1198.5(b)(1). Employers are subject to statutory penalties of $ 750 if they fail to do so. Lab. Code, §§ 226(f), 1198.5(k).

Business & Corporate Compliance > Labor & Employment > Wage & Hour Laws > Recordkeeping Requirements
Labor & Employment Law > Wage & Hour Laws > Recordkeeping Requirements

Labor & Employment Law > Employer Liability > Contract Liability > Contract Indemnity

Workers' Compensation & SSDI > Coverage > Employment Status > Governmental Employees

Business & Corporate Law > Agency Relationships > Duties & Liabilities > Indemnity

**HN4 Wage & Hour Laws, Recordkeeping Requirements**

Employers may designate the person to whom a request for both payroll and personnel records must be made. Lab. Code, §§ 226(c), 1198.5(f).

Business & Corporate Compliance > Labor & Employment > Employee Privacy > Disclosure of Employee Personnel Files
Labor & Employment Law > Employee Privacy > Disclosure of Employee Information > Personnel Files

Labor & Employment Law > Employer Liability > Contract Liability > Contract Indemnity

Business & Corporate Compliance > Labor & Employment > Wage & Hour Laws > Recordkeeping Requirements
Labor & Employment Law > Wage & Hour Laws > Recordkeeping Requirements

***HN5*** **Employee Privacy, Disclosure of Employee Personnel Files**

If an employee or former employee files a lawsuit that relates to a personnel matter against his or her employer or former employer, the right of the employee, former employee, or his or her representative to inspect or copy personnel records under this section ceases during the pendency of the lawsuit in the court with original jurisdiction. Lab. Code, § 1198.5(n).

**Counsel:** **[*1]** For Gustavo Garcia, an individual, Plaintiff: Kaveh Sam Elihu, Samuel J Moorhead, LEAD ATTORNEYS, Alan A Wilcox, Employee Justice Legal Group LLP, Los Angeles, CA USA.

For Wal-Mart Associates, Inc., a Delaware Corporation, Defendant: Daniel F Fears, LEAD ATTORNEY, Alejandro Gabriel Ruiz, Payne and Fears LLP, Irvine, CA USA.

Elliot K Gordon, Mediator (ADR Panel): Elliot K Gordon, LEAD ATTORNEY, JAMS, Los Angeles, CA USA.

**Judges:** HON. CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CORMAC J. CARNEY

## Opinion

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 55] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT Dkt. 74]**

**I. INTRODUCTION & BACKGROUND**

Defendant Wal-Mart Associates, Inc. ("Walmart") hired Plaintiff Gustavo Garcia to work as a part-time Home Meal Processor at its Sam's Club warehouse store in Santa Clarita, CA in 2016. (Dkt. 70 [Walmart's Response to Plaintiff's Statement of Undisputed Facts, hereinafter "UF"] ¶ 1.) Walmart terminated Plaintiff's employment on August 4, 2017. (*Id.* ¶ 2.) On July 19, 2019, Plaintiff filed this case, alleging that Walmart discriminated and retaliated against him and ultimately terminated him because of his disability. (Dkt. 1 [Complaint].) Walmart, in contrast, **[*2]** argued that Plaintiff was terminated not because of any disability, but because he repeatedly failed to abide by food safety protocols. On December 21, 2020, the Court granted Walmart's motion for summary judgment on eight of Plaintiff's nine claims. (Dkt. 51.)

Now before the Court are the parties' cross motions for summary judgment on Plaintiff's last remaining claim, for failure to permit inspection of personnel and payroll records. (Dkt. 55 [hereinafter "P. Mot."]; Dkt. 74 [hereinafter "D.

Mot."].) Plaintiff asserts that on August 3, 2018, his counsel sent a request for personnel and payroll records to Walmart at its corporate headquarters, and that Walmart received it but never responded. (*Id.* ¶¶ 3-4.) Walmart disputes that it received any request from Plaintiff. It argues that Plaintiff failed to properly serve Walmart with the records request, and that Plaintiff was also barred from making such a request at the time he made one. (*Id.*) For the following reasons, Plaintiff's motion for summary judgment is **DENIED** and Walmart's motion is **GRANTED**.

## II. LEGAL STANDARD

***HN1*** The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment **[*3]** is sought." *Fed. R. Civ. P. 56(a)*. Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also* *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex, 477 U.S. at 325*. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id. at 249*.

***HN2*** In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)*. The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992)*. But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and **[*4]** defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)*.

## III. DISCUSSION

***HN3*** California law provides current and former employees the right to inspect and receive a copy of payroll records and personnel records from their employers. *Cal. Lab. Code §§ 226(c)*, *1198.5(a)*. Employers must respond to requests for such records within 21 days for payroll records and 30 days for personnel records. *Id.* *§§ 226(c)*, *1198.5(b)(1)*. Employers are subject to statutory penalties of $ 750 if they fail to do so. *Id.* *§§ 226(f)*, *1198.5(k)*. Plaintiff alleges that Walmart failed to respond to his request for payroll and personnel records, and seeks $ 1,500 in statutory damages—$ 750 under *§ 226* and $ 750 under *§ 1198.5*. (P. Mot. at 4.)

Plaintiff argues that summary judgment should be entered in his favor because on August 3, 2018, he "sent a legally adequate written request to [Walmart] for his personnel and payroll records," but Walmart never responded. (P. Mot. at 3.) But a critical dispute of a material fact precludes the Court from entering summary judgment in Plaintiff's favor: Walmart states it did not receive Plaintiff's request because it was sent to the wrong address. (D. Opp. at 8-11); *see Chavez v. JPMorgan Chase & Co.*, 731 Fed. Appx. 592, 596 (9th Cir. 2018). Although Plaintiff sent the records request with return receipt requested, Plaintiff does not have the return receipt. (*See* P. Reply at 5.)

**[*5]** Walmart argues that summary judgment is appropriate in its favor because Plaintiff did not properly serve Walmart with his request for personnel and payroll records. The Court agrees. ***HN4*** Employers may designate the person to whom a request for both payroll and personnel records must be made. *Cal. Lab. Code §§ 226(c)*, *1198.5(f)*. Walmart chose to do so, stating in a policy that these requests must be submitted verbally or in writing to a supervisor or to a salaried member of management at the employee's store. (Dkt. 76-1 ["California Associate

Access to Personnel Files"]; D. Reply at 2.) Walmart also contends that Plaintiff could have served the request on Walmart's designated agent for service of process in California. (D. Reply at 2.) Nevertheless, Plaintiff's counsel mailed the request to Walmart's headquarters in Bentonville, Arkansas. Plaintiff therefore failed to serve the request on Walmart's designated person under the statute, and summary judgment is appropriate in Walmart's favor. To conclude otherwise would render meaningless the California Legislature's express decision to permit corporations to designate the person to whom requests are made.

Plaintiff's request for damages under *California Labor Code § 1198.5* also fails for another reason: **[*6]** Plaintiff was barred from seeking the records during the pendency of his employment-related lawsuit. (D. Mot. at 5-8.) ***HN5*** "If an employee or former employee files a lawsuit that relates to a personnel matter against his or her employer or former employer, the right of the employee, former employee, or his or her representative to inspect or copy personnel records under this section ceases during the pendency of the lawsuit in the court with original jurisdiction." *Cal. Lab. Code § 1198.5(n)*. Plaintiff does not dispute that he had at least one, if not two, workers' compensation actions pending at the time he made his August 3, 2018 records request. (*See* D. Reply at 5.)

**IV. CONCLUSION**

For the foregoing reasons, Walmart's motion for summary judgment on Plaintiff's failure to permit inspection of personnel and payroll records is **GRANTED**. Plaintiff's motion for summary judgment on that claim is **DENIED**. The Court will enter judgment in favor of Walmart.

DATED: March 2, 2021

/s/ Cormac J. Carney

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

Plaintiff Gustavo Garcia brings this action against Defendant Wal-Mart Associates, Inc. ("Walmart"). On December 21, 2020, Walmart moved for summary judgment on eight of Plaintiff's **[*7]** nine claims. (Dkt. 31.) The Court granted that motion. (Dkt. 51.) Most recently, the parties' cross-motions for summary judgment on Plaintiff's final claim came before the Court. Having considered the evidence and arguments presented, the Court hereby **ORDERS** that:

1. Walmart's motion for summary judgment (Dkt. 74) is **GRANTED**.
2. Plaintiff's motion for summary judgment (Dkt. 55) is **DENIED**.
3. Plaintiff shall take nothing on his complaint against Walmart.
4. Judgment is hereby entered in favor of Walmart and against Plaintiff.

DATED: March 2, 2021

/s/ Cormac J. Carney

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

# Raygoza v. Walmart, Inc.

United States District Court for the Central District of California

February 8, 2022, Decided; February 8, 2022, Filed

CV 21-809-GW-KSx

**Reporter**
2022 U.S. Dist. LEXIS 96685 *; 2022 WL 22879564

Paz Raygoza v. Walmart, Inc., et al.

## Core Terms

disability, pregnancy, termination, reasonable accommodation, summary judgment, occurrence, accommodation, asserts, notice, Attendance, reasons, interactive process, sick leave, retaliation, prima facie case, Overrule, cause of action, medical condition, retaliation claim, employees, nonmoving, pretext, argues, healthcare provider, designation, accrued, pregnant, protected activity, claim for relief, leave of absence

**Counsel:** **[*1]** For Paz Raygoza, an individual |, Plaintiff: Kaveh Sam Elihu, LEAD ATTORNEY, Employee Justice Legal Group PC, Los Angeles, CA USA; Sylvia V Panosian, Employee Justice Legal Group LLP, Los Angeles, CA USA.

For Walmart Inc., a Delaware corporation | formerly known as | Wal-Mart Stores, Inc. |, Defendant: Andrew Keith Haeffele, Daniel F Fears, Megan Autumn Mackie, LEAD ATTORNEYS, Payne and Fears LLP, Irvine, CA USA.

**Judges:** GEORGE H. WU, UNITED STATES DISTRICT JUDGE.

**Opinion by:** GEORGE H. WU

## Opinion

**CIVIL MINUTES - GENERAL**

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [15]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [15], presently set for February 10, 2022 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov for dial-in instructions.

**Raygoza v. Walmart Inc.**, Case No. 2:21-cv-00809-GW (KSx)

Tentative Ruling on Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment

**I. Introduction**

Paz Raygoza ("Plaintiff") sued Walmart Inc. ("Defendant" or "Walmart"), her former employer, identifying eleven causes of action in her **[*2]** Complaint: 1) discrimination in violation of *California Government Code §§ 12940 et seq.*; 2) retaliation in violation of *California Government Code §§ 12940 et seq.*; 3) failure to prevent discrimination

and retaliation in violation of *California Government Code § 12940(k)*; 4) failure to provide reasonable accommodations in violation of *California Government Code §§ 12940 et seq.*; 5) failure to engage in a good faith interactive process in violation of *California Government Code §§ 12940 et seq.*; 6) violation of *California Government Code § 12945* (pregnancy disability leave); 7) violation of *California Family Rights Act*, *California Government Code §§ 12945.2 et seq.*; 8) wrongful termination in violation of the public policy of the State of California; 9) denial of and discrimination based upon the use of sick leave (*California Labor Code §§ 233*, *234*, *246.5*); 10) declaratory judgment; and 11) failure to permit inspection of personal and payroll records, in violation of *California Labor Code §§ 1198.5*, *226(c)*, *226(f)*, and *432*. On November 15, 2021, Walmart moved for summary judgment on seventeen issues which cover every one of Plaintiff's claims along with her request for punitive damages in this action.

**II. Background**

A. Summary Judgment Standards

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *see also* *Miranda v. City of Cornelius, 429 F.3d 858, 860 n.1 (9th Cir. 2005)*.[1] As adjusted, where applicable, by the "*McDonnell Douglas*" framework frequently at issue in employment cases, to satisfy its burden **[*3]** at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)* (emphasis added); *see also* *Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)* (*en banc*) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*, and citing *Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000)*); *Fairbank, 212 F.3d at 532* (holding that the *Celotex* "showing" can be made by "pointing out through argument□the absence of evidence to support plaintiff's claim"). In contrast, for a moving party to prevail at summary judgment when that party *also bears the burden of persuasion* on the issue in question, the party "must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it.*" Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008*) (omitting internal quotation marks). It "must establish beyond controversy every essential element" of its claim.*" S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003*).

The summary judgment procedure is not simply one-sided, however (and even the lack of an opposition does not guarantee a moving party's success **[*4]** on such a motion).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in *Rule 56*, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987)* (internal citations and quotation marks omitted). The opposing party must "cit[e] to particular parts of materials in the record" or show that the materials the moving party cited do not establish the absence of a genuine dispute. *Fed. R. Civ. P. 56(c)(1)*; *see also* *Fed. R. Civ. P. 56(c)(3)* ("The court need consider only the cited materials, but it may consider other materials in the record."); Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE, FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2021) ("Phillips & Stevenson"), ¶¶ 14:101.10-101.12, 14:102. In addition, under this Court's Local Rules, where the moving party on a motion for summary judgment has "claimed and adequately supported"

[1] Plaintiff's references to standards applicable under California's summary judgment/adjudication procedure, *see* Docket No. 24, at 5:24-6:1, 6:15-24, are not meaningful in the context of a summary judgment motion filed in federal court.

material facts, those facts "are admitted to exist without controversy except **[*5]** to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' [described in *Local Rule 56-2*] and (b) controverted by declaration or other written evidence filed in opposition to the motion." *See C.D. Cal. L.R. 56-3*; *see also* *Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1058 (9th Cir. 2009)* ("The 'party opposing summary judgment must direct [the court's] attention to specific, triable facts,' and the reviewing court is 'not required to comb through the record to find some reason to deny a motion for summary judgment.'") (quoting *S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003)* and *Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)*); *Carmen, 237 F.3d at 1029* ("[W]hatever establishes a genuine issue of fact must *both* be in the district court file *and* set forth in the response.").

