**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANOUSH BURMAYAN,

Plaintiff,

v.

GARFIELD BEACH CVS, LLC, et al.,

Defendants.

Case No. CV 23-1788 FMO (CTSx)

**ORDER RE: PENDING MOTIONS**

Having reviewed and considered all the briefing filed with respect to Garfield Beach CVS, LLC, Guy Garcia, and Joe Johnson's (collectively, "defendants" or "CVS") Motion for Summary Judgment (Dkt. 191, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**INTRODUCTION**

On January 6, 2023, Anoush Burmayan ("plaintiff") filed this action in the Los Angeles County Superior Court against CVS, the City of Glendale ("City"), James Ross ("Ross"), and Griffin Armendariz ("Armendariz"). (See Dkt. 1, Notice of Removal at ¶ 1). On March 9, 2023, CVS removed the action on the basis of federal question jurisdiction. (See id. at ¶¶ 7-8). Plaintiff asserts claims for: (1) violation of the Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1; (2) violation of California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, et seq.; (3) false arrest, false imprisonment, excessive force, and conspiracy in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 ("§ 1983"); (4) a claim against the City

pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978); (5) denial of "equal rights under the law" under 42 U.S.C. § 1981 ("§ 1981"); and (6) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. (See Dkt. 59, First Amended Complaint ("FAC") at ¶¶ 22-62). The claims relevant to the instant Motion are the Bane Act, the Unruh Act, and the § 1981 claims.

## PRELIMINARY STATEMENT

Before turning to the merits of the Motion, the court feels compelled to address issues regarding plaintiff's counsel's conduct in this case. First, in her opposition to defendants' Motion, plaintiff appears to raise new claims against CVS for violations of § 1983 and Title III of the ADA and asks the court to deny summary judgment based on the newly raised claims. (See Dkt. 215, Plaintiff's Opposition to Motion for Summary Judgment ("Opp.") at 22-28, 30-31). But the claims are not in the FAC, (see, generally, Dkt. 59, FAC), and, therefore, not properly before the court.[1] "It is well-settled that a plaintiff cannot raise a new claim for relief in response to a motion for summary judgment." Ruiz v. Magellan Fin. & Ins. Servs., 2025 WL 1796275, *9 (D. Ariz. 2025) (internal quotation marks and alterations omitted). This is because "[t]he issues on summary judgment are framed by the complaint. Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations. For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed." Ortiz v. Lopez, 688 F.Supp.2d 1072, 1082 (E.D. Cal. 2010). Accordingly, these claims will not be considered.

Second, plaintiff's counsel appears to be reviving her spoliation argument, which the court has previously addressed. Plaintiff's spoliation argument is based on alleged "missing" video surveillance footage from plaintiff's two visits to CVS's store in Glendale, which plaintiff claims

[1] The court previously denied plaintiff's motion for leave to add an ADA claim against CVS. (See Dkt. 213, Court's Order of October 14, 2025, at 2-4); (id. at 3) ("[T]he fact that plaintiff waited nearly two years after the amended pleadings deadline, and almost a year after the close of discovery, to seek leave to amend demonstrates a lack of diligence.").

would "negate" defendants' version of the facts. (See Dkt. 215, Opp. at 15). On February 26, 2024, after briefing and two separate hearings, the Magistrate Judge denied plaintiff's spoliation motion, finding no evidence of intentional destruction, selective preservation, or prejudice. (See Dkt. 143, Court's Order of February 26, 2024, at 7 & 9). Plaintiff sought review of the Magistrate Judge's order, which the court denied, because the Magistrate Judge's rulings were neither clearly erroneous nor contrary to law. (See Dkt. 152, Court's Order of April 23, 2024). Incredibly, plaintiff's counsel asserts that the court's prior rulings on this issue are "irrelevant" because, at "[t]his procedural posture, the only question is whether spoliation of relevant evidence creates a genuine dispute of material fact[.]" (Dkt. 215, Opp. at 17). Plaintiff's counsel cites no authority to support her troubling and baseless assertion. (See, generally, id.). In any event, because the court has already addressed the spoliation issue, (see Dkt. 143, Court's Order of February 26, 2024); (Dkt. 152, Court's Order of April 23, 2024), and because plaintiff's counsel offers no evidence other than her own speculation of spoliation, the court will not consider plaintiff's spoliation argument.