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. In addition, factual assertions made in legal memoranda, but not supported by the evidence submitted, are insufficient. *See* *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1980)*.

Generally-speaking (as adjusted, in some respects, in the *McDonnell Douglas* setting, discussed *infra*), in judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and views all evidence **[*6]** and draws all inferences in the light most favorable to the non-moving party. *See* *T.W. Elec., 809 F.2d at 630-31* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*); *Motley v. Parks, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005)* (*en banc*); *Miranda, 429 F.3d at 860 n.1*. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See* *National Steel Corp v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997)*; *Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir.1979)*; *see also* Phillips & Stevenson ¶ 14:171.

With all of these considerations in mind, the Court must then determine whether "a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*; *see also* *Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995)* ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.").

B. Evidentiary Objections

1. Plaintiff's Objections to Kish Declaration (Docket Nos. 19, 26)

1) Overrule. 2) Overrule. 3) Sustain as to first clause, overrule as to the remainder. 4) Sustain, overbroad. 5) Overrule.

2. Walmart's Objections to Jilizian Declaration (Docket Nos. 29 and 33)

1) Overrule. 2) Overrule. 3) Sustain. 4) Sustain. 5) Overrule. 6) Overrule. 7) Overrule.

3. Walmart's Objections to Raygoza Declaration (Docket Nos. 28 and 34)

First and Second objections to Declaration in its entirety: Overrule, so long as Plaintiff re-files or supplements with a correct signature pursuant to *C.D. Cal. L.R. 5-4.3.4(a)(3)*.

1) Overrule except as to last sentence. **[*7]** 2) Overrule. 3) Overrule. 4) Sustain (irrelevant if no notice to Walmart). 5) Sustain, argumentative. 6) Sustain. 7) Sustain (irrelevant if no notice to Walmart). 8) Overrule. 9) Overrule (Plaintiff does not attempt to introduce any "documents"). 10) Overrule (relevant due to Walmart's commentary regarding absence of doctor's notes).

C. Factual Background[2]

---

[2] This section is written as the Federal Rules dictate for a summary judgment motion (adjusted as appropriate for purposes of the rules applicable to such motions in certain types of employment cases) — reflecting undisputed facts and disputes (that is, *true*

Plaintiff worked as a Cashier at Defendant's store in La Habra, California beginning in December 2015, until Defendant "separated" — *i.e.*, terminated — her employment on January 24 (or January 25), 2019. *See* Defendant Walmart Inc.'s Reply Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment or in the Alternative Partial Summary Judgment ("DRS"), Docket No. 32, ¶¶ 1, 20; Response of Walmart Inc. to Plaintiff's Separate Statement of Undisputed Material Facts in Opposition to Motion for Summary Judgment in the Alternative, Partial Summary Judgment ("DRO"), Docket No. 31, ¶¶ 1-2, 31.

When Defendant hired her, Plaintiff completed Defendant's standard new-hire orientation process, during which she reviewed "the company's policies and procedures that applied to [her] as an employee at Walmart." *See* ***[*8]*** DRS ¶ 2. Throughout the duration of Defendant's employment of Plaintiff, Defendant had an Attendance and Punctuality Policy ("Attendance Policy"). *See* DRO ¶ 4. Defendant's Attendance Policy states: "[E]ach unauthorized absence will result in a partial occurrence or one or more full occurrences. If you accumulate nine (9) or more occurrences in a rolling six-month period, through any combination, you will be subject to termination." *See* DRS ¶ 4; DRO ¶ 5. Under the Attendance Policy, an "absence" yields 1.0 occurrence, an "absent no call" yields 3.0 occurrences, a "late in" yields a 0.5 occurrence, an "absent late in" yields 1.0 occurrence, an "early out" yields a 0.5 occurrence, and an "absent early out" yields 1.0 occurrence. *See* DRO ¶ 6.

Plaintiff was aware of Defendant's Attendance Policy and that she was required to comply with it. *See* DRS ¶ 5. Thus, Plaintiff understood that if she accumulated nine (9) "occurrences" in a rolling six-month period, her employment could be terminated. *See id.* ¶ 6. Plaintiff also understood that if she did not have any protected paid time-off ("PTO") to use when she missed work due to being sick, she would receive an occurrence for the absence. *See* ***[*9]*** *id.* ¶ 7.

Two of Walmart's other policies are also of-significance with respect to this topic. Defendant's Accommodation in Employment Policy ("Accommodation Policy") states as follows:

> If you need assistance to perform essential functions of your job due to a medical condition . . . , you may be eligible for a job adjustment (JA) under this policy whether or not the condition is a disability. You may also be eligible for a leave of absence . . . .
>
> You may be eligible for a *job adjustment* if you are qualified for the job you hold but, because of a *medical condition*, including pregnancy, you need assistance to perform the essential functions of your job . . . .
>
> You may be eligible for a *reasonable accommodation*[3] if you have the skills, ability, knowledge, certification and experience necessary and can perform the essential functions, either with or without reasonable accommodation for the job you hold . . . but, because of a *disability*, you need assistance . . . to perform the essential functions of a job.
>
> Disability also includes a temporary disability arising from pregnancy if (a) in the opinion of a woman's health care provider, she is unable because of pregnancy, childbirth or a related **[*10]** medical condition to work, to perform any one or more of the essential functions of her job . . . or (b) the woman is suffering from severe morning sickness or needs to take time off for prenatal or postnatal care or any other condition related to or resulting from pregnancy . . . .
>
> You may request a job adjustment or reasonable accommodation, at any time by telling any salaried member of management in your facility or an HR representative that, because of your condition, you need help to do your job or gain access to your workplace.

---

disputes) resolved in favor of Plaintiff, as the nonmoving party. However, where a party purports to dispute a proffered undisputed fact, but either the factual response or the evidence used to support that factual response does not, in fact, support a dispute of the particular proffered undisputed fact (because, for instance, it simply raises a different — though perhaps topically-related — subject or issue), the Court considers the proffered undisputed fact to actually *be* an undisputed fact.

[3] "Reasonable accommodation" is described to include "providing part-time or modified work schedules." *See* Accommodation Policy, Docket No. 19-2 at page 3 of 5.

*See id.* ¶ 27 (emphasis in original); Declaration of Laura Kish in Support of Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, Exh. B, Docket No. 19-2 at pages 2-3 of 5. Meanwhile, Defendant's Leave of Absence Policy states as follows:

> At Walmart, we recognize that there are times when family and medical issues necessitate time away from work.
>
> You are eligible for FMLA Leave under the FMLA and/or the CFRA if you (a) have been employed at Walmart for a total of at least 12 months and (b) have worked at least 1250 hours within the 12-month period before taking FMLA Leave. If you do not meet these eligibility requirements, **[*11]** you are not eligible for FMLA Leave. However, you may be eligible to take Personal Leave.
>
> Leave may be taken continuously or on a reduced schedule or an intermittent basis. You may take intermittent or reduced schedule FMLA Leave only when . . . [y]our health care provider certifies it is medically necessary for medical treatment or to recover from your serious health condition . . . .

*See* DRS ¶ 28. Plaintiff understood that Defendant offered various leaves of absence and also understood that such leaves were requested through Defendant's third-party administrator, *i.e.* Sedgwick. *See id.* ¶ 29.

In or around October 2018, Plaintiff learned she was pregnant. *See* DRO ¶ 20. Her pregnancy was deemed high-risk because she was 38 years old at the time. *See id.* ¶ 21.

Plaintiff testified that she never contacted management or Human Resources and asked for a leave of absence — or, indeed, for any special accommodation, including asking to come in to work late for her shift or to have a greater number of sick days than entitled under Defendant's policy — because of her pregnancy and also testified that she never asked for or requested in any way a leave of absence in 2018 or 2019 (though she does **[*12]** point to communications she had with Tina Rodriguez ("Rodriguez"), her store's "People Lead," and Martha Casillas ("Casillas"), during which she asserts she told them on one particular occasion that she was having complications from her pregnancy and needed to go home because "something was just not right"[4] ). *See* DRS ¶¶ 39-44, 68; DRO ¶ 29. Similarly, during her pregnancy, Plaintiff never contacted Sedgwick regarding any leave of absence or any type of accommodation for her pregnancy (though she asserts she "did not have the opportunity" to contact Sedgwick). *See* DRS ¶ 45.

On December 31, 2018, Plaintiff felt especially ill from her pregnancy and had to leave her shift earlier than scheduled. She testified that she "was not feeling well at all . . . this was like worse than other times, worse than normal wear and tear, fatigue and tiredness . . . . I felt like I had a fever, like — just internal like heat . . . my feet were swollen as well, so I had to sit down . . . . I remember that specifically, and I remember it also because it was New Year's Eve." *See* DRO ¶ 24. She testified that she told Rodriguez and Casillas that she was leaving "because I was having complications and that **[*13]** I felt like if [*sic*] I had a fever" and that "something was just not right," and that they simply responded "Oh, I hope you feel better." *See id.* ¶ 25. She also missed work the following day, January 1, 2019, because she was still sick from her pregnancy (though the evidence is that she simply called in sick, not that she told anyone in particular anything specific about why, or to what extent, she was sick). *See id.* ¶ 26; DRS ¶ 12; Declaration of Nayri Jilizian in Support of Plaintiff's Opposition to Walmart Inc.'s Motion for Summary Judgment ("Jilizian Decl."), Exh. A, at 105:17-107:10.

Plaintiff's doctor never put her on any type of leave of absence, either in the form of consecutive days or an intermittent leave of absence. *See* DRS ¶ 30; *see also* Footnote 2, *supra*. Nor did Plaintiff ever provide any kind of doctor's note to Defendant relating to her pregnancy. *See* DRS ¶ 31. Likewise, Plaintiff never submitted or turned-in to Defendant's Human Resources group, Defendant's management, or Sedgwick, any restrictions on her ability to work during her pregnancy. *See id.* ¶ 32; *see also* Footnote 2, *supra*. In fact, Plaintiff's doctor never gave her a medical note saying that she could not **[*14]** engage in certain work activities or indicating, or providing her, with any kind of restrictions on her ability to work. *See* DRS ¶¶ 33-34; *see also* Footnote 2, *supra*. Plaintiff never had to be hospitalized or go into the hospital for treatment (other than for routine scheduled checkups) prior to her delivery,

---

[4] What the evidence actually and specifically shows Plaintiff having told Rodriguez and Casillas will be discussed further *infra*.

and testified that she was "able to work all the way up to shortly before [her] delivery," though she also provides evidence that pregnancy-related symptoms affected her ability to work on certain days and that she called the "Kaiser nurse line" on at least one occasion in order to speak with a nurse. *See* DRS ¶¶ 35-38.

In response to an interrogatory asking for the dates of health care treatment, Plaintiff responded that she "received treatment throughout the entirety of her pregnancy and specifically on January 24, 2019, January 30, 2019, February 13, 2019, February 27, 2019, March 6, 2019 and March 13, 2019. *See id.* ¶¶ 48-49. In response to document requests in this action for medical records related to the disability she alleges in this case, Plaintiff produced only two documents. *See id.* ¶¶ 46-47. Plaintiff also indicates that — as mentioned above — she called a doctor or nurse's **[*15]** hotline in association with her condition on December 31, 2018 and January 1, 2019, though it did not result in her obtaining a doctor's note because the "visit" was only done over the phone, not in-person. *See* DRO ¶ 30.

Plaintiff accrued 0.5 occurrence points on September 30, 2018, 1.0 occurrence points on October 11, 2018, 1.0 occurrence points on November 12, 2018, 0.5 occurrence points on November 27, 2018, 1.0 occurrence points on December 31, 2018, 1.0 occurrence points on January 1, 2019, 1.0 occurrence points on January 4, 2019, 1.0 occurrence points on January 6, 2019, 1.0 occurrence points on January 14, 2019, 1.0 occurrence points on January 20, 2019, and 1.0 occurrence points on January 22, 2019. *See* DRS ¶¶ 8-18; DRO ¶ 29; *see also* Footnote 2, *supra*. Thus, Plaintiff had 10 occurrences on her record as of January 22, 2019 (though she disputes whether all of the occurrence points *should have been* on her record). *See* DRS ¶ 19; *see also* Footnote 2, *supra*.

Plaintiff was responsible for applying any accrued, available PTO to her absences. *See* DRS ¶ 56. Her Statement of Final Pay shows that she did not have any available PTO as of January 22, 2019 (though Plaintiff asserts that **[*16]** Defendant's alleged violation of its *Attendance Policy* means that there is a dispute as to whether she at least *should have* had protected PTO as of that date). *See id.* ¶ 57; *see also* Footnote 2, *supra*. Defendant separated Plaintiff's employment on January 24, 2019. *See* DRS ¶ 20.

Although, with its Reply papers, Defendant challenges the value of the evidence Plaintiff relies upon for the point, Plaintiff provides evidence that she asserts indicates that she had 63 late-arrivals and 68 absences between February 1, 2016 and January 22, 2019. *See* DRO ¶ 7. She routinely surpassed the allotted nine occurrence-threshold without being terminated (although, again, Defendant, questions the accuracy/meaning of the evidence relied-upon by asserting that Plaintiff "could have" used PTO to reduce her occurrence points below the threshold). *See id.* ¶¶ 8-17.