Finally, plaintiff's counsel's opposition papers are woefully deficient. For example, counsel's citation to exhibits fails to include any page numbers or pinpoint citations. (See, e.g., generally, Dkt. 215, Opp.); see Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."). Also, it is worth addressing plaintiff's renewed Disputed Statement of Facts (Dkt. 225, "DSF"), which spans nearly 70 pages. The court struck plaintiff's initial DSF because it was noncompliant and failed to conform to the requirements outlined in the Court's Order of April 21, 2023, and Local Rule 11-7. (See Dkt. 223, Court's Order of October 22, 2025, at 1-2). The court ordered plaintiff to "file a renewed factual appendix in support of her Opposition . . . [that] shall fully comply with the Court's standing order on summary judgment motions and the Local Rules." (Id. at 2).

On October 24, 2025, plaintiff filed a renewed DSF, which is still noncompliant, and consists of conclusory and argumentative assertions that are unsupported by citations to the evidence. (See, generally, Dkt. 225, DSF). Other portions are simply irrelevant. For example,

plaintiff's counsel disputes the seemingly innocuous and immaterial fact that plaintiff entered the CVS store in Glendale on January 13, 2021, apparently because the statement could give the impression that it was plaintiff's first visit to the store. (See Dkt. 225, DSF at ¶ 14). The court fails to see how this is relevant to any issue in this case. In short, plaintiff's counsel's repeated failures to comply with the court's orders and the Local Rules made the task of determining whether genuine issues of material fact exist for trial considerably more difficult.

## STATEMENT OF FACTS[2]

On April 10, 2020, the City of Glendale issued Public Order No. 2020-07 (the "Mandate"), requiring all workers at essential businesses, as well as customers and visitors, to wear face coverings over their noses and mouths. (See Dkt. 197, Defendants' Statement of Uncontroverted Facts ("SUF") at ¶¶ 1-2); (Dkt. 199-1, Exh. A, Mandate at ECF 5).[3] The Mandate authorized businesses to refuse service or admission to customers who failed to comply with its requirements. (See Dkt. 197, SUF at ¶ 3); (Dkt. 199-1, Exh. A, Mandate at ECF 5). The Mandate remained in effect through 2021. (See Dkt. 197, SUF at ¶ 4); (Dkt. 199-1, Exh. B, June 2021 Resolution at ECF 2-4).

---

[2] Unless otherwise indicated, the following facts are undisputed and/or contain disputes that are not material. To the extent a party disputes a fact but the reason for the dispute is nonresponsive or without support, the court will deem such fact undisputed. (See Dkt. 21, Court's Order of April 21, 2023, at 4) ("A party's failure to properly dispute any fact asserted to be undisputed by the opposing side shall be deemed established for the purposes of resolving the motion(s)."). Also, to the extent the court relies on evidence to which the parties raised an objection, the parties' objections are overruled. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that, at summary judgment, the court "do[es] not focus on the admissibility of the evidence's form" but rather "focus[es] on the admissibility of its contents"); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) (holding that a party "does not necessarily have to produce evidence in a form that would be admissible at trial" for that evidence to be considered at the summary judgment stage).

[3] Defendants request judicial notice of various exhibits. (See Dkt. 199, Request for Judicial Notice ("RJN") at 2-3). The court grants the request as to Exhs. A and B, which refer to the City's public orders requiring the use of face coverings for workers and customers of essential services. See, e.g., Tollis, Inc. v. Cnty. of San Diego, 505 F.3d 935, 938 n. 1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice."); Hill v. Kaye, 2023 WL 4306243, *3 (E.D. Cal. 2023) (granting judicial notice of the California Department of Health's guidance on face coverings because it "is publicly available information found on the California Department of Health's website"). It is unnecessary to rule on the remaining exhibits.

On January 13, 2021, plaintiff entered CVS's store in Glendale. (See Dkt. 197, SUF at ¶ 14); (Dkt. 193-2, Exh. B, Deposition of Anoush Burmayan ("Burmayan Depo.") at 71:14-19). Plaintiff wore a mask but failed to cover her nose while inside the store. (See Dkt. 197, SUF at ¶ 15); (Dkt. 193-2, Exh. B, Burmayan Depo. at 111:2-5). While in the store, plaintiff encountered the Shift Supervisor, Guy Garcia ("G. Garcia"), (see Dkt. 197, SUF at ¶ 18); (Dkt. 193-2, Exh. B, Burmayan Depo. at 75:14-17), who asked plaintiff to cover her nose with her mask. (See Dkt. 197, SUF at ¶ 20); (Dkt. 193-2, Exh. B, Burmayan Depo. at 77:12-21, 113:13-18). G. Garcia did not touch plaintiff, verbally threaten her, or make any reference to plaintiff's race, national origin, or alleged disability. (See Dkt. 197, SUF at ¶¶ 21-24); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:17-122:2, 422:18-424:1, 425:16-25). None of the video footage shows G. Garcia and plaintiff together in any of the store's aisles.[4] (See Dkt. 197, SUF at ¶ 19); (Dkt. 194-1, Exh. A, CCTV Footage on January 13, 2021); (Dkt. 194, Declaration of Tim Carey ("Carey Decl.") at ¶ 9).