A final policy relevant to Plaintiff's case is Defendant's "California Associate Access to Personnel Files" policy, which states, in pertinent part, that "[a]ssociates or former associates who wish to review their personnel file should notify their supervisor or a salaried member of management, verbally or in writing." *See* DRS ¶ 61. Plaintiff mailed **[*17]** a record request to Defendant's headquarters in Bentonville, Arkansas (though she also asserts she made a verbal request for her records from Rodriguez, who performed human resources services). *See id.* ¶¶ 63, 68; DRO ¶ 32.

While Rodriguez was a "People Lead," she did not create, modify, or implement policy for Defendant, and had no authority to hire or fire associates. *See* DRS ¶¶ 69-70. Similarly, Heather Atkinson ("Atkinson"), an Assistant Store Manager — a position that operated on the store-level, and that was below Co-managers and the Store Manager — did not make, suggest or influence decisions that ultimately determined Defendant's corporate policy. *See id.* ¶¶ 71-73.

**III. Analysis**

The Court will begin its analysis with Plaintiff's fourth and fifth claims, because those claims directly-implicate an issue of notice that will also be relevant to analysis of Plaintiff's first, second and — derivatively — third claims.

A. <u>Reasonable Accommodation and Interactive Process</u>

Plaintiff's fourth and fifth causes of action are for "failure to provide reasonable accommodations" and "failure to engage in a good faith interactive process," respectively, relying upon California Government Code subsections 12940(m) and 12940(n).[5] *See* Complaint ¶¶ 62, 70. **[*18]** These two claims will be discussed together because of their related nature.

FEHA requires employers — on pain of a civil action for damages if noncompliant — to make reasonable accommodation for the known disabilities of employees to enable them to perform a position's essential functions, unless doing so would produce undue hardship to the employer's operations. *See* Cal. Gov't Code § 12940(m)(1) (designating as an "unlawful employment practice" the "fail[ure of an employer] to make reasonable accommodation for the known physical or mental disability of an . . . employee," excepting accommodations that would "produce undue hardship"); *A.M. v. Albertsons, LLC, 178 Cal.App.4th 455, 463, 100 Cal. Rptr. 3d 449 (2009)*; *Bagatti v. Dep't of Rehab., 97 Cal.App.4th 344, 357, 118 Cal. Rptr. 2d 443 (2002)*; *see also* Chin, Cathcart, Callahan & Lowe, CAL. PRAC. GUIDE: EMPLOYMENT LITIGATION (The Rutter Group 2020) ("Chin & Cathcart"), ¶¶ 9:2250, 9:2345.[6] Thus, in addition to one more necessity discussed below, a *prima facie* case for a reasonable accommodation claim requires Plaintiff to demonstrate that she has a disability covered by FEHA, that she is a qualified individual (*i.e.*, that she can perform the essential functions of the relevant position), and that Walmart failed reasonably to accommodate her disability. *See* *Hernandez v. Rancho Santiago Cmty. Coll. Dist., 22 Cal.App.5th 1187, 1193-94, 232 Cal. Rptr. 3d 349 (2018)*; *Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 256, 102 Cal. Rptr. 2d 55 (2000)*; *see also* Chin & Cathcart ¶¶ 9:2346-2346.3.

An employer's reasonable accommodation duty is an employer's affirmative duty where the employer is aware of an employee's disability or regards an employee as disabled (even if the employee has not requested an accommodation), and if a supervisor has acquired knowledge that she has a duty to communicate to the employer, a conclusive presumption arises that she has done so. *See Gelfo v. Lockheed Martin Corp., 140 Cal.App.4th 34, 60, 43 Cal. Rptr. 3d 874 (2006)*; *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum, 122 Cal.App.4th 1004, 1015, 18 Cal. Rptr. 3d 906 (2004)* (considering claim for religious accommodation under *Government Code § 12940(l)*); *Prilliman v. United Air Lines, Inc., 53 Cal.App.4th 935, 950-51, 62 Cal. Rptr. 2d 142 (1997)*; *see also* Chin & Cathcart ¶¶ 9:2251-2253. Even a single failure to accommodate may be actionable. *See* *A.M., 178 Cal.App.4th at 465*; *see also* Chin & Cathcart ¶ 9:2254.

Connected with the reasonable accommodation duty is the legislative mandate that an employer engage in the "interactive process" or else face a charge of a different, but related,[7] "unlawful employment practice." *See* *Cal. Gov't Code § 12940(n)* (providing that it is an "unlawful employment practice" for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if

---

[5] *California Government Code subsection 12945(a)(3)(A)* also makes it an "unlawful employment practice" for an employer "to refuse to provide reasonable accommodation for an employee for a condition related to pregnancy, childbirth, or a related medical condition, if the employee so requests, with the advice of the employee's health care provider." *Cal. Gov't Code § 12945(a)(3)(A)*. This provision is discussed *infra*, in connection with Plaintiff's sixth claim for relief. Plaintiff does not reference subsection 12945(a)(3)(A) in her fourth cause of action.

[6] Under *California Government Code section 12940(m)(2)*, an employer also may not *retaliate* or *discriminate* ***[*19]*** against an employee for requesting a reasonable accommodation for a known physical disability (which is a protected activity, unlike simply notifying an employer of medical status or a medical issue, even if that medical status qualifies as a disability under FEHA), whether or not the employer granted the request. *See* *Cal. Gov't Code § 12940(m)(1)*, *(2)*; *Moore v. Regents of Univ. of Cal., 248 Cal.App.4th 216, 245-48, 206 Cal. Rptr. 3d 841 (2016)*; Chin, Cathcart, Callahan & Lowe, CAL. PRAC. GUIDE: EMPLOYMENT LITIGATION (The Rutter Group 2020) ("Chin & Cathcart"), ¶ 9:2355. To the extent Plaintiff has any claim for that particular type of conduct, the Court's resolution of her more-traditional reasonable accommodation claim would also dictate the resolution of any such claim, for reasons that will become clear *infra*.

[7] Obviously, reasonable accommodation and interactive process claims are connected — in fact, for a time there was uncertainty whether they were even separate claims. *See* *Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 262-63, 102 Cal. Rptr. 2d 55 (2000)*. It is now established, however, that they are, in fact, separate causes of action. *See* *Swanson v. Morongo Unified Sch. Dist., 232 Cal.App.4th 954, 971, 181 Cal. Rptr. 3d 553 (2014)*; *see also* Chin & Cathcart ¶ 9:2102.

any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition"); *see also* Chin & **[*20]** Cathcart ¶ 9:2347.[8] "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal.App.4th 952, 984, 83 Cal. Rptr. 3d 190 (2008)* (quoting *Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000)*). One approach indicates that "[t]he employee must initiate the process unless his or her disability and the resulting limitations are obvious." *Swanson v. Morongo Unified Sch. Dist., 232 Cal.App.4th 954, 971, 181 Cal. Rptr. 3d 553 (2014)*; *see also* *Soria v. Univision Radio L.A., Inc., 5 Cal.App.5th 570, 600, 210 Cal. Rptr. 3d 59 (2016)*; Chin & Cathcart ¶ 9:2282. An alternative formulation provides that *an employer* must initiate the interactive process: (1) when an employee with a known physical or mental disability or medical condition requests a reasonable accommodation; (2) when the employer becomes aware of the need for accommodation through a third party or by observation; or (3) when the employer becomes aware of the possible need for accommodation because the disabled employee has exhausted leave under applicable federal and/or state statutes and the employer's leave policy, *and* the employee or employee's health care provider indicates that further accommodation is necessary for recuperative leave or to allow the employee to perform essential job functions. *See* Chin & Cathcart **[*21]** ¶ 9:2281.1; *see also* *Prilliman, 53 Cal.App.4th at 950*; *Faust v. Cal. Portland Cement Co., 150 Cal.App.4th 864, 887, 58 Cal. Rptr. 3d 729 (2007)* (discussing knowledge of disability in context of disability discrimination claim). Taking initial steps does not absolve an employer of liability if the employer is responsible for a later breakdown in the process. *See* *Nadaf-Rahrov, 166 Cal.App.4th at 984-87*; *see also* Chin & Cathcart ¶ 9:2281.2.

As to Plaintiff's reasonable accommodation claim, Walmart argues both that Plaintiff was not disabled and that she never requested an accommodation or gave Walmart notice of her need for one. Instead, she was never restricted in any major life activity and never gave Walmart a doctor's note, and was able to work up until her delivery. In response, Plaintiff first rejects the assertion that an employer's duty only arises once an employee *requests* an accommodation, and then also notes the duty runs to employees regarded-as disabled, even if not in-fact disabled. Plaintiff is correct on the law but, as will be discussed below, it does not save her reasonable accommodation claim.

On the interactive process claim, Walmart relies on the same arguments it made in connection with Plaintiff's reasonable accommodation claim, and adds that if anyone was responsible for any breakdown **[*22]** in the process, it would have been Plaintiff because she failed to provide information to Walmart, meaning that Walmart never knew what action it needed to take in the circumstances. In her Opposition, Plaintiff asserts that she told Rodriguez that she was too sick from her pregnancy, but Rodriguez failed to engage in any interactive process in response. In addition, she again points out that this duty likewise is not dependent upon an employee requesting an accommodation (although that is one way in which the interactive process-duty can commence); an employer is required to initiate the process even when it only becomes aware of the need for an accommodation via observation, and there is no need for the employer to be aware that the condition constitutes a disability. Again, Plaintiff is correct on the law, but this is not enough.

For both her reasonable accommodation and interactive process claims, Plaintiff asserts that she "was suffering from severe pregnancy related symptoms, including severe morning sickness, lightheadedness, fatigue, and fevers." Docket No. 24, at 14:26-27. On December 31, 2018, she also claims that she specifically informed Rodriguez that she had to leave work **[*23]** earlier-than-scheduled because of what she was experiencing, and that this condition continued through the next day. She also claims that "she began experiencing more complications and missed work on January 4, 6, 14, 20, and 22, 2019." *Id.* at 15:7- 10.

---

[8] Plaintiff gives no indication in her Opposition brief that her interactive process claim is based on a theory that she suffered from a "medical condition," notwithstanding what her Complaint would appear to put atissue. *See* Complaint ¶¶ 63, 70-71.

In the face of all of this, according to Plaintiff, Rodriguez did nothing other than to tell Plaintiff to "feel better."[9] Plaintiff believes that a reasonable accommodation under the circumstances "would have been for Walmart to grant Plaintiff up to four months of intermittent pregnancy disability leave for her absences, as required by law, and to classify correctly Plaintiff's absences on and after November 2018 as Authorized for purposes of the Attendance Policy." *Id.* at 15:24-28. At a minimum, a finite leave of absence is indeed one example of a reasonable accommodation under FEHA. *See* *Jensen, 85 Cal.App.4th at 263*; *Sanchez v. Swissport, Inc., 213 Cal.App.4th 1331, 1338, 153 Cal. Rptr. 3d 367 (2013)*; *see also* Chin & Cathcart ¶ 9:2266.

But, again, Walmart contests the idea that Plaintiff gave it notice, or that it had knowledge, of Plaintiff's purported disability, because of the evidence that Plaintiff never gave it a doctor's note, never requested an accommodation, and never requested a leave of absence. In addition, when Plaintiff reported **[*24]** her absences, she answered "None" as the reason(s) for her absence(s).

With respect to Plaintiff's interactions with Rodriguez and Casillas on December 31, 2018, Walmart colors the incident as Plaintiff merely "casually" informing them that she was going home because she was not feeling well, and further argues that even if Plaintiff had told the women that she was leaving because of pregnancy complications, a one-time incident would not be sufficient to put Walmart on notice that Plaintiff was "disabled by pregnancy." Walmart argues that it is "ludicrous and contrary to law" to assert that such a one-time incident could give rise to interactive process and reasonable accommodation duties.

Both of these claims fail if Plaintiff did not have a "known" disability and Defendant did not "regard" Plaintiff as having a disability. *See* *Cal. Gov't Code § 12926(m)(4)* (including "[b]eing regarded or treated by the employer . . . as having, or having had, any physical condition that makes achievement of a major life activity difficult" as within the definition of "physical disability"); *id.* *§ 12926(o)* ("'Race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, **[*25]** marital status, sex, age, sexual orientation, or military and veteran status' includes *a perception that the person has any of those characteristics*. . . .") (emphasis added); *id.* *§ 12940(m)(1)* (requiring reasonable accommodation for an employee's "known physical or mental disability"); *id.* *§ 12940(n)* (requiring engagement in an interactive process "in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition"); *Cal. Code Regs. tit. 2, § 11065(d)(5)* ("A 'perceived disability' means being 'regarded as,' 'perceived as' or 'treated as' having a disability"); *Doe v. Department of Corrections & Rehabilitation, 43 Cal. App. 5th 721, 738, 255 Cal. Rptr. 3d 910 (2019)*; *id. at 740* ("Information about the nature and extent of Doe's claimed disabilities was crucial to CDCR's ability to determine whether it was able to reasonably accommodate those disabilities. The lack of any evidence indicating Doe provided such information to CDCR is fatal to his interactive process and accommodation claims."); *Featherstone v. S. Cal. Permanente Med. Grp., 10 Cal.App.5th 1150, 1166-67, 217 Cal. Rptr. 3d 258 (2017)*; *Soria, 5 Cal.App.5th at 598*; *Swanson, 232 Cal.App.4th at 971* (indicating that "[t]he employee must initiate the [interactive] process unless his or her disability and the resulting limitations are obvious"); *Prilliman, 53 Cal.App.4th at 949-51*; *see also* *Neisendorf v. Levi Strauss & Co., 143 Cal.App.4th 509, 515, 49 Cal. Rptr. 3d 216 (2006)* ("Because Neisendorf was not eligible for FEHA protection [due to the jury's determination that she was not a "disabled **[*26]** person" under the FEHA], LS&Co. had no accommodation obligation to Neisendorf under the FEHA . . . ."); *id. at 518 n.6*. Yet, this is the summary judgment stage, not trial. As a result, the only question is whether there is a triable issue in this regard. Still, the evidence Plaintiff has presented, faithfully-assessed, does not get her over the hump as to this issue, for the following reason.