When plaintiff approached the front register, she encountered Jesus Garcia ("J. Garcia"), a cashier who declined to process plaintiff's purchase until she adjusted her mask to cover her nose. (See Dkt. 197, SUF at ¶¶ 26-27); (Dkt. 193-2, Exh. B, Burmayan Depo. at 113:19-24, 114:16-18). Plaintiff ultimately used the self-checkout kiosk to complete her purchase. (See Dkt. 197, SUF at ¶ 33); (Dkt. 193-2, Exh. B, Burmayan Depo. at 114:4-115:2). While using the self-checkout kiosk, plaintiff observed Operations Manager, Joe Johnson ("Johnson"), standing nearby but did not interact with him. (See Dkt. 197, SUF at ¶¶ 34-35); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:12-16, 123:8-16, 155:4). Neither J. Garcia nor Johnson touched plaintiff, verbally threatened her, or made any reference to her race, national origin, or alleged disability. (See Dkt.

---

[4] Plaintiff's opposition papers repeatedly assert that G. Garcia "aggressively" followed plaintiff from aisle to aisle in the store. (See, e.g., Dkt. 225, DSF at ¶¶ 16-22); (Dkt. 215, Opp. at 9, 12, 15); (Dkt. 215-12, Declaration of Anoush Burmayan ("Burmayan Decl.") at ¶ 6) (claiming that G. Garcia "continued following [plaintiff] to the other aisles telling [plaintiff] to raise [her] face mask"). However, the video footage disproves this assertion and shows that G. Garcia never followed plaintiff. (See Dkt. 194-1, Exh. A, CCTV Footage on January 13, 2021). Unfortunately, this is not the only instance in which plaintiff and her counsel appear to misrepresent the facts. Indeed, these repeated misrepresentations raise serious concerns about plaintiff and her counsel's candor to the court.

197, SUF at ¶¶ 28-31, 36-39); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:17-122:2, 422:18-424:1, 425:16-25).

On January 19, 2021, plaintiff returned to the same CVS store and asked to speak with an employee she identified as "Adriana, the Armenian manager." (See Dkt. 197, SUF at ¶ 42); (Dkt. 193-2, Exh. B, Burmayan Depo. at 141:8-16). None of the previously identified CVS employees spoke with plaintiff during this visit. (See Dkt. 197, SUF at ¶¶ 45-46); (Dkt. 193-2, Exh. B, Burmayan Depo. at 143:8-144:10, 146:14-19). After exiting the store, plaintiff was approached by two Glendale police officers. (See Dkt. 197, SUF at ¶ 47); (Dkt. 193-2, Exh. B, Burmayan Depo. at 144:12-21).

Plaintiff claims that she was medically exempt from wearing a face mask during her two visits to the Glendale CVS store in January 2021. (See Dkt. 197, SUF at ¶ 5); (Dkt. 193-2, Exh. B, Burmayan Depo. at 87:14-88:6, 90:1-10, 108:21-24); (Dkt. 193-1, Exh. A, Plaintiff's April 1, 2024, Responses to Requests for Admission at 2-5). According to plaintiff, one of her treating physicians, either Dr. Nelson Flores ("Dr. Flores") or Dr. Ted Tribble ("Dr. Tribble"), signed a note indicating that she was medically exempt from wearing a face mask that covered her nose in public forums. (See Dkt. 197, SUF at ¶ 5); (Dkt. 193-2, Exh. B, Burmayan Depo. at 87:14-88:6, 108:21-24); (Dkt. 193-1, Exh. A, Plaintiff's April 1, 2024, Responses to Requests for Admission at 2-5). There is no evidence in the record that plaintiff ever provided or showed a copy of such note to any CVS employee. (See, generally, Dkt. 215, Opp.). In addition, there is nothing in the doctors' medical files indicating that plaintiff was ever given any medical exemption regarding the wearing of a mask over her nose. (See, generally, Dkt. 193-5, Exh. E, Psychological Testing Report); (Dkt. 193-6, Exh. F, January 4, 2021, Doctor's First Report of Occupational Injury or Illness); (Dkt. 193-7, Exh. G, January 4, 2021, Evaluation Report); (Dkt. 193-8, Exh. H, January 4, 2021, Progress Note); (Dkt. 193-9, Exh. I, January 12, 2021, Progress Note).