"[A]n employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Faust, 150 Cal.App.4th at 887* (considering claim of disability discrimination); *see also* *Soria, 5 Cal.App.5th at 592*. An employer need only know the underlying facts amounting to a disability, not that those facts amount to a disability. *See, e.g.,* *Faust, 150 Cal.App.4th at 887*; *Soria, 5 Cal.App.5th at 593*. "'While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability

---

[9] However, all that Plaintiff has presented in regards to her interaction with Rodriguez is the one conversation which did not include anything more than Plaintiff's need to leave work early on that one day due to her having "complications" and a fever.

is *the only reasonable interpretation of the known facts. Vague or conclusory statements* revealing an *unspecified incapacity* are not sufficient to put an employer on notice of its obligations.'" *Avila v. Continental Airlines, Inc., 165 Cal.App.4th 1237, 1248, 82 Cal. Rptr. 3d 440 (2008)* (discussing employer notice in context of disability discrimination **[*27]** claim) (omitting internal quotation marks) (quoting *Brundage v. Hahn, 57 Cal.App.4th 228, 237, 66 Cal. Rptr. 2d 830 (1997)*) (emphases added); *see Soria, 5 Cal.App.5th at 592*; *see also Doe, 43 Cal.App.5th at 738-39* ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the employee bears the burden to *specifically* identify the *disability* and *resulting limitations*, and to suggest the reasonable accommodations.") (omitting internal quotation marks) (quoting *Scotch v. Art Inst. of Cal., 173 Cal.App.4th 986, 1013, 93 Cal. Rptr. 3d 338 (2009)*). At the same time, it is true that an employee need not "use the term 'disability' or unequivocally invoke the protections of FEHA." *Soria, 5 Cal.App.5th at 593*.

Here, with respect to notice of what she asserts was a qualifying "disability," other than the fact of the existence of her pregnancy, Plaintiff points only to her interactions with Rodriguez and Casillas on December 31, 2018, the day she left work early. In terms of what she reported having *communicated to* Rodriguez and Casillas that day, she says she told them that she was leaving because she "was having complications" and she "felt like if I had a fever" and "something was just not right." *See* DRO ¶ 25; Jilizian Decl., Exh. A, at 230:17-20 ("And then I remember telling — I remember seeing Tina that day also and a [*sic*] Martha. And **[*28]** I told them that I was leaving because I was having complications and that I felt like if [*sic*] I had a fever."); *id.* at 231:1-6 (indicating that she told Rodriguez and Casillas "that I needed to go home because I felt like I have a fever or something was — something was just not right, and that I needed — I actually said, 'I'm sorry that I need to go home.'"). As Defendant argues, Plaintiff points to no information provided to Defendant by any doctor on her behalf, and no communication between her and Defendant's Human Resources group, Defendant's management, or Sedgwick, regarding any details of her condition or need for time off from work, though such evidence is not necessarily required in terms of sufficient provision of notice. *Compare Salgado v. Iqvia, Inc., 459 F.Supp.3d 1318, 1328 (S.D. Cal. 2020)* (citing doctor's notes reflecting postpartum depression diagnosis and opinion that employee should be off work in concluding that triable issue of fact regarding disability was established); *Cortez v. Chipotle Mexican Grill, Inc., No. CV 17-4787-GW (JPRx), 2018 U.S. Dist. LEXIS 227201, 2018 WL 6071093, *10 (C.D. Cal. Aug. 9, 2018)*, *aff'd in part, rev'd in part*, *2021 U.S. App. LEXIS 22534, 2021 WL 3214765 (9th Cir. July 29, 2021)*.

For it to constitute a "physical disability," a condition or impairment must limit a major life activity, meaning it makes the achievement of that major life activity difficult. *See Cal. Gov't Code § 12926(m)(1)(B)(ii)*; *Cal. Code Regs. tit. 2, § 11065(l)(3)*. Working is one such possible life activity. **[*29]** *See Cal. Gov't Code § 12926(m)(1)(B)(iii)*; *Cal. Code Regs. tit. 2, § 11065(l)* (explaining that term "[m]ajor life activities" is to be "construed broadly" and to include "especially those life activities that affect employability or otherwise present a barrier to employment or advancement"); *id. § 11065(l)(3)(D)*.

Understandably, therefore, disability within the meaning of *Government Code subsection 12940* *can* be pregnancy-related, *see, e.g.*, *Sanchez, 213 Cal.App.4th at 1339*,[10] but it must still "limit a major life activity" or make "achievement of a major life activity difficult." *See Cal. Gov't Code § 12926(m)*.[11] "Being unable to work during

---

[10] The question of whether the plaintiff in *Sanchez* — with the Court of Appeal considering the trial court's demurrer-stage ruling — was disabled within the meaning of FEHA was not at issue. She had alleged that she had been diagnosed with a high-risk pregnancy, requiring bedrest, and that she then requested and received a temporary leave of absence from her employer. *See id. at 1334*.

[11] In determining whether the plaintiff was disabled for purposes of a *Government Code subsection 12940(m)* reasonable accommodation claim, the district court in *Salgado v. Iqvia, Inc., 459 F.Supp.3d 1318 (S.D. Cal. 2020)*, cited, at least in part, to the regulatory definition of the phrase "disabled by pregnancy." *See id. at 1327-28*; *see also Cortez v. Chipotle Mexican Grill, Inc., No. CV 17-4787-GW (JPRx), 2018 U.S. Dist. LEXIS 227201, 2018 WL 6071093, * 9-10 (C.D. Cal. Aug. 9, 2018)* (resolving a similar issue in response to argument raised by defendant), *aff'd in part, rev'd in part*, *2021 U.S. App. LEXIS 22534, 2021 WL 3214765 (9th Cir. July 29, 2021)*. Unlike *Government Code section 12945*, that particular phrase is not used in *section 12940*, so its construction is not germane to claims under *subsections 12940(m)* or *12940(n)*.

pregnancy is a disability for the purposes of *section 12940*." *Sanchez, 213 Cal.App.4th at 1340*. Here, Plaintiff *was* able to continue to work, as evidenced by the fact that she *did* continue to work (and was under no instruction from any doctor that she needed to stop working). Although she certainly took days off from work, Plaintiff did not convey any particular information to Walmart about the reason she took days off in January 2019 following her apparent sickness of December 31, 2018-January 1, 2019. *See Avila, 165 Cal.App.4th at 1249* ("Not every illness qualifies as [a] disability.") (omitting quotation marks) (quoting *Mont-Ros v. City of W. Miami, 111 F.Supp.2d 1338, 1352 (S.D. Fla. 2000)*); *compare Soria, 5 Cal.App.5th at 588* (indicating that "mitigating measures" — such as doctor visits/medical appointments — resulting in "[r]epeated or extended absences from work" may qualify an ailment **[*30]** as a disability by constituting a limitation on the major life activity of working); *id. at 589* ("[E]vidence she could not work full time due to *treatment* of her condition plainly established a triable issue of material fact on the issue whether Soria had a disability under FEHA.") (emphasis added). As a result, Walmart's mere awareness that Plaintiff was pregnant or that she was sick for a day or two could not give it sufficient notice for purposes of these claims.[12]

Even assuming that Plaintiff did suffer from a "disability" within the meaning of FEHA, on this presentation Plaintiff cannot establish that Walmart *knew* about any such disability or even "regarded" Plaintiff as being disabled. As noted previously, knowledge of disability is only "imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts" and "[v]ague or conclusory statements revealing an unspecified incapacity" are insufficient. *See Avila, 165 Cal.App.4th at 1248*.

The Court sees little difference between the evidence Plaintiff has alleged here at summary judgment and the allegations the plaintiff made in *King v. Permanente Med. Group, Inc., No. 2:13-1560, 2013 U.S. Dist. LEXIS 134388, 2013 WL 5305907 (E.D. Cal. Sept. 19, 2013)*, though that case concerned notice for purposes of a disability **[*31]** discrimination claim. There, the district court concluded that an employee informing her employer that the employee was "ill," providing a doctor's note stating that she was unable to work for a one-week period, and taking sick leave on three occasions was insufficient to provide notice of a *disability. See 2013 U.S. Dist. LEXIS 134388, [WL] at *1, 7-8*. *Avila* — which, similar to *King*, also included some measure of communication to an employer from the employee's physicians, evidence which is absent here — is likewise comparable to what Plaintiff conveyed here in terms of the vagueness of the information provided. *See 165 Cal.App.4th at 1249*.

In comparison, in *Soria* the plaintiff "specifically told [her supervisor] she had been diagnosed with a potentially cancerous tumor and the doctors wanted to remove it, which would require removal of part of her stomach and esophagus." *Soria, 5 Cal.App.5th at 593*. Comparing this favorably with the unclear information transmitted by the plaintiff in *Avila*, the California Court of Appeal rejected the argument that the employer did not have sufficient notice of the plaintiff's disability. *See id. at 592-93*; *see also Kimbro v. Atl. Richfield Co., 889 F.2d 869, 875 (9th Cir. 1989)* (concluding, in case brought for discrimination/reasonable accommodation under Washington law, that employee's "frequent discuss[ion]" of condition with supervisor, **[*32]** supervisor's knowledge employee was receiving medication and treatment, and fact that supervisor personally witnessed "debilitating effects" of condition was sufficient to show supervisor was "fully aware" that employee's headaches "were a manifestation of a serious medical condition"). Plaintiff has not directed the Court to any other case supporting a conclusion that the information she provided to Rodriguez and Casillas was sufficient to put Walmart on notice of facts about her condition that would rise to the level of a disability (though, as noted previously, there is no obligation for Walmart to be aware that the condition would actually be considered a disability under FEHA).

The facts Plaintiff has presented, construed in her favor, fall squarely within California case law's description of what is *insufficient* to transmit knowledge/awareness of disability. While no particular "magic words" are required, the "fact of disability" is unquestionably not "the only reasonable interpretation of the known facts" considering what

---

[12] Rodriguez or Casillas do not appear to be doctors, or nurses, or to work, or have any experience, in the medical field. There is no reason for the Court or factfinder to infer that they knew that Plaintiff's pregnancy was "high risk" — and/or what that might mean — simply because of knowledge they might have about her age. In any event, Plaintiff continued working without any manifested problem, so it would have been unclear what "major life activity" would have been limited or made more difficult for Plaintiff even if Rodriguez and/or Casillas had that knowledge.

Plaintiff indicates she told Rodriguez and Casillas on December 31, 2018. *See* King, 2013 U.S. Dist. LEXIS 134388, 2013 WL 5305907, at *8 ("Plaintiff's alleged disability is far from 'the only reasonable interpretation **[*33]** of the known facts,' and her factual allegations are therefore insufficient to impute knowledge of her alleged disability onto defendant.") (quoting Brundage, 57 Cal.App.4th at 237). What Plaintiff was *actually* suffering from, or the severity of that suffering (*see* Docket No. 24, at 14:26-15:3) — if it was *more* than she told Rodriguez or Casillas (or Walmart in general) — matters not, if that information was not conveyed to her employer. Without sufficient notice in this regard, Walmart could not have been aware that its reasonable accommodation and interactive process duties had kicked-in. Her claims for violations of those duties therefore fail. The Court will consequently grant Defendant's motion as to Plaintiff's fourth and fifth causes of action.

B. Discrimination and Retaliation

The Court will next discuss Plaintiff's first and second causes of action, setting forth the legal requirements and procedural considerations for both claims first before addressing the parties' arguments concerning them

*1. Discrimination*

Plaintiff's first claim is for discrimination in violation of *California Government Code section 12940*. *Section 12940(a)* of California's Government Code provides in pertinent part that "[i]t is an unlawful employment practice," except in situations not applicable **[*34]** here, "[f]or an employer, because of the . . . physical disability, mental disability, medical condition [or] sex . . . of any person . . . to discharge the person from employment, . . . or to discriminate against the person . . . in terms, conditions, or privileges of employment." *Cal. Gov't Code § 12940(a)*. In her Complaint, Plaintiff alleged that she "was a member of multiple protected classes as a pregnant woman, with a disability, perceived disability and/or medical condition that affected her major life activities and required her use medical leave [*sic*] for treatment." Complaint ¶ 35.

"To prevail under the disparate treatment theory," as Plaintiff attempts to do here, "an employee must show that the employer harbored a discriminatory intent." *Mixon v. Fair Emp't & Housing Comm'n, 192 Cal.App.3d 1306, 1316, 237 Cal. Rptr. 884 (1987)*; *see also* Chin & Cathcart ¶ 9:2128. Courts have established methods to aid in getting at the sometimes-elusive question of intent in this context.