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure[5] authorizes the granting of summary

[5] All further "Rule" references are to the Federal Rules of Civil Procedure.

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (holding that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[6] A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

---

[6] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-4.

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. See Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

## DISCUSSION

### I. BANE ACT.

The Bane Act provides a cause of action for violations of a plaintiff's state or federal civil rights committed by "threat[s], intimidation, or coercion." See Cal. Civ. Code § 52.1(b) (a violation occurs when a defendant "interferes . . . with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." Hughes v. Rodriguez, 31 F.4th 1211, 1224 (9th Cir. 2022). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1045 (9th Cir. 2018). Finally, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged[.]" Id. at 1043.

A plaintiff may bring a Bane Act claim "against rights-interfering conduct by private actors as well as by public officials." Cornell v. City & Cnty. of San Francisco, 17 Cal.App.5th 766, 791 (2017); see also Cal. Civ. Code § 52.1(b) (noting a defendant can be liable under the Bane Act "whether or not acting under color of law"). However, "a plaintiff cannot sue under the Bane Act when a private party directly violates a constitutional provision that applies only to state actors."

Hay v. Univ. of S. California, 2022 WL 23031480, *3 (C.D. Cal. 2022); see id. ("A private actor cannot directly violate an individual's right to free speech; only the government can."); Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998) (noting that private actors did not interfere with plaintiff's Fourth Amendment rights because there was no state action). Here, plaintiff predicates her Bane Act claim on alleged violations of the First and Fourth Amendments as well as her right to "bodily integrity" under Cal. Civ. Code 43. (See Dkt. 59, FAC at ¶¶ 24-26).

CVS contends that plaintiff's Bane Act claim fails because "CVS is a private entity and cannot be held liable for violations of the First or Fourth Amendments." (Dkt. 192, Memorandum and Points of Authorities in Support of Motion for Summary Judgment ("Memo") at 18). The court agrees. Plaintiff offers no evidence to support her conclusory assertions that CVS "colluded" with police officers and made "false statements" to facilitate plaintiff's arrest. (See, generally, Dkt. 215, Opp. at 17-18). Further, even assuming there was state action, plaintiff put forth no evidence to raise an issue of fact as to whether defendants made threats, used intimidation or coercion, or acted with the requisite "specific intent" to interfere with plaintiff's rights. (See, generally, id. at 17-21); (see Dkt. 197, SUF at ¶¶ 21-24, 28-31, 36-39); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:17-122:2, 422:18-424:1, 425:16-25). In short, the court will grant the Motion as to plaintiff's Bane Act claim.

II. UNRUH ACT.

The Unruh Act in relevant part provides that: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "The primary purpose of the Unruh Act is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." Curran v. Mount Diablo Council of Boy Scouts, 147 Cal.App.3d 712, 733 (1983). "The Unruh Act must be liberally construed to accomplish this purpose." Lazar v. Hertz Corp., 69 Cal.App.4th 1494, 1502 (1999).

"The California Supreme Court has clarified that the Unruh Act contemplates 'willful,

affirmative misconduct on the part of those who violate the Act' and that a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy." Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. ("GLAAD"), 742 F.3d 414, 425 (9th Cir. 2014). In other words, plaintiff must put forth evidence of intentional discrimination to raise an issue of fact with respect to her Unruh Act claim. See Cohen v. City of Culver City, 577 F.Appx. 745, 746 (9th Cir. 2014). Finally, the Unruh Act "does not extend to practices and policies that apply equally to all persons." Turner v. Ass'n of Am. Med. Colls., 167 Cal.App.4th 1401, 1408 (2008) (citing Cal. Civ. Code § 51(c)).