At the summary judgment stage, absent *direct* evidence (of which Plaintiff provides none)[13] of an intent to discriminate against her based upon a protected characteristic (or the perception of any of those characteristics), Plaintiff must proceed by way of the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. *See* *Guz v. Bechtel Nat'l Inc., 24 Cal.4th 317, 354, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)*; *Harris v. City of Santa Monica, 56 Cal.4th 203, 214, 152 Cal. Rptr. 3d 392, 294 P.3d 49 (2013)*; *Trop v. Sony Pictures Entm't Inc., 129 Cal.App.4th 1133, 1144-45, 29 Cal. Rptr. 3d 144 (2005)*; *see also* *Dep't of Fair Employment & Housing v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)* (" **[*35]** *Lucent Techs.*") ("'California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment' because 'such claims must usually be proved circumstantially.'") (quoting *Guz, 24 Cal.4th at 354*); *Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011)* ("[W]hen entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule.") (quoting *Dawson v. Entek Int'l, 630 F.3d 928, 934 (9th Cir. 2011)* and *Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001)*) (omitting internal quotation marks). This first requires that she establish a *prima facie* case of discrimination. *See, e.g.,* *Alamillo v. BNSF Ry. Co., 869 F.3d 916, 920 (9th Cir. 2017)*.

[13] "Direct evidence is evidence which proves a fact" — *i.e.*, discrimination — "without inference or presumption." *Trop v. Sony Pictures Entm't Inc., 129 Cal.App.4th 1133, 1145, 29 Cal. Rptr. 3d 144 (2005)*; *see also* *Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005)*; *Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)*. It "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Dominguez-Curry, 424 F.3d at 1038*.

To establish a *prima facie* case of discrimination at the summary judgment stage, Plaintiff must offer proof: (1) that she belongs to a class of protected individuals; (2) that she was qualified for her position or performed it satisfactorily, with or without reasonable accommodation; (3) that she suffered an adverse employment action; and (4) that Walmart treated her differently than a similarly situated employee who does not belong to the same protected class as Plaintiff or that other circumstances surrounding the adverse employment action give **[*36]** rise to an inference of discrimination/suggest a discriminatory motive. *See McDonnell Douglas, 411 U.S. at 802*; *Guz, 24 Cal.4th at 355*; *Glynn v. Superior Court, 42 Cal.App.5th 47, 53 n.1, 254 Cal. Rptr. 3d 772 (2019)*; *Scotch, 173 Cal.App.4th at 1004*; *Avila, 165 Cal.App.4th at 1246*; *Alamillo, 869 F.3d at 920*; *Zeinali, 636 F.3d at 552*. The burden on Plaintiff at this first *McDonnell Douglas* step is slight. *See Schechner v. KPIX-TV, 686 F.3d 1018, 1022 (9th Cir. 2012)* ("The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.") (omitting quotation marks) (quoting *Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)*); *Wills v. Superior Court, 195 Cal.App.4th 143, 159, 125 Cal. Rptr. 3d 1 (2011)* ("The burden in this stage is not onerous and the evidence necessary to satisfy it is minimal.") (omitting internal quotation marks); *Arteaga v. Brink's, Inc., 163 Cal.App.4th 327, 353, 77 Cal. Rptr. 3d 654 (2008)* (describing plaintiff's *prima facie* case burden under *McDonnell Douglas* as "fairly minimal").

If Plaintiff succeeds in proving her *prima facie* case, there is a presumption that Walmart undertook the challenged employment action for a discriminatory reason. *See McDonnell Douglas, 411 U.S. at 802*; *Guz, 24 Cal.4th at 355*. The burden then shifts to Walmart to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *See Guz, 24 Cal.4th at 355-56*; *Zeinali, 636 F.3d at 552*.

Legitimate reasons in this context are reasons that are facially unrelated to prohibited bias, and therefore, if true, would preclude a finding of discrimination. *See Guz, 24 Cal.4th at 358*; *see also* Chin & Cathcart ¶ 7:415. An employer's reasons, if honestly-believed and non-discriminatory on their face, may preclude a finding **[*37]** of discrimination, even if such reasons are "foolish or trivial or baseless." *See* Chin & Cathcart ¶ 7:417 (quoting *Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)*); *Guz, 24 Cal.4th at 358* ("[I]f nondiscriminatory, Bechtel's true reasons need not necessarily have been wise or correct. While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.") (omitting internal citation); *Cornell v. Berkeley Tennis Club, 18 Cal.App.5th 908, 935, 227 Cal. Rptr. 3d 286 (2017)* (noting that the plaintiff "properly recognizes that the issue is not whether she actually planted the recorder but whether the Club honestly believed that she did so"); *King v. United Parcel Serv., Inc., 152 Cal.App.4th 426, 432, 60 Cal. Rptr. 3d 359 (2007)* ("For purposes of establishing the moving employer's initial burden of proof, it does not matter whether plaintiff actually did commit an integrity violation as long as UPS honestly believed he did.").

"[A] defendant meets its resulting burden of production" at this second step under *McDonnell Douglas* "by 'introduc[ing] evidence, which, *taken as true*, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Bodett v. CoxCom, Inc., 366 F.3d 736, 742 (9th Cir. 2004)* (emphasis added) (quoting *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*). "In other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does *not* require **[*38]** that the court make a credibility determination on the defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that evidence." *Id.* (emphasis added).

Should Walmart carry this burden at the second *McDonnell Douglas* step, the presumption of discrimination disappears and Plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases. *See Guz, 24 Cal.4th at 356*. In other words, Plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Walmart were *not* its true reasons, but merely *a pretext for discrimination. See id.* ; *Faust, 150 Cal.App.4th at 886* ("Once the employer has [carried its burden,] the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated."); *see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*; *Rashdan v. Geissberger, 764 F.3d 1179, 1182 (9th Cir. 2014)*; *Zeinali, 636*

F.3d at 552. Thus, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of Plaintiff's protected **[*39]** status (using a "substantial factor" analysis, discussed further *infra*).

However, at this third stage, creation of "only a weak issue of fact as to whether the employer's reason was untrue" in the face of "uncontroverted independent evidence that no discrimination has occurred" will not suffice to defeat summary judgment. *See* Guz, 24 Cal.4th at 362 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)); *see also* Loggins v. Kaiser Permanente Int'l, 151 Cal.App.4th 1102, 1113, 60 Cal. Rptr. 3d 45 (2007) ("[A]n employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce substantial evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual."); Chin & Cathcart ¶ 7:445. In other words, "summary judgment for the employer may . . . be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." Guz, 24 Cal.4th at 362. *But see* Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1127 (9th Cir. 2009) (stating, in context of Title VII claim, that "[t]he amount of evidence required" to show that "there is a genuine dispute of material fact regarding pretext" is "minimal").

Some courts have expressed this **[*40]** burden at the third McDonnell Douglas stage as requiring "substantial evidence" of pretext, at least where the plaintiff only has circumstantial evidence. *See* Swanson, 232 Cal.App.4th at 965; Serri v. Santa Clara Univ., 226 Cal.App.4th 830, 865, 172 Cal. Rptr. 3d 732 (2014); DeJung v. Superior Court, 169 Cal.App.4th 533, 553, 87 Cal. Rptr. 3d 99 (2008); Loggins, 151 Cal.App.4th at 1113; Martin v. Lockheed Missiles & Space Co., 29 Cal.App.4th 1718, 1735, 35 Cal. Rptr. 2d 181 (1994). Others have noted that circumstantial evidence of pretext must be "specific" and "substantial." *See* Batarse v. Serv. Employees Int'l Union Local 1000, 209 Cal.App.4th 820, 834, 147 Cal. Rptr. 3d 340 (2012); King, 152 Cal.App.4th at 433; Morgan v. Regents of Univ. of Cal., 88 Cal.App.4th 52, 69, 105 Cal. Rptr. 2d 652 (2000); Lucent Techs., 642 F.3d at 746; EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009); Coghlan v. Am. Seafoods Co., LLC, 413 F.3d 1090, 1095 (9th Cir. 2005); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998). Others have commented on the lack of clarity in the case law on this point. *See* Davis v. Team Elec. Co., 520 F.3d 1080, 1091 & n.6 (9th Cir. 2008) (noting confusion in the case law whether "specific" and "substantial" circumstantial evidence is required or whether "a lesser amount should suffice"); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 (9th Cir. 2006).

Plaintiff may attempt to satisfy her burden at the third step by proving that the legitimate reasons Walmart offered were dishonest/false (factually untrue), creating an inference that those reasons were merely a pretext for discrimination. *See* Guz, 24 Cal.4th at 356; *see also* Chin & Cathcart ¶ 7:435. However, a "plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." King, 152 Cal.App.4th at 433; *see also* Diego v. City of L.A., 15 Cal.App.5th 338, 356, 223 Cal. Rptr. 3d 173 (2017); Merrick v. Hilton Worldwide, Inc., 867 F.3d 1139, 1147 (9th Cir. 2017) (noting that an employee-plaintiff "'must do more than establish a prima facie case and deny the credibility of [the employer-defendant's] witnesses'").

Because a "wrong" or "mistaken" reason is not the same as a false or pretextual **[*41]** reason, some California decisions have described a plaintiff's approach in this regard as requiring demonstration of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Sandell v. Taylor-Listug, Inc., 188 Cal.App.4th 297, 314, 115 Cal. Rptr. 3d 453 (2010); *see also* Guz, 24 Cal.4th at 363 ("The authorities suggest that, in an appropriate case, an inference of dissembling may arise where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions."); Reeves v. MV Transp., Inc., 186 Cal.App.4th 666, 674, 111 Cal. Rptr. 3d 896 (2010); Chin & Cathcart ¶ 7:462. At the same time, though "[p]roof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons," "an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons."

*Guz, 24 Cal.4th at 360-61*; *see also* *Arnold v. Dignity Health, 53 Cal.App.5th 412, 426, 266 Cal. Rptr. 3d 253 (2020)* ("'Logically, disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably **[*42]** give rise to an inference that the motivation was a prohibited one.'") (quoting *McGrory v. Applied Signal Tech., Inc., 212 Cal.App.4th 1510, 1531-32, 152 Cal. Rptr. 3d 154 (2013)*); *Slatkin v. Univ. of Redlands, 88 Cal.App.4th 1147, 1157, 106 Cal. Rptr. 2d 480 (2001)*; Chin & Cathcart ¶ 7:438. In the end, however, evidence that an employer's nondiscriminatory reasons given are false, coupled with evidence supporting the *prima facie* case, *may* be enough to survive summary judgment. *See* *Guz, 24 Cal.4th at 356*; *see also* Chin & Cathcart ¶ 7:437.

Summing-up the process, "'[t]o prevail on summary judgment [on a disability discrimination claim under FEHA], [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment.'" *Lucent Techs., 642 F.3d at 745* (quoting *Avila, 165 Cal.App.4th at 1247*); *see also* *Galvan v. Dameron Hospital Assn., 37 Cal. App. 5th 549, 559, 250 Cal. Rptr. 3d 16 (2019)* (indicating that, at summary judgment, moving-party employer has initial burden to present admissible evidence showing one or more elements of *prima facie* case is lacking or establishing employment action was based on legitimate, nondiscriminatory factors before burden shifts to employee non-movant); *King, 152 Cal.App.4th at 432* ("UPS, as the party moving for summary judgment, bears the initial burden of demonstrating that at least one of the elements of plaintiff's employment discrimination claim is without merit."). **[*43]**

Before describing the parties' arguments, however, a further comment is necessary with respect to the "substantial factor" analysis referenced *supra*. An individual's protected characteristic need only have been a "substantial factor" in the adverse employment action for *section 12940(a)* to be implicated. *See* *Horsford v. Bd. of Trs. of Cal. State Univ., 132 Cal.App.4th 359, 375, 33 Cal. Rptr. 3d 644 (2005)*; *see also* Chin & Cathcart ¶¶ 7:350, 7:489.5. This "substantial factor" requirement obviously means that Plaintiff must be able to show that Walmart *knew* that Plaintiff had (or perceived Plaintiff as having) a protected characteristic. *See* *Soria, 5 Cal.App.5th at 590-91* ("As part of showing that discriminatory animus was a substantial cause of the adverse employment action, an employee must show that the employer had knowledge of the employee's protected characteristic."); *Avila, 165 Cal.App.4th at 1247* ("'An adverse employment decision cannot be made because of a disability, when the disability is not known to the employer.'") (quoting *Brundage, 57 Cal.App.4th at 236*) (omitting internal quotation marks); *Alamillo, 869 F.3d at 920* ("BNSF did not know that Alamillo was disabled when the decision to initiate disciplinary proceedings was made, and Alamillo concedes that BNSF "disregarded" his disability when it decided to terminate him."); *see also* *Prue v. Brady Co./San Diego, Inc., 242 Cal.App.4th 1367, 1378, 196 Cal. Rptr. 3d 68 (2015)*; *Avila, 165 Cal.App.4th at 1248* ("As noted above, to show that Continental acted with discriminatory **[*44]** intent, plaintiff was required to produce evidence that the Continental employees who decided to discharge him knew of his disability."); *Alamillo, 869 F.3d at 920* ("Alamillo's claim fails at the first step — establishing a prima facie case — because the summary judgment record contains no evidence that his OSA was 'a substantial motivating reason for' BNSF's decision to terminate him."); Chin & Cathcart ¶ 9:2296.6 ("To show disparate treatment (discriminatory intent), plaintiff must show that the employer knew or should have known that plaintiff had a disability."). As discussed *supra* in connection with Plaintiff's reasonable accommodation and interactive process claims, Walmart's knowledge of any "disability" was lacking here.

As a result, for Plaintiff to prevail on this claim, she must rely on a protected characteristic *other than* her purported disability. Crucial here, therefore, is the observation that "sex," as used in *Government Code subsection 12940(a)*, is defined to include "[p]regnancy or medical conditions related to pregnancy." *Cal. Gov't Code § 12926(r)(1)*; *Cal. Code Regs. tit. 2, § 11030(c)*.