Here, the Mandate applied equally to all patrons of CVS's store. (See Dkt. 197, SUF at ¶¶ 1-2); (Dkt. 199-1, Exh. A, Glendale Mask Mandate at ECF 2-6). Thus, the Unruh Act "does not extend to" the Mandate. See Turner, 167 Cal.App.4th at 1408; see, e.g., GLAAD, 742 F.3d at 426 (noting CNN's policy of displaying online video programming without closed captioning applied equally to all CNN.com visitors, hearing-impaired or not, and thus plaintiff failed to establish "the intentional discrimination needed to sustain an Unruh Act claim"). Nor is there any evidence of "willful, affirmative misconduct" by CVS sufficient to raise an issue of material fact. (See, generally, Dkt. 215, Opp. at 21-26); (see Dkt. 197, SUF at ¶¶ 21-24, 28-31, 36-39); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:17-122:2, 422:18-424:1, 425:16-25). Plaintiff attempts to sidestep her failure to submit any non-speculative evidence by claiming that she need not prove intentional discrimination because her "Unruh Act claim is not independent of her ADA claim." (See Dkt. 215, Opp. at 24); see also Pell v. Nunez, 2022 WL 16961478, *7 (C.D. Cal. 2022) ("Intentional discrimination is a necessary element to establish a violation of the Unruh Act, except where a plaintiff establishes a violation of the ADA."); Munson v. Del Taco, Inc., 46 Cal.4th 661, 665 (2009) ("A plaintiff who establishes a violation of the ADA . . . need not prove intentional discrimination in order to obtain damages under section 52."). But plaintiff did not assert an ADA claim against CVS. (See, generally, Dkt. 59, FAC). Therefore, plaintiff must put forth sufficient evidence to raise an issue of fact as to her intentional discrimination claim under the Unruh Act, which she did not do. See, e.g., Cohen, 577 F.Appx. at 746 (9th Cir. 2014) ("If his Unruh Act claim is separate from an ADA claim, however, the plaintiff must prove intentional

discrimination."). Without any evidence of intentional discrimination, the court finds that plaintiff has not met her burden to defeat summary judgment.

III. SECTION 1981.

Title 42 U.S.C. § 1981 ("§ 1981") provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. at § 1981(b). "[S]ection 1981 offers relief when racial discrimination blocks the creation of a contractual relationship[.]"[7] Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 126 S.Ct. 1246, 1250 (2006); Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609, 107 S.Ct. 2022, 2026 (1987) ("Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts.").

Plaintiff states that she "is not pursuing her claim under . . . § 1981 but has proof to allege . . . § 1983 conspiracy against CVS defendants."[8] (Dkt. 215, Opp. at 2). Accordingly, the court will grant summary judgment with respect to plaintiff's § 1981 claim. See, e.g., Garcia v. Vitus Energy, LLC, 605 F.Supp.3d 1188, 1209 (D. Alaska 2022) ("While Plaintiff's 'abandonment' of this claim is procedurally inelegant . . . the Court finds that summary judgment is a proper means of disposal of this claim."). Even if plaintiff had not abandoned her § 1981 claim, summary judgment would still be appropriate as plaintiff provided no evidence that CVS acted with discriminatory

---

[7] In 1991, Congress amended § 1981 to make clear "that § 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship[.]" Rivers v. Roadway Exp., Inc., 511 U.S. 298, 302, 114 S.Ct. 1510, 1514 (1994); see id. at 302 n. 2, 114 S.Ct. at 1514 n. 2 (language amending § 1981); Garrett v. Tandy Corp., 295 F.3d 94, 100 (1st Cir. 2002) ("The 1991 expansion of the definition of 'make and enforce contracts' in section 1981 . . . extends the reach of the statute to situations beyond the four corners of a particular contract[.]").

[8] As explained above, plaintiff did not allege a § 1983 claim against CVS in the FAC, (see, generally, Dkt. 59, FAC), and therefore no such claim is part of this action.

intent. (See, generally, Dkt. 215, Opp.); (see Dkt. 197, SUF at ¶¶ 21-24, 28-31, 36-39); (Dkt. 193-2, Exh. B, Burmayan Depo. at 121:17-122:2, 422:18-424:1, 425:16-25).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment **(Document No. 191)** is **granted**.

2. Plaintiff's Administrative Relief Motion to Strike **(Document No. 224)** is **denied**.

3. Defendants' Ex Parte Application to Strike **(Document No. 226)** is **denied as moot**.

4. Judgment shall be entered pursuant to Rule 54(b) dismissing the above-captioned action against CVS with prejudice.

Dated this 30th day of September, 2026.

/s/
Fernando M. Olguin
United States District Judge