*2. Retaliation*

Plaintiff's second cause of action is for retaliation in violation of *California Government Code section 12940*. It is an unlawful employment practice for any employer "to discharge, expel, or otherwise discriminate against any **[*45]**

person because the person has opposed any practices forbidden under this part." *Cal. Gov't Code § 12940(h)*; *see also Cal. Code Regs. tit. 2, § 11021* (further explaining retaliation prohibition and giving partial definition to "[o]pposition to practices prohibited by the Act"). This is the normal statutory source of a FEHA retaliation claim. *See, e.g.*, Chin & Cathcart ¶ 5:1462.[14] With respect to this claim, Plaintiff alleged that she "engaged in the protected activities of exercising her right of reporting her pregnancy, disabilities and requesting accommodations." Complaint ¶ 46.

A retaliation claim under FEHA is likewise governed by the *McDonnell Douglas* process. Thus, Plaintiff has to establish a *prima facie* case of retaliation, with Walmart then given the opportunity to articulate a legitimate non*retaliatory* explanation for its acts, finally leading to Plaintiff needing to show that Walmart's proffered explanation is merely a pretext for an illegal termination. *See Flait v. N. Am. Watch Corp., 3 Cal.App.4th 467, 476, 4 Cal. Rptr. 2d 522 (1992)*. A *prima facie* case of retaliation under FEHA requires Plaintiff to show that she engaged in a protected activity, Walmart subjected her to adverse employment action, and there is a causal link between the protected activity and Walmart's action. *See Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005)*; *Flait, 3 Cal.App.4th at 476*.

*3. The Parties' Arguments and **[*46]** the Court's Analysis*

With respect to Plaintiff's discrimination and retaliation claims, Walmart argues that there is no evidence of any link between Plaintiff's pregnancy and her separation/termination. Thus, it asserts that Plaintiff cannot satisfy the final element of the *prima facie* claim for either of the two claims. Walmart then contends that it had a legitimate reason for Plaintiff's termination — assessment of her situation under its Attendance Policy. It also argues that Plaintiff cannot present sufficient evidence of pretext because she has only her own judgment as to whether Walmart should have terminated her under the circumstances.

In response, Plaintiff highlights her view of the evidence as demonstrating that she was not terminated previously, at a time when she had excessive absences but was *not* pregnant. Thus, Plaintiff argues that she can satisfy the final element of her discrimination and retaliation claims because Walmart's "violation of its own policy while Plaintiff was pregnant, juxtaposed against a repeated pattern and practice of non-enforcement of that policy when Plaintiff was not pregnant, is evidence of discrimination and retaliation." Docket No. 24, at 8:15-17. **[*47]**

As to the "violation" of Walmart's policy, Plaintiff appears to be asserting — specifically with respect to her departure from work on December 31, 2018, and her absence from work the following day, January 1, 2019 — that Walmart did not apply that portion of its policy which provides that "Authorized" absences are not considered part of an employee's attendance record, and that an authorized absence includes absences due to pregnancy disability, because those absences are protected by law. But in making that last contention, Plaintiff relies on *California Government Code § 12945(a)(1)*, which concerns allowing employees "disabled by pregnancy" to take periods of leave. She contends that she was "disabled by pregnancy" because "she suffered from severe morning sickness and needed to take time off for prenatal care." Docket No. 24, at 9:1-3. Plaintiff points to the fact that she had a "doctor's note related to a prenatal care visit" "in her possession" on the day of her termination, asserts she was deemed high-risk because she was pregnant at 38 years of age, and "experienced pregnancy-related complications during her third trimester that caused her to miss several days of work" in addition to suffering severe morning-sickness. **[*48]** *Id.* at 9:4-11.

In terms of Walmart's awareness of these circumstances, Plaintiff directs the Court to one witness's confirmation that it was common to see Plaintiff sit down occasionally during her shift; Plaintiff's characterization of her own testimony as being that she told Rodriguez and Casillas that she was leaving work on December 31, 2018 because

---

[14] An employer is also prohibited from retaliating or discriminating against a person because the person has requested accommodation. *See id. § 12940(m)(2)*. As noted *supra*, however, the Court has determined that any "reasonable accommodation" never came into play here because Plaintiff never sufficiently notified Walmart of any disability that required a reasonable accommodation. As a result, any viable retaliation claim in this case must be associated with subsection 12940(h).

she was having pregnancy-complications and "something was just not right"; and that Plaintiff informed Rodriguez that "she was still experiencing severe pregnancy-related symptoms and would not be able to work the following day on January 1, 2019."[15] *Id.* at 9:18-26.

As discussed further *infra* in connection with Plaintiff's *Government Code section 12945* claim and *supra* in connection with her reasonable accommodation and interactive process claims, she was not "disabled by pregnancy" within the meaning of the applicable regulatory definition of that claim, and she did not sufficiently give Walmart notice of any "disability." To Walmart, these conclusions mean that there was no way for it to deem Plaintiff's absences "Authorized," and therefore it did not misapply its own Attendance Policy.

In any event, in making her arguments, Plaintiff appears to be asserting, **[*49]** at least in part, that Walmart *incorrectly* applied its attendance policy. *See id.* at 10:18-21; *id.* at 12:24-27, 13:3-7 (same, addressed to pretext). As set forth above, this is not an acceptable basis for a plaintiff to challenge, or for a court to find, an employer's employment decision as/to be discriminatory. *See, e.g., Guz, 24 Cal.4th at 358*; *King, 152 Cal.App.4th at 433*. Yet there also appears to be at least the *slightest* suggestion that Plaintiff is also challenging the *truthfulness* of Walmart's assertion that it was the Attendance Policy violation that prompted its decision. *See* Docket No. 24, at 10:13-15.

But whether it is proper to characterize that attack as a "truthfulness" attack or not, the evidence of Walmart's failure or refusal to terminate Plaintiff for earlier instances where she exceeded the allowable number of "occurrences" is evidence that supports Plaintiff's case. The Court believes this evidence is sufficient to satisfy both Plaintiff's initial burden of demonstrating her *prima facie* discrimination case's final element and to get over the hump in terms of a sufficient showing of pretext. While some might argue that it is not "substantial" enough to demonstrate pretext, the Court believes that it is enough to **[*50]** get Plaintiff to a jury on this question/claim (perhaps especially because of the continuing struggle in the case law in terms of describing just what level of evidence is needed from a plaintiff at the pretext stage).

In challenging Plaintiff's assertions concerning its failure to terminate her for any earlier instance when she asserts she exceeded the allowable number of "occurrences," Walmart relies in its Reply on certain factual assertions that were *not* presented in its original motion papers — that "the IVR Call List does not track attendance occurrences — it simply logs the absence and the reason for the absence, if provided," and that "[a]ny number of [Plaintiff's] late arrivals or absences may have been Authorized under the Attendance Policy." Docket No. 35, at 3:10-15; *see also id.* at 4:6-12 (asserting that Plaintiff used protected PTO to clear occurrences in prior six-month period, whereas she no longer had available PTO at time of termination); DRO ¶¶ 7-8, 10, 12, 14, 16. But, on summary judgment, a court is to determine whether a moving party has proved the opposing party's inability to demonstrate an essential element of her case (or "pointed out" a gap in the case/necessary **[*51]** showing), and is supposed to view all evidence and draw all inferences in the light most favorable to the non-moving party. If a moving party waits until its Reply to add new facts into the mix in an attempt to dispute or disprove the opposing party's assertions, a court cannot ensure that those facts are indeed undisputed, especially where it is construing evidence in a nonmoving party's favor.[16]

In the end, there is no dispute that Plaintiff was *pregnant*, or that Walmart knew about Plaintiff's pregnancy. *See Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996)* (explaining that *prima facie* case of pregnancy discrimination under Title VII requires "critical element" of employer's knowledge of membership in protected class); Chin & Cathcart ¶ 7:295. As noted previously, that condition amounts to a protected characteristic

---

[15] This latter assertion is not reflected by the testimony Plaintiff cites as support for it. *See, e.g.*, DRS ¶ 39; Jilizian Decl., Exh. A., at 103:2-12, 105:17-25.

[16] It is clear from Defendant's opening brief that it had reason to know that Plaintiff intended to rely upon Walmart's past-practices with respect to application of its Attendance Policy to Plaintiff. *See* Docket No. 16, at 18:7-9 ("Plaintiff seemingly attempts to establish pretext by arguing that, *in her own judgment*, Walmart should have overlooked her attendance violations, *because it had done so in the past*: . . . .") (first italics in original; second italics added).

because of its inclusion within the definition of "sex." *See* Cal. Gov't Code § 12926(r)(1); *id.* § 12940(a); Chin & Cathcart ¶ 7:194. Plaintiff has presented evidence that she was terminated — purportedly for violating Walmart's Attendance Policy, the source of Walmart's proffered legitimate, non-discriminatory reason — only *after* she became (and Walmart knew she was) pregnant, thereby putting to rest any **[*52]** contention that there is *no evidence* of any link between Plaintiff's pregnancy and her separation/termination for purposes of Plaintiff's satisfaction of her *prima facie* discrimination case. As to pretext, Plaintiff has presented evidence that suggests the purported Attendance Policy-based reason for her termination was false because she had not been fired on multiple other occasions when she had run afoul of that policy, and that the reason given was not just false, but that the *actual* reason was discrimination-based because the only difference between when she was *not* terminated for violation of that policy and when she *was* is that, in the latter circumstance, she was *pregnant*. In other words, Plaintiff has evidence not just that *she* thinks she should not have been terminated for violating Walmart's Attendance Policy in this instance (a position that would carry no weight in a proper analysis, *see, e.g.,* Guz, 24 Cal.4th at 358; King, 152 Cal.App.4th at 433), but that *Walmart* — reflected in its own prior history *vis a vis* Plaintiff — has demonstrated its own conclusion that violation of this policy does not inexorably lead to termination. Walmart may be correct that Plaintiff's reliance on that evidence is unjustified, but it has **[*53]** not demonstrated — at least not in a way that is sufficient for summary judgment purposes — the unquestioned truth of that position at this point in time.

In sum, the Court does not believe that Defendant's position regarding Plaintiff's discrimination claim necessarily prevails. As such, as to that claim, the Court will deny its motion.

As for Plaintiff's second cause of action, Plaintiff correctly observes that Defendant's argument regarding her retaliation claim is limited — so far as the *prima facie* case goes — to Plaintiff's ability to demonstrate the third element of her *prima facie* retaliation case. *See* Docket No. 16, at 15:25-27. But that third element deals with whether Plaintiff can demonstrate a causal connection between the *protected activity* in question and Walmart's action. It therefore necessarily requires Plaintiff to demonstrate that there *is* a protected activity.

It is not at all clear what that protected activity is here. If Plaintiff's protected activity consists of her "[a]bsences due to pregnancy disability" because they are "protected by law," Docket No. 24, at 8:24-25, Plaintiff has failed to demonstrate that she suffered from a "disability" (as discussed *supra)* ***[*54]*** or that she was "disabled by pregnancy" (as discussed *infra)* or that, even if either of these things were true, Walmart had knowledge/notice of them (a causal link problem, *see* Morgan, 88 Cal.App.4th at 70, even if not a protected activity problem). The Court can discern no other hint of a protected activity here (and if Plaintiff asserts it consisted of what she believed was a request — or requests — for reasonable accommodation, the Court has already explained why her communications could not be understood in that regard). *See* Moore v. Regents of Univ. of Cal., 248 Cal.App.4th 216, 247-48, 206 Cal. Rptr. 3d 841 (2016) (indicating that notifying an employer of medical status is not a protected activity on which a retaliation claim may be based, even if that medical status constitutes a disability under FEHA).

For this reason, it would appear that Plaintiff's retaliation claim will fail at the first McDonnell Douglas step, and there is no reason for the Court to have to consider whether Defendant has a legitimate nonretaliatory explanation, or whether Plaintiff can sufficiently demonstrate that explanation is pretextual.

The Court will grant Defendant's motion with respect to Plaintiff's second cause of action.

C. Failure to Prevent

It is also an unlawful employment practice in California for an employer "to fail to take **[*55]** all reasonable steps necessary to prevent discrimination . . . from occurring." Cal. Gov't Code § 12940(k). Plaintiff's third claim for relief is based on this form of alleged wrong. Walmart's only argument in its motion with respect to this claim is based upon its belief that it would be successful on this motion with respect to Plaintiff's first and second claims — that without a viable underlying discrimination or retaliation claim, Plaintiff cannot demonstrate a failure to prevent discrimination/retaliation claim. Plaintiff appears to agree with the proposition that a viable underlying discrimination/retaliation claim is necessary to a failure-to-prevent claim having a chance of success. *See* Docket No. 24, at 13:19-21. This is correct. *See* Dickson v. Burke Williams, Inc., 234 Cal.App.4th 1307, 1315-16, 184 Cal.

Rptr. 3d 774 (2015); Trujillo v. N. Cty. Transit Dist., 63 Cal.App.4th 280, 289, 73 Cal. Rptr. 2d 596 (1998); *see also* Chin & Cathcart ¶ 7:672.

In light of the Court's analysis above, Plaintiff cannot demonstrate retaliation, but her discrimination claim survives. Consequently, because Walmart does not actually move for summary judgment with respect to the question of whether it *actually took* sufficient steps to prevent discrimination, Plaintiff's third cause of action to the extent it concerns a claim for failure to prevent discrimination survives this motion. The Court therefore **[*56]** grants Defendant's motion in part and denies it in part in connection with this claim.

D. *Sections 12945/12945.2*

Plaintiff's sixth and seventh claims for relief are for violation of *California Government Code § 12945* (pregnancy disability leave) and violation of the California Family Rights Act ("CFRA"), *California Government Code §§ 12945.2 et seq.*, respectively. Plaintiff alleged in her Complaint that she exercised her right to pregnancy disability leave and medical leave under *section 12945* and the CFRA, but was not provided that leave, and was retaliated against for her attempt to exercise that right. *See* Complaint ¶¶ 81-85, 95-100.

*California Government Code subsection 12945(a)(1)*, part of the California Pregnancy Disability Leave Law, makes it an "unlawful employment practice" for an employer to refuse to allow "an employee *disabled by pregnancy*, childbirth, or a related medical condition" to take leave for a "reasonable period of time" of up to potentially four months and to return to work thereafter, "as set forth in the commission's regulations," *Cal. Gov't Code § 12945(a)(1)* (emphasis added), or for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section," *id. § 12945(a)(4)*. *See also generally* Chin & Cathcart ¶ 12:1420.

*Government Code subsection 12945.2(a)*, meanwhile, makes it an "unlawful employment practice" for **[*57]** certain employers to refuse the request of certain employees "to take up to a total of 12 workweeks in any 12-month period for family care and medical leave," with the council to "adopt a regulation specifying the elements of a reasonable request." *Cal. Gov't Code § 12945.2(a)*. It is also an unlawful employment practice for an employer to discharge or discriminate against an individual because of the individual's exercise of the right to family care and medical leave provided by subsection 12945.2(a), or "to interfere with, restrain, or deny the exercise of, or the attempt to exercise" any right provided under subsection 12945.2. *See id. §§ 12945.2(k)(1)*, *12945.2(q)*.

For both Plaintiff's sixth and seventh claims, Defendant contends that Plaintiff never even requested leave. As to the sixth claim in particular, it adds that being "disabled by pregnancy" requires the opinion of Plaintiff's health care provider, and her doctor — as Plaintiff admits, *see* DRS ¶¶ 32, 34 — never placed any restrictions on Plaintiff's work. Plaintiff argues in response that her "degree of morning sickness" amounted to "disabled by pregnancy" under *section 12945*. Thus, she looks to her interaction with Rodriguez on December 31, 2018 as support for a claim under *Government Code § 12945* in general, and *subsections 12945(a)(3)(A)* and *12945(a)(4)*, in particular.

Defendant points **[*58]** to *California Code of Regulations, Title 2, section 11035(f)*, for the definition of "disabled by pregnancy." *See also* Chin & Cathcart ¶ 12:1505; *Salgado v. Iqvia, Inc., 459 F.Supp.3d 1318, 1327-28 (S.D. Cal. 2020)* (citing regulatory definition of "disabled by pregnancy" in context of reasonable accommodation claim under *Government Code § 12940(m)*); *Fu v. Walker Parking Consultants, 796 F.Supp.2d 1148, 1158 (N.D. Cal. 2011)* (quoting predecessor regulation); *Sasco Elec. v. Fair Emp't & Housing Comm'n, 176 Cal.App.4th 532, 543 n.6, 97 Cal. Rptr. 3d 482 (2009)* (same). That definition is as follows:

> A woman is "disabled by pregnancy" if, *in the opinion of her health care provider*, she is unable because of pregnancy to perform any one or more of the essential functions of her job or to perform any of these functions without undue risk to herself, to her pregnancy's successful completion, or to other persons. An employee also may be considered to be disabled by pregnancy if, *in the opinion of her health care provider*, she is suffering from severe morning sickness or needs to take time off for: prenatal or postnatal care; bed rest; gestational diabetes; pregnancy-induced hypertension; preeclampsia; post-partum depression; childbirth; loss or end of pregnancy; or recovery from childbirth, loss or end of pregnancy. The preceding list of conditions is intended to

be non-exclusive and illustrative only. Nothing in this Article shall exclude a transgender individual who is disabled by pregnancy.

*Cal. Code Regs. tit. 2, § 11035(f)* (emphases added). Here, **[*59]** Plaintiff admits that this regulation applies, *see* Docket No. 24, at 9:1-4, but has not provided evidence that, *in the opinion of her health care provider*, any of this was true for her. That *she* may have had such an opinion does not matter for purposes of this definition. The only medical record or evidence from a health care provider she has submitted on this point merely indicates — as of January 24, 2019 — that she was pregnant and suggests that she was under supervision for high-risk pregnancy. *See* Declaration of Nayri Jilizian in Support of Plaintiff's Opposition to Walmart Inc's Motion for Summary Judgment, Exh. H (Docket No. 29-8).

Plaintiff plainly has not submitted any evidence that she met the definition of "disabled by pregnancy," required for her to prevail under *Government Code subsection 12945(a)(1)*. Although "disabled by pregnancy" is not a term used in *subsection 12945(a)(3)(A)*, involving refusals to provide reasonable accommodation to an employee "for a condition related to pregnancy," that subsection similarly applies to requests made by an employee "with the advice of the employee's health care provider." *Cal. Gov't Code § 12945(a)(3)(A)*; *see also* *Gonzales v. Marriott Int'l, Inc., 142 F.Supp.3d 961, 969 & n.38 (C.D. Cal. 2015)* (indicating that the accommodation was requested with the advice of a health care provider is one of the essential **[*60]** elements of a pregnancy discrimination claim for failure to accommodate under *Government Code section 12945(a)(3)(A)*); *Cal. Code Regs. tit. 2, § 11040(a)(1)* (providing that it is unlawful for employer to deny a request for reasonable accommodation made by an employee "affected by pregnancy" if, among other things, "[t]he employee's request is based on the advice of her health care provider that reasonable accommodation is medically advisable"); Chin & Cathcart ¶ 7:301, at 7-83. Again, evidence of the "advice" of Plaintiff's health care provider — bearing upon the subject of reasonable accommodation or otherwise — is absent here. Because she cannot sustain any claim under either subsections 12945(a)(1) or *12945(a)(3)(A)* and those are the only two subsections of *section 12945* she asserts any primary rights under, her attempt to make out a claim under subsection 12945(a)(4) — which only deals with interference, restriction, or denial of any other rights under *section 12945* — necessarily also fails. Plaintiff, therefore, cannot prevail in connection with her sixth claim for relief, and Defendant's motion is granted with respect to that claim.

The same statutory and regulatory limitations/requirements do not apply to Plaintiff's claim under *Government Code section 12945.2*/CFRA, however. As to that claim, Walmart is left with its argument that Plaintiff never requested leave. For **[*61]** some reason, the Court observes no argument directed to *Government Code § 12945.2*, in particular, in Plaintiff's Opposition brief.

The language of *subsection 12945.2(a)* unquestionably requires a "request." *See also Cal. Code Regs. tit. 2, § 11091*; *see generally* Chin & Cathcart ¶ 12:835. While "[w]hether notice is sufficient under CFRA is a question of fact," *Avila, 165 Cal.App.4th at 1255*, Plaintiff appears to have no evidence of any leave request — certainly no evidence of any request that was *denied. See, e.g.*, *id.* (concluding that "call[ing] in sick" is insufficient by itself to put employer on notice of need for CFRA leave).[17] In fact, it appears to be Plaintiff's position that she was *unaware* of any leave rights. *See, e.g.*, Docket No. 24, at 15:15-19 (criticizing Rodriguez for, among other things, "not inform[ing] Plaintiff of her right to take intermittent leave . . . and that the leave administered by Sedgwick was not exclusively for post-partum"). How she would have made a "request" for a right she purports not have known about is decidedly unclear. Absent a request for leave, it does not appear that Plaintiff can sustain a claim under *section 12945.2*/*subsection 12945.2(a)*.[18] *See Hortobagyi v. Columbia Sussex Mgmt., LLC*, No. CV 14-0244 DOC (FFMx),

[17] *Avila* includes the summary statement that "[u]nder CFRA and the implementing regulations, an employer should not be able to terminate for absences a worker known to be sick or injured without first determining if that employee qualifies for and wants leave." *165 Cal.App.4th at 1258*. But the "known to be sick or injured" comment has to relate back to the CFRA's requirement of a "request," else *Avila* simply attempts a non-legislative fundamental alteration of CFRA-imposed obligations in this regard. Rodriguez and Casillas may have known that Plaintiff was not feeling well when she left work on December 31, 2018, but Plaintiff makes no argument — indeed, she makes no argument related to her *section 12945.2* claim at all — that this amounted to a "request" within the meaning of the CFRA or case law interpreting it. Moreover, as noted *supra* Footnote 13, Plaintiff has not supported, with evidence, the contention that she told Rodriguez anything about needing to be absent on January 1, 2019.

2015 WL 12683950, *9 (C.D. Cal. Mar. 5, 2015). Therefore, the Court grants Walmart's motion with respect to Plaintiff's seventh claim for relief as well.

E. Wrongful Termination **[*62]** and Declaratory Relief

Plaintiff's eighth cause of action is for wrongful termination in violation of the public policy of the State of California, and her tenth cause of action is for a declaratory judgment under *California Code of Civil Procedure § 1060*.

Similar to Plaintiff's third claim for failure to prevent discrimination/retaliation, Defendant's only argument concerning Plaintiff's eighth and tenth claims is that they are entirely derivative. As to the eighth claim in particular this is due to the fact that Plaintiff never identified any public policy other than those connected to discrimination and retaliation.[19] Plaintiff effectively confirms this in her Opposition, identifying her belief that she was terminated based on her pregnancy and pregnancy-related disabilities as the violation(s) of public policy(ies) in question. As to the tenth claim, Plaintiff simply argues that it is improper to dispose of a declaratory judgment claim "so long as any one claim survives, since an actual controversy will exist." Docket No. 24, at 19:6-8.

Under the reasoning set forth *supra*, Plaintiff's discrimination claim will survive this motion. In light of the fact that Walmart's argument as to this claim is based only on the **[*63]** failure of the underlying discrimination/retaliation claims, therefore, the Court will grant its motion in part and deny it in part as to Plaintiff's wrongful termination claim. *See, e.g., Zamora v. Sec. Indus. Specialists, Inc., 71 Cal.App.5th 1, 62, 285 Cal. Rptr. 3d 809 (2021)*.

As to Plaintiff's claim for a declaratory judgment, while there is a certain aspect of her claim that will survive this motion, and therefore an argument limited only to the fact that the claim is derivative fails, it would appear to the Court that this claim is not simply *derivative*, but that it is *duplicative* as well. The actual controversy Plaintiff has identified is whether or not Defendant discriminated against her, wrongfully-terminated her, or retaliated against her. *See* Complaint ¶¶ 126-128. Plaintiff wants the Court to "condemn" these practices "prospectively," and make Defendant "aware of their [*sic]* obligations under the law to not engage in discriminatory practices and to not violate the law in the future." *Id.* ¶¶ 129-130. The other causes of action Plaintiff has presented either may in the future achieve these same ends, or have now failed (or may still in the future fail) to achieve these same ends. As a result, the Court questions the point of Plaintiff maintaining her tenth cause **[*64]** of action beyond this stage. *See, e.g., Mendoza v. JPMorgan Chase Bank, N.A., 6 Cal.App.5th 802, 820-21, 212 Cal. Rptr. 3d 1 (2016)*; *Tyler v. Travelers Commercial Ins. Co., 499 F.Supp.3d 693, 702 (N.D. Cal. 2020)* ("Where a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper."); *Richter v. CC-Palo Alto, Inc., 176 F.Supp.3d 877, 900 (N.D. Cal. 2016)* (stating same rule in context of claim for declaratory relief brought pursuant to *California Code of Civil Procedure section 1060*). It will discuss this issue, and why — given it — there is any reason Plaintiff's declaratory relief claim should continue, with the parties at oral argument on the motion.

F. Sick Leave Denial/Discrimination

Plaintiff's ninth claim for relief is styled as "denial of and discrimination based upon the use of sick leave," citing *California Labor Code sections 233*, *234*, and *246.5*. The claim appears based on the theory that "Plaintiff repeatedly used and attempted to use accrued sick leave to seek treatment for a medical condition," but that Walmart "disciplined Plaintiff, and ultimately terminated" her, "count[ing] Plaintiff's sick leave as absences which subjected her to discipline and discharge." Complaint ¶ 120.

---

[18] Claims under *subsections 12945.2(k)(1)* and *12945.2(q)* — to the extent Plaintiff intended to make such claims (which is unclear, and not aided by Plaintiff's failure to address *section 12945.2* in her Opposition), *see* Complaint ¶¶ 94, 97-100 — relate to exercise of the right under *subsection 12945.2(a)*, and therefore any claims in that regard fail for the same reason. *See Hortobagyi v. Columbia Sussex Mgmt., LLC*, No. CV 14-0244 DOC (FFMx), 2015 WL 12683950, *9 (C.D. Cal. Mar. 5, 2015).

[19] The elements of a claim for wrongful termination in violation of public policy under California law are: 1) the existence of a public policy and 2) a nexus between the public policy and an employee's termination. *See Dep't of Fair Employment & Housing v. Lucent Techs., Inc., 642 F.3d 728, 749 (9th Cir. 2011)*; *see also Franklin v. The Monadnock Co., 151 Cal.App.4th 252, 257, 59 Cal. Rptr. 3d 692 (2007)*; *Sinatra v. Chico Unified Sch. Dist., 119 Cal.App.4th 701, 705, 14 Cal. Rptr. 3d 661 (2004)*.

For this claim, Defendant argues that Plaintiff was responsible for applying her own PTO and that, in any event, she had none so there could not have been a denial. *See* Docket No. 16, at 25:5-15. Plaintiff does not so much as mention *Labor Code sections 233*, *234*, or *246.5* in her Opposition **[*65]** brief (and, perhaps consequently, Walmart ignores the subject in its Reply brief as well). This is not by itself sufficient reason to conclude that Walmart prevails as to this claim, as Walmart is still required to sustain its burden as the moving party. *See* Phillips & Stevenson ¶¶ 14:329, 14:331.1. But Plaintiff's failure to discuss the claim does not aid her case.

*Labor Code subsection 233(a)* provides, in part, that

> [a]ny employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's *accrued and available* sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, for the reasons specified in *subdivision (a) of Section 246.5*.

*Cal. Lab. Code § 233(a)* (emphasis added). Subsection 233(c) then provides that "[a]n employer shall not deny an employee the right to use sick leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness . . . or for any other reason specified in *subdivision (a) of Section 246.5*." *Id.* *§ 233(c)*. "Sick leave" — at least as used in *section 233*[20] — is defined to mean "*accrued* increments of compensated leave provided by an employer **[*66]** to an employee as a benefit of the employment for use by the employee during an absence from the employment for any of the reasons specified in *subdivision (a) of Section 246.5*." *Id.* *§ 233(b)(3)(A)* (emphasis added). *Labor Code section 234* then provides, in pertinent part, that "[a]n employer absence control policy that counts sick leave *taken pursuant to* *Section 233* as an absence that may lead to or result in discipline, discharge, demotion, or suspension is a per se violation of *Section 233*." *Id.* *§ 234* (emphasis added).

Finally, under *Labor Code section 246.5*, employers are to "provide paid sick days" — upon the oral or written request of an employee — for, among other things, the "[d]iagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee." *Id.* *§ 246.5(a)(1)*. That section also instructs that an employer, among other things, "shall not deny an employee the right to use *accrued* sick days, discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using *accrued* sick days [or] attempting to exercise the right to use *accrued* sick days." *Id.* *§ 246.5(c)(1)* (emphases added).

Walmart has provided evidence that Plaintiff had no remaining accrued PTO at the time of her termination. *See* DRS ¶ 57. This is sufficient for Walmart to meet its burden **[*67]** on its summary judgment motion. *See, e.g.,* *Nissan Fire, 210 F.3d at 1102*. Plaintiff has not submitted evidence to the contrary. Although she asserts she was not allowed to see her PTO records at the time she was terminated, Plaintiff apparently uncovered no evidence during discovery that conflicts with Defendant's assertion regarding her lack of PTO as of that time. Plaintiff — having not addressed the claim in connection with this motion[21] — does not contend that her claim in this regard concerns any time period other than when she was terminated. It is therefore unclear how Plaintiff can sustain a claim for *denial* of sick leave or sick days.

There is case law suggesting that at least a sick leave *retaliation* claim is to be assessed under the *McDonnell Douglas* burden-shifting procedure (or at least a process that sounds awfully similar). *See* *Wilkin v. Cmty. Hosp. of the Monterey Peninsula, 71 Cal.App.5th 806, 827, 286 Cal. Rptr. 3d 729 (2021)* (affirming grant of summary judgment on Labor Code sick leave retaliation claim where trial court concluded that plaintiff had "failed to show the Hospital's decision to discipline and terminate her employment was the result of retaliation, and failed to show the

---

[20] "'Accrued' means 'accumulated' each time it is used in the statute." *McCarther v. Pac. Telesis Grp., 48 Cal.4th 104, 114, 105 Cal. Rptr. 3d 404, 225 P.3d 538 (2010).*

[21] Plaintiff, having offered no evidence or argument on this claim whatsoever, has of course offered no evidence or argument bearing upon the words "that would be accrued during six months at the employee's then current rate of entitlement" appearing in *subsection 233(a)*.

Hospital's legitimate, non-retaliatory reasons for her discharge were used as a pretext"). Even if that is true, the absence of accrued, **[*68]** existing, sick leave would seem to be a deficiency in such a claim's *prima facie* case, meaning that it would fail at the first *McDonnell Douglas* stage. Plaintiff has not demonstrated a triable issue with respect to whether she had PTO to use at the time of her termination, and no evidence that she used accrued and available PTO in connection with the absences that led to her termination, so it is not possible for Walmart to have retaliated against Plaintiff for such use.

For the foregoing reasons, the Court will grant Walmart's motion with respect to Plaintiff's ninth claim for relief.

G. Failure to Permit Inspection

Plaintiff's final claim for relief is for "failure to permit inspection of personnel and payroll records" under *California Labor Code sections 1198.5*, *226(c)*, *226(f)*, and *432*. Subsection 1198.5(a) of California's Labor Code provides that "[e]very current and former employee . . . has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee," and subsection 1198.5(b)(1) obligates an employer to "make the contents of those personnel records available for inspection . . . not later than 30 calendar days from the date the employer receives a written request" and to provide **[*69]** the employee with a copy of the personnel records. *Cal. Lab. Code §§ 1198.5(a)*, *1198.5(b)(1)*. *Subsection 226(b)* provides current and former employees of certain employers the same inspection/receipt rights with respect to "records pertaining to their employment, upon reasonable request to the employer" (*i.e.*, with no facial "*written* request" requirement), with *subsection 226(f)* providing a penalty for an employer's failure in this regard. *Cal. Lab. Code §§ 226(b)*, *226(f)*. *Section 432* of the Labor Code simply provides that "[i]f an employee . . . signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request." *Cal. Lab. Code § 432*.

As to this claim, Defendant argues that it permissibly designated people to whom employees should send requests for personnel records/records pertaining to their employment, and that Plaintiff failed to follow that designated process. Indeed, subsection 1198.5(f) of the Labor Code provides that an "employer may designate the person to whom a request is made." Subsection 226(c) has the same provision for requests made under subsection 226(b).

The evidence supports Walmart's designation in this regard. Walmart's "California Associate Access to Personnel Files" policy instructs employees wishing to review their personnel file that they "should notify their supervisor or a salaried **[*70]** member of management, verbally or in writing." *See* DRS ¶ 61. The evidence is also clear with respect to who Plaintiff says she notified. She mailed a request to Walmart's headquarters in Bentonville, Arkansas, and there is also evidence that she made a verbal request for her records from Rodriguez. *See* DRS ¶¶ 63, 68; DRO ¶ 32.

Plaintiff argues that "[i]t is proper to serve a corporation at its headquarters," citing several cases. Walmart does not respond to this "headquarters" argument in its Reply, but simply doubles-down on its argument that the law permitted it to designate people to whom such a request could be made, and that Plaintiff did not comply with such a designation.

Plaintiff also asserts that, putting aside her mailing to Bentonville, her communication with Rodriguez sufficed (though, because it was verbal, it would *not* have sufficed under *Labor Code section 1198.5*, at a minimum). Whether or not that communication concerned "personnel records" and/or "records pertaining to [Plaintiff's] employment," Walmart notes in response that Rodriguez was not a salaried member of management or Plaintiff's supervisor.

It is clear that Plaintiff did not comply with *Labor Code sections 1198.5* and *226*, given Walmart's designation under *subsections 1198.5(f)* and **[*71]** *226(c)*. The cases Plaintiff cites for service upon a company's headquarters all deal with *service of process*, not service of a request for records to a recipient permissibly-designated under *California Labor Code subsections 1198.5(f)* and *226(c)*. *See* *Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 912-13 (9th Cir. 2011)*; *Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1130 (9th Cir. 2002)*; *Savarese v. Edrick Transfer & Storage, Inc., 513 F.2d 140, 144-45 (9th Cir. 1975)*. In addition, the Court sees no fact or

evidence referenced in the DRS or DRO supporting a conclusion that Rodriguez was Plaintiff's supervisor (or a "salaried member of management"). Plaintiff's request made to someone at the store where she worked was not compliant with Walmart's policy's designation, which is permissible under *Labor Code subsections 1198.5(f)* and *226(c)*.[22]

While it would seem to be Walmart who would bear the ultimate burden of persuasion on the issue raised here — Plaintiff's failure to comply with Walmart's designated process under *subsections 1198.5(f)* and *226(c)*, seemingly an affirmative defense to these types of claims — it has done what it needed to do as the moving party on that issue. *See Shakur, 514 F.3d at 890*; *S. Cal. Gas, 336 F.3d at 888*; *see also Garcia v. Wal-Mart Assocs., No. CV 19-07784-CJC (SKx), 2021 U.S. Dist. LEXIS 40134, 2021 WL 4027542, *2 (C.D. Cal. Mar. 2, 2021)* (granting summary judgment in favor of defendant where employee mailed request to defendant's Bentonville headquarters despite defendant's policy designation, offering that "[t]o conclude otherwise would render meaningless the California Legislature's express decision to permit corporations to designate the person to whom requests **[*72]** are made"). In response, Plaintiff has come up empty with respect to any fact germane to Walmart's precise defense. *See T.W. Elec., 809 F.2d at 630*.

For the foregoing reasons, the Court grants Walmart's motion with respect to Plaintiff's eleventh claim for relief.

H. Punitive Damages

Finally, on the issue of punitive damages, Walmart argues that Plaintiff is unable to identify evidence of oppression, fraud or malice, as required by *California Civil Code § 3294(a)*, and certainly not in a way that would satisfy the applicable clear and convincing evidence standard applicable to such a showing. *See Cal. Civ. Code § 3294(a)* ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."). It then also makes the point that even if Plaintiff were able to do this, she has not associated such conduct with anyone who would meet the definition of an "officer, director, or managing agent," as required by *Civil Code § 3294(b)* in cases involving a corporate employer. *See id. § 3294(b)* ("With respect to a corporate employer, the advance knowledge and **[*73]** conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.").

Plaintiff responds that Defendant purposely created a false narrative to justify her termination. However, other than briefly asserting in her Opposition — without any effort to specify what she means, or citation to any evidence in this regard — that Defendant "authorized or ratified Plaintiff's termination," Docket No. 24, at 18:27-19:2, Plaintiff does not appear to respond to Walmart's arguments regarding a failure to tie any conduct to anyone who meets the definition of "officer, director, or managing agent" (and certainly does not present any argument even suggesting that Rodriguez or Atkinson serve in such a role). Walmart notes this failure in its Reply (in addition to factually-distinguishing Plaintiff's sole "false narrative" authority). *See* Docket No. 35, at 18:20-24.

Putting aside the question of whether Plaintiff has sufficient evidence of the type of conduct required for an award of punitive damages under a clear and convincing evidence standard, *see Cal. Civ. Code § 3294(a)*, Defendant's alternative argument — that Plaintiff **[*74]** has not presented any evidence of the involvement of an "officer, director, or managing agent" — is convincing. Certainly Plaintiff has not identified the involvement in her case of any "officer" or "director" of Walmart. Meanwhile, "[t]he term 'managing agent' includes 'only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy'" such that a plaintiff must show that the employee in question "'exercised substantial discretionary authority over significant aspects of a corporation's business.'" *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., U.S.A., 221 Cal.App.4th 867, 886, 164 Cal. Rptr. 3d 811 (2013)* (quoting *White v. Ultramar, Inc., 21 Cal.4th 563, 566-67, 88 Cal. Rptr. 2d 19, 981 P.2d 944 (1999)*); *see also*

---

[22] Plaintiff makes no argument based on Walmart's use of the term "should" in its "California Associate Access to Personnel Files" policy. *See* DRS ¶ 61.

Glovatorium, Inc. v. NCR Corp., 684 F.2d 658, 661 (9th Cir. 1982) ("The key inquiry in the determination of whether an employee is a managing agent is 'the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy.'") (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 822-23, 169 Cal. Rptr. 691, 620 P.2d 141 (1979)); Cruz v. HomeBase, 83 Cal.App.4th 160, 167-68, 99 Cal. Rptr. 2d 435 (2000) ("'[C]orporate policy' is the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations. A 'managing agent' is one with substantial authority over decisions that set these general principles and rules."). The mere ability to hire and fire employees does not render **[*75]** a supervisory employee a managing agent under subsection 3294(b). *See* White, 21 Cal.4th at 566.

Defendant presented evidence that Rodriguez did not create, modify, or implement policy for Walmart, and had no authority to hire or fire associates, and that Atkinson did not make, suggest or influence decisions that ultimately determined Walmart's corporate policy. *See* DRS ¶¶ 69-73; *see also* Cruz, 83 Cal.App.4th at 168 (concluding that individual who "was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain" was insufficient, as a matter of law, to demonstrate "managing agent" status). At a minimum, Defendant "pointed out" — as the moving party — a gap in the evidence necessary for Plaintiff to recover punitive damages. *See* Devereaux, 263 F.3d at 1076. Summary judgment is the stage at which Plaintiff is required to have accumulated evidence of an officer's, director's or managing agent's involvement so that she may present that evidence to the Court, if challenged on this point. Plaintiff has not presented any evidence that demonstrates a triable issue in this regard. As a result, the Court cannot conclude that Plaintiff has complied with its obligation as the non-moving party on this issue. *See* T.W. Elec. Serv., 809 F.2d at 630; Fed. R. Civ. P. 56(c)(1).

Plaintiff **[*76]** has not demonstrated a genuine issue of fact whether any "officer, director, or managing agent" was involved in the purported "false narrative" conduct which she asserts supports her theory for an award of punitive damages. As a result, the Court will grant Defendant's motion with respect to the issue of whether Plaintiff may recover punitive damages in this action.

## IV. Conclusion

The Court will deny Walmart's motion with respect to Plaintiff's first and eighth causes of action. It will also deny it in part with respect to Plaintiff's third claim for relief. The Court will discuss with the parties whether there is any continuing need for Plaintiff's claim for a declaratory judgment (her tenth claim for relief). The Court will otherwise grant Defendant's motion.

---

**End of Document**